IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KELLY CRAWFORD, IN HIS CAPACITY AS RECEIVER,<br><br>Plaintiff,<br><br>v.<br><br>MAGICSTAR ARROW ENTERTAINMENT, LLC, MAGICSTAR ARROW, INC., AND CARLOS CRUZ,<br><br>Defendants. | § § § § § § § § § § § § § | CIVIL ACTION NO. |

## RECEIVER'S ORIGINAL COMPLAINT

Kelly Crawford, as the Receiver of TMTE, Inc., a/k/a Metals.Com, Chase Metals, Inc., Chase Metals, LLC, Barrick Capital, Inc., and all other entities placed in receivership pursuant to the orders described below[1] (the "Receivership Entities")(the "Receiver"), files this Complaint against Defendants Carlos Cruz ("Cruz"), MagicStar Arrow Entertainment LLC, and MagicStar Arrow, Inc. (individually and/or collectively as the case may be, the "MagicStar Defendants").

## I.
## SUMMARY

1. The MagicStar Defendants facilitated the fraud perpetrated by the Receivership Entities. Cruz worked hand in hand with the individuals who operated the Receivership Entities,

---

[1] The "Receivership Entities" include TMTE, Inc., a/k/a Metals.Com, Chase Metals, Inc., Chase Metals, LLC (collectively the "Metals Receivership Defendants"), and Barrick Capital, Inc., as well all other Receivership Entities described within the scope of, or identified in the Receivership Order issued in Civil Action No. 3:20-CV-2910-L and any supplemental or amending orders, which include, but are not limited to, Administrative Account Services, LLC, Amerivise, LLC, Best New, Inc., Delaware Wholesale, Inc., Revo, LLC, Merrill Gold, LLC, Newmont Admin. Inc., Reagan Financial Services, Inc., Resource Financial Services, Inc., First American Estate & Trust, First American Savings, Inc., Retirement Insider, LLC, USA Accounts, Inc., USA Marketing, Inc., TX Admin, Inc., and Relief Defendant Tower Equity, LLC. Capitalized terms used in this Complaint, if not specifically defined, have the meaning provided by orders in the Underlying Lawsuit ( as defined herein).

lied under oath on behalf of those individuals, and through other entities he owns or controls, made "donations" to fund the legal defense for those individuals (whose assets were frozen by the court.)

2. In total, the MagicStar Defendants received more than $20 million from the Receivership Entities for alleged "marketing services." Rather than payments for legitimate services, the payments were fraudulent transfers made to insiders, intended to grow the underlying fraud, divert funds from one fraud to another and place the transfers beyond the reach of the Receiver and the Receivership Entities' creditors. This lawsuit seeks to recover those transfers for the benefit of the investors on whose behalf the receivership estate was created.

3. As detailed more fully below, the Receivership Entities procured the assets transferred to the MagicStar Defendants by selling precious metals and coins at grossly inflated prices, based on false and misleading representations, to approximately 1,700 unsuspecting and mostly elderly investors (the "Investors"). Because these sales violated the Commodity Exchange Act and the laws of numerous states, the Commodity Futures Trading Commission and thirty states sued the Receivership Entities as well as Lucas Asher ("Asher") and Simon Batashvili ("Batashvili") who owned and controlled the Receivership Entities (collectively, the Receivership Entities, Asher and Batashvili are referred to herein as the "Receivership Defendants") in Civil Action No. 20-cv-2910-L, *CFTC, et al., v. TMTE, Inc. a/k/a Metals.Com, et al.*, pending in the Northern District of Texas (the "Underlying Lawsuit").

4. Together with other creditors in whose shoes the Receiver stands pursuant to the Uniform Fraudulent Transfer Act ("UFTA"), the Investors defrauded by the Receivership Entities are the principal creditors of the Receivership Entities. The payments to the MagicStar Defendants were made by the Receivership Entities with intent to defraud creditors -- while the Receivership Entities knew they would not be able to satisfy claims owed to the Investors/creditors; while the

Receivership Entities were insolvent; and without the exchange of reasonably equivalent value. Standing in the Receivership Entities' creditors' shoes for purposes of the claims asserted below and for the benefit of those defrauded creditors, including at least 1,700 mostly elderly victims, the Receiver seeks to recover the funds fraudulently transferred to the MagicStar Defendants.

## II.
## RECEIVERSHIP

5. On September 22, 2020, the court in the Underlying Lawsuit entered an Order Granting Plaintiffs' Emergency *Ex Parte* Motion for Statutory Restraining Order, Appointment of Receiver, and Other Equitable Relief (the "SRO"). A true and correct copy of the SRO is attached as **Exhibit A** and incorporated by reference.[2]

6. Pursuant to the SRO, the Receiver was ordered to take exclusive custody, control, and possession of the Receivership Estate, which includes all assets due or owing to the Receivership Defendants (the "Receivership Assets"). *See* SRO [Dkt. 16] ¶¶ 30-31. The SRO also authorized the Receiver to initiate proceedings as may, in his judgment, be necessary to preserve or increase the value of the assets of the Receivership Estate. *Id.* at ¶ 31(i).

7. In concluding entry of the SRO was necessary and appropriate, the court made a preliminary finding that the Receivership Defendants "have engaged and continue to engage in a fraudulent scheme to defraud at least 1,600 persons throughout the United States into purchasing gold and silver bullion" and that the Receivership Defendants "targeted a vulnerable population of mostly elderly or retirement-aged persons." *See* SRO [Dkt. 16] at p. 5.

---

[2] The Receiver also requests the Court to judicially notice all pleadings and orders in the Underlying Lawsuit. Additional relevant orders entered in the Underlying Lawsuit and referenced by docket numbers for the Underlying Lawsuit include: (1) the Consent Order of Preliminary Injunction as to Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher and Simon Batashvili [Dkt. 165]; (2) the Consent Order of Preliminary Injunction as to Defendant TMTE, Inc. a/k/a Metals.com, Chase Metals, Inc., Chase Metals, LLC, Barrick Capital, Inc., and Relief Defendant Tower Equity, LLC [Dkt. 164]; and (3) the Order Granting Receiver's Motion to Identify Certain Entities in Receivership [Dkt. 230].

8.     Pursuant to a claims process established by the court in the Underlying Lawsuit, more than 1,725 Investors who purchased metals from the Receivership Defendants submitted claims. According to the Receiver's investigation, the Investors hold claims totaling more than $63.4 million (the "Investor Claims").[3] The basis for the Investor Claims is the amount paid by each Investor to the Receivership Defendants in excess of the fair market value for the metals sold by the Receivership Defendants. These claims, as well as the claims of the regulatory agencies described below, arose at the time of each fraudulent sale made by the Receivership Defendants, with the purported assistance of the MagicStar Defendants.

## III.
## PARTIES

9.     Plaintiff is a natural citizen and resident of Dallas County, Texas acting in his capacity as Receiver.

10.    Defendant MagicStar Arrow Entertainment LLC is a limited liability company organized under the laws of Florida, with its principal office located at 929 Colorado Avenue, Santa Monica, California or 3750 S. Robertson Blvd, Culver City, California 90232, and may be served with citation by serving its registered agent, Chase Lawyers, at 21 SE 1st Avenue, Suite 700, Miami, Florida 33131.

11.    Defendant MagicStar Arrow, Inc. is a corporation organized under the laws of Florida, with its principal office located at 3750 S. Robertson Blvd, Culver City, California 90232, and may be served with citation by serving its registered agent, Chase Lawyers, at 21 SE 1st Avenue, Suite 700, Miami, Florida 33131.

---

[3] See the Receiver's Claims Report [Dkt. 290].

12. Defendant Carlos Cruz is an individual who may be served with citation at the following last known addresses, 1529 Penmar Avenue 1, Venice, California 90291 or 8555 NW 37th Court, Hollywood, Florida 33024.

## IV.
## JURISDICTION

13. This Court has subject matter jurisdiction over the Receiver's claims pursuant to 28 U.S.C. § 1331 because this action is related to and arises out of alleged violations of the Commodity Exchange Act. Moreover, in the SRO the court assumed exclusive jurisdiction to adjudicate claims regarding the assets that are the basis of this Complaint, and accordingly, pursuant to 28 U.S.C. § 1367, this Court possesses supplemental subject matter jurisdiction over the Receiver's claims.

14. The Receiver's compliance with 28 U.S.C. §§ 753 and 754 also provides subject matter jurisdiction, and together with 28 U.S.C. § 1692, provides personal jurisdiction over each of the MagicStar Defendants.

## V.
## VENUE

15. Pursuant to the SRO, the court assumed exclusive jurisdiction over the Receivership Estate and authorized the Receiver, as the court's agent, to take and have possession of the Receivership Assets. Further, pursuant to 28 U.S.C. §§ 754 and 1692, the Receiver filed a copy of the Underlying Complaint and a copy of the Receivership Order in all districts in California and Florida (as well as virtually all federal districts in the country) within ten days of his appointment. As a result, the Receiver may sue in the district in which he was appointed to enforce claims arising anywhere in the country. Accordingly, venue is appropriate in the Northern District of Texas, Dallas Division, the venue in which the Receiver was appointed.

## VI.
## FACTUAL BACKGROUND[4]

### A.  The Receivership Entities and Their Purpose

16.  Each of the Receivership Entities existed and operated solely to perpetrate a fraud upon unsuspecting, vulnerable investors, and line the pockets of Simon Batashvili (" Batashvili") and Lucas Asher("Asher"), the individual defendants in the Underlying Lawsuit who owned and controlled the Receivership Entities.  At all relevant times, Defendant Cruz was a friend and "business" partner of Asher[5] and Batashvili.

17.  Despite bi-weekly business meetings in which Cruz purportedly received instructions about serial marketing campaigns requested by the Receivership Defendants, Cruz testified he only "vaguely" understood the Receivership Entities' business.

18.  The "business" was illegal and unethical, but not complex.  Between approximately September 2017 and September 2020, the Receivership Defendants, directly and by and through brokers whom the Receiver has also sued,[6] sold gold and silver bullion investments to mostly elderly or retirement-aged persons ("Precious Metals Bullion").

19.  The Receivership Defendants targeted this demographic to gain access to retirement savings and to prey on these investors' age, trust and inexperience.  They also targeted politically conservative and Christian victims, building trust based on representations of political and religious affinity.

---

[4] A copy of the Complaint filed in the Underlying Action, without exhibits, is attached hereto as **Exhibit "B"** and incorporated herein by reference to provide additional information about the fraudulent scheme in which the MagicStar Defendants participated and the derivation of the compensation paid to them.

[5] Indeed, with his assets frozen and in receivership, Asher has been living with Defendant Cruz.

[6] *See Crawford v. Bleeden*, Cause No. 3:21-cv-02181-E, pending in the Northern District of Texas.  Pursuant to Fed. R. Civ. P.10(c) and to the extent necessary to satisfy Fed.R.Civ.P. 9(b), the Receiver incorporates the allegations in the *Bleeden Complaint*, Dkt. 1, herein.

20. The Receivership Defendants made these sales initially through TMTE, Inc., Chase Metals, Inc. and Chase Metals, LLC, and later, to avoid multiple State Regulatory Orders and Complaints (as defined hereinbelow), through Barrick Capital, Inc.

### B. Investigations, Cease and Desist Orders, and Regulatory Actions Begin

21. By at least the spring of 2019, State regulatory agencies had begun investigating complaints about the Receivership Defendants. Various enforcement actions, including complaints, emergency actions, disciplinary proceedings, and/or cease and desist orders ("State Regulatory Orders and Complaints") against the Receivership Defendants followed closely. The State Regulatory Orders and Complaints that were at all relevant times publicly available, include, but are not limited to:

   a. A May 1, 2019, Emergency Order and July 1, 2019, Agreed Order and Undertaking issued by the Texas State Securities Board;

   b. A May 16, 2019, Consent Cease and Desist Order issued by the Minnesota Department of Commerce Commissioner;

   c. A July 19, 2019, Consent Cease and Desist Order issued by the Colorado Securities Commissioner;

   d. A July 30, 2019, Emergency Cease and Desist Order issued by the Georgia Commissioner of Securities;

   e. An August 8, 2019, Cease and Desist Order issued by the Alabama Securities Commission;

   f. A September 6, 2019, Emergency Cease and Desist Order issued by the Kentucky Department of Financial Institutions;

   g. A November 1, 2019, Order to Cease and Desist and Order to Show Cause and May 26, 2020, Consent Order issued by the Missouri Securities Commissioner;

  h. A December 3, 2019, Administrative Complaint filed by the Massachusetts Securities Division of the Office of the Secretary of the Commonwealth;

  i. A March 9, 2020, Cease and Desist Order issued by the Arkansas Securities Commissioner;

  j. A May 26, 2020, Complaint for Summary Order and Summary Order to Cease and Desist issued by the Nevada Securities Division of the Office of the Secretary of State;

  k. A June 4, 2020, Notice of Proposed Agency Action and Temporary Cease and Desist Order issued by the Montana State Auditor, Commissioner of Securities, and Insurance; and

  l. A June 20, 2020, Temporary Cease and Desist Order and Notice of Final Order issued by the Alaska Director of Commerce, Community, and Economic Development, Division of Banking and Securities.

**C. The MagicStar Defendants Assisted in the Receivership Defendants' Fraud**

22. Defendant Cruz managed and owned the MagicStar Defendants—first MagicStar Arrow Entertainment, LLC which later became MagicStar Arrow, Inc.

23. The MagicStar Defendants, in turn, purportedly provided marketing, technology, media buying and lead generation services to further the Receivership Defendants' fraudulent "business".

24. According to Defendant Cruz, Asher and Batashvili or marketing employees who worked for the Receivership Defendants but whose names Cruz could not recall, provided advertising content through verbal instructions in the bi-weekly meetings. The MagicStar Defendants then purportedly placed the ads, all to lure the unsuspecting Investors. Notably, however, the Receivership Defendants also employed numerous individuals directly who could

have provided the same services purportedly provided by the MagicStar Defendants. Moreover, although Cruz claims the MagicStar Defendants were billed by google, Facebook, and other internet sites for the Receivership Entities' advertisements, the Receivership Defendants paid substantial sums directly to google, Facebook, and other internet sites.

25. Although the MagicStar Defendants produced invoices[7] as supposed support for the astronomical amounts paid to them, no other evidence suggests the MagicStar Defendants performed the advertising work Cruz contends occurred, let alone $20 million dollars' worth of advertising.

26. The MagicStar Defendants billed the Receivership Entities purportedly for named marketing campaigns chosen by the MagicStar Defendants. These invoices billed both "campaign expenses" and "service fees." All told, between 2017 and 2020, the MagicStar Defendants billed and received more than $20,742,000 over a three- year period from the Receivership Entities.

27. In 2018 and 2019, the Receivership Defendants represented more than 75 percent of the total business of the MagicStar Defendants. Accordingly, an insignificant market existed for the services of the MagicStar Defendants during this time and, on information and belief, the MagicStar Defendants would not have received the same or similar payments from third parties at the same rates for the services purportedly provided by the MagicStar Defendants to the Receivership Defendants.

28. A true and correct summary of the transfers made by the Receivership Entities to the MagicStar Defendants (the "Transfers"), which details the specific Receivership Entity that made the Transfers, the dates and amounts of all Transfers, as well as the manner in which the

---

[7] The Receiver's search of the Receivership Defendants' records did not reveal any of the invoices produced by the MagicStar Defendants. Accordingly, upon information and belief, the invoices were fabricated to suggest legitimate services provided by the MagicStar Defendants in exchange for the Transfers, when neither the services, if any, nor the rates were legitimate.

Transfers were made, is attached as **Exhibit C.** This summary is based on the records currently available to the Receiver but is subject to amendment in the event additional payments to the MagicStar Defendants are revealed through discovery or otherwise.

29. As shown in the attached summary, the Transfers were made to the MagicStar Defendants by check or wire transfer on the dates and in the amounts shown in the attached schedules. Payments were made from the Receivership Entities' Beverly Hills office, by the specific Receivership Entity identified in the summary.

30. In making these Transfers to the MagicStar Defendants, the Receivership Entities were unable to pay legitimate creditors, including the Investors who became creditors at the moment of their respective investments due to the fraud by which the investments were solicited.

31. To date, the Receiver has identified less than $15 million in Receivership Assets, while no less than $65 million in total creditor claims have been asserted in the Underlying Lawsuit.

32. At all relevant times, the Receivership Entities were insolvent.

33. To the extent, if any, services were actually provided by the MagicStar Defendants in exchange for the Transfers, the services were not provided in arms-length transactions, for market rates.

34. Instead, Cruz and the MagicStar entities are "insiders" with respect to the Receivership Defendants, as shown by the following:

    a. The Receivership Defendants paid at least in part for the MagicStar Defendants' rental of an office in the same building as the Receivership Defendants;

    b. Cruz maintained an email address with the Receivership Defendants;

  c. Cruz travelled with Asher to the Cayman Islands to meet with attorneys regarding offshore trusts;

  d. Cruz held himself out on his LinkedIn page as the CEO of Retirement Insider, an entity owned and controlled by Asher and/or Batashvili that has been declared a Receivership Entity by the court in the Underlying Lawsuit;

  e. In blatant violation and contempt of the SRO, Asher transferred monies to a bank account controlled by Cruz and Cruz used that bank account to pay Asher's expenses;

  f. Cruz is using entities he controls to fund Asher and Batashvili's defense in the Underlying Lawsuit;

  g. Prior to the SRO, the Receivership Defendants began a business called "Portfolio Insider." After the assets of the Receivership Defendants were placed in receivership by the SRO, Defendant Cruz set up a limited liability company called "Portfolio Insider" and, with the help of Asher and Batashvili, continued the business of Portfolio Insider. Cruz claims he made the decision to hire the salesmen of Portfolio Insider to close sales, which Cruz admits included the top salesmen for the Receivership Defendants who sold Precious Metals Bullion to the Investors.[8]

  h. Despite knowing the orders of the court in the Underlying Lawsuit prohibited Asher and Batashvili from engaging in any activity related to securities, Cruz knowingly worked alongside Asher and Batashvili in operating Portfolio Insider – a business based upon securities.

---

[8] *See* Receiver's Emergency Motion for "Show Cause" Hearing to Hold Defendants Lucas Asher and Simon Batashvili in Civil Contempt [Dkt. 311 and 399].

### D. Tolling and Concealment

35. The Receiver exercised diligence in investigating and discovering the claims asserted below. Nonetheless, the claims were concealed, and the Receiver was unable to discover or assert the claims until recently. Indeed, most records for the Receivership Entities were on digital platforms the Receiver was unable to access for several months after his appointment, in part because the FBI executed a search warrant pursuant to which it seized computers and information. The Receiver was deprived of the ability to obtain such information until the Spring of 2021. In addition, shortly after the SRO was entered, the Receiver served the numerous banks used by the Receivership Defendants with the SRO requesting production of bank records. The Receiver has received production from most of the banks used by the Receivership Defendants, but has not received all such records. Those records received, however, are voluminous, and involve dozens of accounts, and thousands of transactions, requiring hundreds of hours of evaluation by the Receiver and his accountants.

36. By letter dated May 18, 2021, the Receiver made demand upon the MagicStar Defendants to identify any goods or services provided to the Receivership Defendants in exchange for the monies received by the Receivership Defendants.

37. The MagicStar Defendants refused to produce documents until the Receiver advised counsel for the MagicStar Defendants that the Receiver would request the court in the Underlying Lawsuit to hold them in contempt for violating the SRO by refusing to produce documents requested by the Receiver as required by the SRO.

38. On September 29, 2021, the MagicStar Defendants produced certain documents purportedly related to the goods and services they provided to the Receivership Defendants.

39. In September 2021, the Receiver served counsel for MagicStar Defendants with a subpoena, setting Cruz' deposition for October 19, 2021.

40. On October 5, 2021, and continuing until May 12, 2022, the Underlying Lawsuit and all of the Receiver's activities, including efforts to discover and file the claims included here, were stayed (the "Stay"). *See* Dkt. 322.

41. Once the Stay was lifted, on June 5, 2022, the Receiver served Cruz with a subpoena to appear for a June 15, 2002 deposition. The deposition was postponed, however, to accommodate requests by Cruz and his counsel.

42. On July 13, 2022, the Receiver deposed Cruz.

## VII.
## CAUSES OF ACTION

**COUNT 1:** **VOIDABLE/FRAUDULENT TRANSFER - ACTUAL FRAUD**

43. The Receiver alleges and hereby incorporates by reference each allegation made in the preceding paragraphs as if each were separately set forth below.

44. On the dates, in the amounts, and in the manner described in **Exhibit C**, the Receivership Entities made Transfers to the MagicStar Defendants with intent to defraud the Receivership Entities' creditors, who include, but are not limited to, the Investors.

45. As demonstrated by numerous badges of fraud, the Receivership Entities made the Transfers with actual fraudulent intent:

    a. As payments made to facilitate fraud and which resulted in claims held by Investors exceeding the value, if any, of the services provided of the MagicStar Defendants, the Transfers were not made in exchange for reasonably equivalent value. *See S.E.C. v. Resource Dev. Int'l, LLC,* 487 F.3d 295, 301 (5th Cir.2007) (citing *In re Agric. Res. & Tech. Group, Inc.,* 916 F.2d 528, 540 (9th Cir.1990) (Value is assessed in light of the statute's purpose "to protect the creditors"));

    b. The Transfers and their amounts were concealed from creditors;

c.  The Receivership Entities concealed assets, including by diverting monies received from Investors for the sale of metals to a myriad of shell entities and bank accounts.

d.  The Transfers were made when the Receivership Entities were (a) engaged or about to engage in a business or a transaction for which the remaining assets of the Receivership Entities were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed that the Receivership Entities would incur, debts beyond their ability to pay as they became due;

e.  At the time the Transfers were made and on all dates since, the Receivership Entities' debts—primarily claims held by defrauded Investors—greatly exceeded their assets;

f.  All Transfers made by Barrick Capital were made after certain Receivership Defendants had been sued or disciplined as reflected by the State Regulatory Orders and Complaints;

g.  The Transfers were made shortly after substantial debts were incurred;

h.  The Transfers were made to Insiders;

i.  Marketing on behalf the Receivership Entities by the MagicStar Defendants, *if any*, helped to enlarge the pool of defrauded Investors who hold claims against the Receivership Entities.

j.  Upon information and belief, and as evidenced by Cruz's "donations" to pay Asher and Batashvili's defense in the Underlying Lawsuit, after the Transfers were made, Asher and Batashvili retained control of or access to the Transfers;

   k. At the time of each of the Transfers, the Receivership Entities had actual knowledge or notice that by making the Transfers, they would be unable to pay creditors, including claims held by defrauded Investors. *See Hayes v. Palm Seedlings Partners–A (In re Agricultural Research and Tech. Group, Inc.)*, 916 F.2d 528, 535 (9th Cir. 1990) (Holding knowledge that a transaction will operate to the detriment of creditors may be sufficient to establish actual fraudulent intent);

   l. At the time of each Transfer, each of the Receivership Entities was a fraudulent enterprise. Thus, a presumption of fraudulent intent attached to each of the Transfers. *See In re IFS Fin. Corp.*, 417 B.R. 419, 439 n.15 (Bankr. S.D. Tex. 2009), *affirmed*, 669 F.3d 255 (2012).

  46. The Receiver is authorized to assert these claims on behalf of the Receivership Entities' creditors, including but not limited to Investors, whose claims arose before and/or within a reasonable time after the Transfers were made.[9]

  47. Because the Transfers from the Receivership Entities to the MagicStar Defendants were fraudulent under Cal. Civ. Code § 3439(a)(1) and/or any other applicable State's adoption of the Uniform Fraudulent Transfer Act (the "UFTA"), the Receiver may avoid the Transfers under Cal. Civ. Code § 3439.07 or any other applicable statutory enactment of the UFTA.

  48. The Receiver requests all available remedies provided by the UFTA, including, but not limited to, avoidance of all transfers of monies and property from the Receivership Entities to the MagicStar Defendants.

---

[9] *See* [Dkt. 406] Appendix in Support of Report Regarding Objections to Receiver's Claims Report.

---

**Receiver's Original Complaint**                 **Page 15**

## COUNT 2: VOIDABLE/FRAUDULENT TRANSFERS - CONSTRUCTIVE FRAUD

49. The Receiver alleges and hereby incorporates by reference each allegation made in the foregoing paragraphs as if each were separately set forth herein.

50. The Transfers were made when the Receivership Defendants were (a) engaged or about to engage in a business or a transaction for which the remaining assets of the Receivership Entities were unreasonably small in relation to the business or transaction; or (b) when the Receivership Entities intended to incur, or believed, or reasonably should have believed, that the Receivership Entities would incur, debts beyond their ability to pay as they became due. Thus, the Transfers rendered the Receivership Defendants effectively insolvent and precluded them from paying their debts as they became due.

51. Further, the Receivership Defendants did not receive reasonably equivalent value in exchange for the Transfers. The Transfers were accordingly fraudulent pursuant to CAL. CIV. CODE § 3439(a)(2), *et seq.*, and/or any other applicable State's adoption of the UFTA, and the Receiver may avoid the Transfers under CAL. CIV. CODE § 3439.07 or any other applicable statutory enactment of the UFTA.

52. The Receiver requests all available remedies provided by the UFTA, including, but not limited to, avoidance of all transfers from the Receivership Entities to the MagicStar Defendants.

## COUNT 3: UNJUST ENRICHMENT - CONSTRUCTIVE TRUST

53. The Receiver alleges and hereby incorporates by reference each allegation made in the foregoing paragraphs as if each were separately set forth herein.

54. The MagicStar Defendants have been unjustly enriched by the Transfers and property they received from the Receivership Entities.

55. The Receivership Entities owe restitution to the Investors, and the MagicStar Defendants' retention of the Transfers is unjust and injures the Receivership Entities.

56. Accordingly, the Receiver seeks to recover from the MagicStar Defendants such amounts for the benefit of creditors and defrauded Investors under the equitable doctrine of unjust enrichment and requests the imposition of a constructive trust over all such funds, property, and the proceeds thereof.

**COUNT 4:   MONEY HAD AND RECEIVED**

57. The Receiver alleges and hereby incorporates by reference each allegation made in foregoing paragraphs as if each were separately set forth below.

58. The MagicStar Defendants received the Transfers from the Receivership Entities, that in equity and good conscience belong to the Receivership Entities. The Receiver seeks to recover the Transfers and other property for the benefit of the Investors and other creditors of the Receivership Entities.

59. The Receiver sues for the recovery of all monies had and received by the MagicStar Defendants.

**COUNT 5:   VEIL PIERCING/ALTER EGO/SINGLE ENTERPRISE**

60. The Receiver alleges and hereby incorporates by reference each allegation made in foregoing paragraphs as if each were separately set forth below.

61. The Receivership Entities made factually and constructively fraudulent transfers to the MagicStar Defendants for the personal benefit of Cruz. Cruz used the MagicStar Defendant entities as his alter ego to perpetrate an actual fraud on the Receivership Entities and their creditors. Accordingly, the corporate veil of MagicStar Arrow, Inc. and the limited liability veil of MagicStar Arrow Entertainment LLC should be pierced and disregarded such that Cruz is individually liable for the return of monies and damages sought by the Receiver herein.

62. Additionally, the MagicStar Defendant entities have been used as part of an unfair device to achieve an inequitable result. The Receivership Entities made the Transfers to the MagicStar Defendants to evade then-existing obligations, to-wit, the claims owed to creditors, and to place the Transfers beyond the reach of creditors but maintain the funds for the MagicStar and Receivership Defendants' use. Moreover, use of corporate entities purportedly operated by persons other than the Receivership Entities' principals lent a further air of legitimacy to the Receivership Defendants' fraud.

63. Upon information and belief, the MagicStar Defendants were aware of the State Regulatory Orders and Complaints, or, had notice of those same Orders and Complaints and continued their efforts to assist the Receivership Defendants, and continued soliciting and receiving the fraudulent transfers at issue here.

### COUNT 6: ATTORNEY'S FEES

64. The Receiver seeks the recovery of all reasonable attorney's fees and expenses incurred in obtaining judgment against the MagicStar Defendants, as allowed by law or in equity, as well as attorney's fees and expenses required to pursue or defend any appeals in this action.

### PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Receiver, Kelly M. Crawford respectfully prays that this Court order disgorgement or alternatively award the Receiver judgment against MagicStar Arrow Entertainment LLC, MagicStar Arrow, Inc., and Carlos Cruz in an amount to be determined through discovery, plus prejudgment and post judgment interest, attorney's fees, expenses, and court costs; and that the Court grant the Receiver such other and further relief as prayer for herein, both at law and in equity, to which he may show himself justly entitled.

Respectfully submitted,

SCHEEF & STONE, LLC

*/s/ Peter Lewis*
PETER LEWIS
State Bar No. 12302100
Peter.lewis@solidcounsel.com
500 North Akard, Suite 2700
Dallas, Texas 75201
(214) 706-4200  Telephone
(214) 706-4242 Facsimile

BROWN FOX PLLC

CHARLENE C. KOONCE
State Bar No. 11672850
charlene@brownfoxlaw.com

CORTNEY C. THOMAS
State Bar No. 24075153
cort@brownfoxlaw.com
8111 Preston Road, Suite 300
Dallas, Texas 75225
(214) 327-5000 Telephone
(214) 327-5001 Facsimile

**ATTORNEYS FOR PLAINTIFF KELLY CRAWFORD, IN HIS CAPACITY AS RECEIVER**