IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, and<br><br>ALABAMA SECURITIES COMMISSION, STATE OF ALASKA, ARIZONA CORPORATION COMMISSION, CALIFORNIA COMMISSIONER OF BUSINESS OVERSIGHT, COLORADO SECURITIES COMMISSIONER, STATE OF DELAWARE, STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA, OFFICE OF FINANCIAL REGULATION, OFFICE OF THE GEORGIA SECRETARY OF STATE, STATE OF HAWAII, SECURITIES ENFORCEMENT BRANCH, IDAHO DEPARTMENT OF FINANCE, INDIANA SECURITIES COMMISSIONER, IOWA INSURANCE COMMISSIONER DOUGLAS M. OMMEN, OFFICE OF THE KANSAS SECURITIES COMMISSIONER, KENTUCKY DEPARTMENT OF FINANCIAL INSTITUTIONS, MAINE SECURITIES ADMINISTRATOR, STATE OF MARYLAND EX REL MARYLAND SECURITIES COMMISSIONER, ATTORNEY GENERAL DANA NESSEL ON BEHALF OF THE PEOPLE OF MICHIGAN, MISSISSIPPI SECRETARY OF STATE, NEBRASKA DEPARTMENT OF BANKING & FINANCE, OFFICE OF THE NEVADA SECRETARY OF STATE, NEW MEXICO SECURITIES DIVISION, THE PEOPLE OF THE STATE OF NEW YORK BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK, OKLAHOMA DEPARTMENT OF SECURITIES, SOUTH CAROLINA ATTORNEY GENERAL, SOUTH CAROLINA SECRETARY OF STATE, SOUTH DAKOTA DEPARTMENT OF LABOR & REGULATION, DIVISION OF | ORDER GRANTING PLAINTIFFS' EMERGENCY *EX PARTE* MOTION FOR STATUTORY RESTRAINING ORDER, APPOINTMENT OF RECEIVER, AND OTHER EQUITABLE RELIEF<br><br><br>Case No.: 3:20-CV-2910-L<br><br>Judge: Honorable Sam A. Lindsay |


EXHIBIT
A

INSURANCE, COMMISSIONER OF THE TENNESSEE DEPARTMENT OF COMMERCE AND INSURANCE, STATE OF TEXAS, WASHINGTON STATE DEPARTMENT OF FINANCIAL INSTITUTIONS, WEST VIRGINIA SECURITIES COMMISSION, AND STATE OF WISCONSIN.

  Plaintiffs,

v.

TMTE, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI,

  Defendants;

and

TOWER EQUITY, LLC,

  Relief Defendant.

Plaintiffs Commodity Futures Trading Commission ("CFTC"), Alabama Securities Commission ("State of Alabama"), State of Alaska ("State of Alaska"), Arizona Corporation Commission ("State of Arizona"), California Department of Business Oversight ("State of California"), Colorado Securities Commissioner ("State of Colorado"), Delaware Department of Justice ("State of Delaware"), Florida Office of Financial Regulation ("State of Florida"), Office of the Georgia Secretary of State ("State of Georgia"), Hawaii Office of the Securities Commissioner (State of Hawaii"), Idaho Department of Finance ("State of Idaho"), Indiana Securities Commissioner ("State of Indiana"), Iowa Insurance Commissioner, Douglas M. Ommen ("State of Iowa"), Office of the Kansas Securities Commissioner ("State of Kansas"),

Kentucky Department of Financial Institutions ("Commonwealth of Kentucky"), Maine Office

of Securities ("State of Maine"), Maryland Securities Commissioner ("State of Maryland"),

Massachusetts Securities Division ("Commonwealth of Massachusetts"), Michigan Department

of Attorney General ("State of Michigan"), Mississippi Secretary of State ("State of

Mississippi"), Nebraska Department of Banking & Finance ("State of Nebraska"), Nevada

Office of Secretary of State ("State of Nevada"), New Hampshire Bureau of Securities

Regulation ("State of New Hampshire"), New Mexico Securities Division ("State of New

Mexico"), New York Attorney General ("State of New York"), North Dakota Securities

Department ("State of North Dakota"), Oklahoma Department of Securities ("State of

Oklahoma"), Oregon Department of Consumer and Business Services ("State of Oregon"),

Pennsylvania Department of Banking and Securities ("Commonwealth of Pennsylvania"), South

Carolina Attorney General and South Carolina Secretary of State ("State of South Carolina")

South Dakota Department of Labor & Regulation ("State of South Dakota"), Tennessee

Department of Commerce and Insurance ("State of Tennessee"), State of Texas ("State of

Texas"), Washington State Department of Financial Institutions ("State of Washington"), and

Wisconsin Department of Financial Institutions ("State of Wisconsin") (collectively "the

States"), have filed a Complaint for Injunctive Relief, Civil Monetary Penalties, and other

Ancillary Equitable Relief.

Along with the filing of the Complaint, the CFTC and the States moved the Court on an

emergency, *ex parte* basis, for an order, pursuant to Section 6c(a) of the Commodity Exchange

Act ("CEA"), 7 U.S.C. § 13a-1(a) (2012), and in accordance with Federal Rule of Civil

Procedure ("Fed. R. Civ. P.") 65, that: (1) freezes the assets of Defendants and Relief Defendant,

(2) grants the CFTC and the States immediate access to the books, records, and other documents

of Defendants and Relief Defendant; and (3) appoints a temporary receiver (the "Proposed

SRO"). Plaintiffs request this emergency relief in order to preserve the status quo; to prevent the

dissipation of any assets and ensure that any future equitable relief obtained by Plaintiffs,

including any restitution to the victims of Defendants' fraudulent scheme, can be effective; and

to determine the full scope of the fraudulent scheme, identify the victims of the scheme, and

locate the remaining assets of Defendants and Relief Defendant. Additionally, Plaintiff requests

expedited discovery in accordance with FRCP 26(d).

       The Court has considered the pleadings, declarations, exhibits, and memorandum filed in

support of the CFTC and the States' motion, and finds that:

1.     This Court has jurisdiction over the parties and over the subject matter of this action

pursuant to 28 U.S.C. § 1331 (2018) (federal question jurisdiction) and 28 U.S.C. § 1345 (2018)

(district courts have original jurisdiction over civil actions commenced by the United States or by

any agency expressly authorized to sue by Act of Congress), as well as 28 U.S.C. § 1367(a)

(supplemental jurisdiction over claims under the laws of the States).

2.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (2018)

(federal question jurisdiction) and 28 U.S.C. § 1345 (2018) (district courts have original

jurisdiction over civil actions commenced by the United States or by any agency expressly

authorized to sue by Act of Congress).

3.     Section 6c(a) of the CEA, 7 U.S.C. § 13a-1(a) (2018), authorizes the CFTC to seek

injunctive and other relief against any person whenever it appears to the CFTC that such person

has engaged, is engaging, or is about to engage in any act or practice constituting a violation of

any provision of the CEA or any rule, regulation, or order thereunder.

4.     Section 6d(1) of the CEA, 7 U.S.C. § 13a-2(1) (2018), authorizes the States to bring a

suit in the district courts of the United States to seek injunctive and other relief against any

person whenever it appears to the Attorney General and/or Securities Administrator of a State, or

such other official that a State may designate, that the interests of the residents of the State have

been, are being, or may be threatened or adversely affected because of violations of the CEA or

CFTC Regulations.

5.      Venue lies properly in this District pursuant to Section 6c(e) of the CEA, 7 U.S.C. § 13a-

1(e) (2018), because Defendants transacted business in this District, and certain of the acts and

practices in violation of the CEA, the CFTC Regulations, and State laws occurred, are occurring,

or are about to occur within this District, among other places. Venue also lies properly in this

District pursuant to 17 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions

giving rise to the Plaintiffs' claims occurred in this District.

6.      The CFTC and the States have made a proper *prima facie* showing that from at least

September 1, 2017 through the present ("Relevant Period"), Defendants TMTE, Inc., d/b/a

Metals.com, Chase Metals, LLC, Chase Metals, Inc., (collectively "Metals"), Barrick Capital,

Inc. ("Barrick") and their principals, Lucas Asher *a/k/a* Lucas Thomas Erb *a/k/a* Luke Asher

("Asher"), and Simon Batashvili ("Batashvili") (collectively "Defendants") have engaged and

continue to engage in a fraudulent scheme to defraud at least 1,600 persons throughout the

United States into purchasing gold and silver bullion ("Precious Metals Bullion"). Metals and

Barrick are a common enterprise. Batashvili and Asher were controlling persons of Metals and

Barrick and used both Metals and Barrick to perpetuate the fraudulent scheme. Defendants

targeted a vulnerable population of mostly elderly or retirement-aged persons with little

experience in Precious Metals Bullion. By making material misrepresentations and omissions,

Defendants deceived investors into purchasing Precious Metals Bullion at prices averaging from

100% to over 200% over the base melt value or spot price of the Precious Metals Bullion ("Prevailing Market Price"). Defendants directed investors to purchase specific Precious Metals Bullion at grossly inflated prices that bore no relationship to the Prevailing Market Price. Defendants did not disclose the actual value of the Fraudulently Priced Precious Metals Bullion and instead provided investors with invoices showing exorbitant and unreasonable prices. Defendants falsely represented that Fraudulently Priced Precious Metals Bullion were a safe and conservative investment and that investors would not lose their funds. Contrary to these representations, Defendants failed to disclose to investors that the undisclosed, excessive, and unreasonable charges of Fraudulently Priced Precious Metals Bullion resulted in investors sustaining substantial losses on the purchase of Precious Metals Bullion from Defendants.

7.     Therefore, there is good cause to believe that Defendants have engaged in, are engaging in, or are about to engage in a scheme to defraud investors in violation of Section 6(c) of the Act, 7 U.S.C. § 9(1) (2018), Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3) (2019) and the laws of the States.  Defendants also have engaged in, are engaging in, or are about the engage in violations of the laws of Plaintiffs State of Alabama, State of Alaska, State of California, State of Colorado, State of Florida, State of Georgia, Commonwealth of Kentucky, State of Maryland, State of South Carolina, and State of Texas as specifically alleged in the Complaint.

8.     There is also good cause to believe that Relief Defendant Tower Equity, LLC, ("Tower") has received, is receiving, or is about to receive funds, assets or other property as a result of Defendants' violative acts and practices and has been unjustifiably enriched thereby.  The Relief Defendant does not have any legitimate interest or entitlement to these funds, assets or other property ("assets") received as a result of Defendants' violative conduct.

9.     There is also good cause to believe that immediate and irreparable damage to the Court's

ability to grant effective final relief for investors in the Fraudulently Priced Precious Metals Bullion in the form of monetary redress will occur from the withdrawal, transfer, removal, dissipation, or other disposition of assets, and/or the destruction, alteration, or disposition of books and records and other documents pertaining to the business activities and business and personal finances by Defendants and Relief Defendant, unless Defendants and Relief Defendant are immediately restrained and enjoined by Order of the Court.

10.     Therefore, there is good cause for the Court to freeze assets owned, controlled, managed or held by Defendants and Relief Defendant, or in which they have any beneficial interest.

11.     There is also good cause for the Court to prohibit Defendants and Relief Defendant from destroying, altering or disposing of records, and/or denying representatives of the CFTC and the States access to inspect records, when and as requested, to ensure that CFTC and State representatives have immediate and complete access to those records.

12.     There is also good cause for the appointment of a Temporary Receiver to take control of all assets owned, controlled, managed, or held by Defendants and Relief Defendant or in which they have any beneficial interest ("Defendants' Assets" and "Relief Defendants' Assets"), so that the Temporary Receiver may preserve assets, investigate and determine investor claims, determine unlawful proceeds retained by Defendants and Relief Defendant and amounts due to investors as a result of Defendants' alleged violations, and distribute funds to investors harmed by Defendants' alleged misconduct under the Court's supervision.

13.     There is also good cause to order Defendants to repatriate funds, assets or other property controlled by Defendants so that such assets can be controlled by the Temporary Receiver and to assure payment of restitution and disgorgement as authorized by the Court.

14.     In summary, this is a proper case for granting a restraining order *ex parte*: (1) prohibiting

7

Defendants and Relief Defendant from transferring, removing, dissipating assets, or otherwise disposing of any asset, (2) allowing inspection and copying of records by the CFTC and States, and (3) appointing a temporary receiver because the CFTC and the States are likely to succeed on the merits of their claims against Defendants.  Moreover, there is reasonable likelihood that Defendant(s) may transfer or dissipate assets or destroy or alter records.  Therefore, the Court orders the following.

## DEFINITIONS

For purposes of this Order, the following definitions apply:

15.     The term "assets" encompasses any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly, directly or indirectly controlled, and wherever located, including but not limited to: chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds mail or other deliveries, inventory, checks, notes, accounts (including, but not limited to, bank accounts and accounts at other financial institutions), credits, receivables, lines of credit, contracts (including spot, futures, options, or swaps contracts), insurance policies, and all funds, wherever located, whether in the United States or outside the United States.

16.     The term "record" encompasses the terms "document" and "electronically stored information" as those terms are used in Fed. R. Civ. P. 34(a), and includes, but are not limited to, all writings, graphs, charts, photographs, sound recordings, images, and other data or other data compilations–stored in any medium from which information can be obtained or translated, if necessary, into reasonable usable form.  The term "record" also refers to each and every such item in Defendants' and Relief Defendants' actual or constructive possession, including but not limited to: (i) all such items within the custody or control of any agents, employers, employees,

8

or partners of the Defendants and Relief Defendant; and (ii) all items which Defendants and Relief Defendant have a legal or equitable right to obtain from another person. A draft or non-identical copy is a separate item within the meaning of the term. Records also include the file and folder tabs associated with each original and copy.

17.     The term "Defendants" refers to TMTE, Inc., d/b/a Metals.com, Chase Metals, LLC, Chase Metals, Inc., Barrick Capital, Inc. and their principals, Lucas Asher *a/k/a* Lucas Thomas Erb *a/k/a* Luke Asher, and Simon Batashvili.

18.     "Relief Defendant" refers to Tower Equity, LLC.

## RELIEF GRANTED

**IT IS HEREBY ORDERED that:**

**I.     Asset Freeze Order Prohibiting the Withdrawal, Transfer, Removal, Dissipation, and Disposal of Assets**

19.     Defendants and Relief Defendant are immediately restrained and enjoined, except as otherwise ordered by this Court, from directly or indirectly withdrawing, transferring, removing, dissipating, or otherwise disposing of any assets, wherever located, including Defendants' and Relief Defendant's assets held outside the United States, except as provided otherwise in Sections IV, V, and VI of this Order, or as otherwise ordered by the Court;

20.     Notwithstanding the provisions of this Section I, at the request of the Temporary Receiver, Defendants and Relief Defendant and any other person who has possession, custody, or control of any of Defendants' or Relief Defendant's assets shall transfer possession of all funds, assets or other property subject to this Order to the Temporary Receiver in accordance with Section IV, V and VI of this Order.

21.     The assets affected by this Order shall include existing assets as well as assets acquired after the effective date of this Order.

## II.   Maintenance of and Access to All Records That Relate to the Business Activities and Business and Personal Finances

22.      Defendants and Relief Defendant are restrained from directly or indirectly destroying, altering, or disposing of, in any manner, any records that relate or refer to the business activities or business or personal finances of any Defendant or Relief Defendant.

23.      Representatives of the CFTC and the States shall be immediately allowed to inspect any records relating or referring to the business activities or business or personal finances of the Defendants and Relief Defendant, including, but not limited to, both hard-copy documents and electronically stored information, wherever they may be situated and whether they are in the possession of the Defendants, or Relief Defendant, or others. To ensure preservation and facilitate meaningful inspection and review of records, Defendants and Relief Defendant shall allow representatives of the CFTC and the States to make copies of any records, and if on-site copying of records is not practicable, representatives may make such copies off-site. The CFTC and the States shall promptly return the original records after any such off-site copying.

24.      To further facilitate meaningful inspection and review, Defendants and Relief Defendant shall, absent a valid assertion of their rights against self-incrimination under the Fifth Amendment, promptly provide CFTC and States staff with:

a.   the location of all records relating or referring to the business activities and business and personal finances of Defendants and Relief Defendant; and

b.   all identification numbers and other identifying information for websites, cloud storage services, email and smartphone accounts, and all accounts at any bank, financial institution, or brokerage firm (including any introducing broker or futures commission merchant) owned, controlled or operated by Defendants or Relief Defendant, or to which Defendants and Relief Defendant have access; and

   c.  all passwords to, and the location, make and model of, all computers and/or

       mobile electronic devices owned and/or used by Defendants or Relief Defendant

       in connection with their business activities and business and personal finances.

25.     When inspecting records that are subject to this Order, including those contained on

computers and/or other electronic devices, the CFTC and the States should undertake reasonable

measures to prevent review of the Defendants' or Relief Defendant's privileged communications

and/or other nonbusiness, nonfinancial materials by the CFTC's and the States' attorneys and

other staff who are part of the litigation team in this matter. Moreover, Defendants and Relief

Defendant (or their counsel) shall promptly contact counsel for the CFTC or the States to assert

any claims of privilege (or other legal objections) relating to the contents of any records that are

subject to this Order and promptly cooperate with counsel for the CFTC or the States to develop

reasonable protocols to isolate and prevent disclosure of claimed privileged and/or other

nonbusiness, nonfinancial materials to the CFTC's or the States' attorneys and other staff who

are part of the litigation team in this matter. However, nothing herein shall excuse Defendants or

Relief Defendant from full and immediate compliance with this Court's Order permitting the

CFTC and the States to inspect the records which relate to Defendants' or Relief Defendant's

business activities and their business and personal finances.

**III.    Notice to Financial Institutions and Others that Hold or Control Assets or Records
         of Defendants and Relief Defendants**

26.     To ensure the effectiveness of the asset freeze and pending further Order of this Court,

any financial or brokerage institution, business entity, or person that receives actual notice of this

Order and holds, controls, or maintains custody of any assets of Defendants or Relief Defendant

shall not, in active concert or participation with Defendants or Relief Defendant, permit

Defendants or Relief Defendant or other persons to withdraw, transfer, remove, dissipate, or

otherwise dispose of any of Defendants' or Relief Defendant's assets, except as directed by further order of the Court; and

27.     Any financial or brokerage institution, business entity, or person that receives notice of this Order by personal service or otherwise shall not, in active concert or participation with any Defendants or Relief Defendant directly or indirectly destroy, alter, or dispose of, in any manner, any Records relating to the business activities and business and personal finances of any Defendant or Relief Defendant.

28.     Furthermore, any such financial or brokerage institution, business entity, or person that receives actual notice of this Order and holds, controls, or maintains custody of any account or assets, titled in the name of, held for the benefit of, or otherwise under the control of any Defendants or Relief Defendant, or has held, controlled, or maintained custody of any such asset, of any Defendants or Relief Defendant at any time since September 1, 2017, shall not, in active concert or participation with Defendants or Relief Defendant, deny a request by the CFTC or the States to inspect all records pertaining to any account or asset owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants or Relief Defendant, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.  As an alternative to allowing inspection of records, a financial or brokerage institution, business entity or other person may provide copies of records requested by the CFTC or the States.

29.     Furthermore, any such financial or brokerage institution, business entity, or person that receives actual notice of this Order shall:

a. Within ten business days of a request by the Temporary Receiver, or such longer period specified by the Temporary Receiver, provide the Temporary Receiver with copies of all records pertaining to any account or asset owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants or Relief Defendant, either individually or jointly, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; and

b. Cooperate with all reasonable requests of the Temporary Receiver relating to implementation of this Order, including transferring Defendants' or Relief Defendant's assets, at the Temporary Receiver's direction, and producing Records related to business activities or business or personal finances of Defendants or Relief Defendant to the Temporary Receiver.

## IV.   Order Appointing Temporary Receiver

30. Kelly Crawford is appointed Temporary Receiver with the full powers of an equity receiver for Defendants and Relief Defendant and their affiliates or subsidiaries owned or controlled by Defendants or Relief Defendant (hereinafter referred to as the "Receivership Defendants"), and of all records, and all funds, properties, premises, accounts, income, now or hereafter due or owing to the Receivership Defendants, and other assets directly or indirectly owned, beneficially or otherwise, by the Receivership Defendants, (hereinafter, the "Receivership Estate"). The Temporary Receiver shall be the agent of this Court in acting as Temporary Receiver under this Order.

31.   The Temporary Receiver is directed and authorized to accomplish the following:

    a.   Assume full control of the Receivership Defendants by removing Asher or Batashvili, and any officer, independent contractor, employee, or agent of the Receivership Defendants, from control and management of the affairs of the Receivership Defendants as the Temporary Receiver deems appropriate;

    b.   Take exclusive custody, control, and possession of the Receivership Estate, which includes but is not limited to complete authority to sue for, collect, receive, and take possession of all goods, chattels, rights, credits, money, effects, land, leases, books, records, work papers, and records of accounts, including electronically-stored information, contracts, financial records, funds on hand in banks and other financial institutions, and other papers and records of the Receivership Defendants and customers or clients of any of Receivership Defendants' business activities whose interests are now held by, or under the direction, possession, custody, or control of, the Receivership Defendants;

    c.   Take exclusive custody, control, and possession of all websites, cloud storage services, email, and smartphone accounts, and all accounts at any bank, financial institution, or brokerage firm (including any introducing broker or futures commission merchant) controlled or operated by or to which any of the Defendants or Relief Defendant have access in connection with their business activities and business and personal finances.

    d.   Take all steps necessary to secure the business and other premises under the control of the Receivership Defendants, including but not limited to the premises of the Defendants.

14

e.  Perform all acts necessary, including the suspension of operations, to conserve, hold, manage, and preserve the value of the Receivership Estate in order to prevent irreparable loss, damage, or injury to investors in any investment opportunity operated by any Receivership Defendants.

f.  Prevent the withdrawal or misapplication of the assets of the Receivership Estate and otherwise protect the interests of investors in any investment opportunity operated by any Receivership Defendant;

g.  Manage and administer the Receivership Defendants and the Receivership Estate by performing all acts incidental thereto that the Temporary Receiver deems appropriate, including hiring or dismissing any and all personnel, suspending operations, and/or entering into agreements, including but not limited to: (1) the retention and employment of investigators, attorneys, or accountants, appraisers, and other independent contractors and technical specialists of the Temporary Receiver's choice, including without limitation members and employees of the Temporary Receiver's firm, to assist, advise, and represent the Temporary Receiver; and (2) the movement and storage of any equipment, furniture, records, files, or other physical property of the Receivership Defendants;

h.  Collect all funds owed to the Receivership Defendants;

i.  Initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in state, federal, or foreign court that the Temporary Receiver deems necessary and advisable to preserve or increase the value of the assets of the Receivership Estate or that the Temporary Receiver deems necessary and advisable to carry out the Temporary Receiver's mandate under this Order;

15

j.  Issue subpoenas to obtain records pertaining to the Receivership and conduct discovery in this action on behalf of the Receivership Estate;

k.  Open one or more bank accounts and deposit all funds of the Receivership Estate in such designated accounts and make all payments and disbursements from the Receivership Estate from such accounts;

l.  Make payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order, provided that the Temporary Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except for payments that the Temporary Receiver deems necessary or advisable to secure the Receivership Estate from immediate and irreparable loss; and

m.  Maintain written accounts itemizing receipts and expenditures, describing properties held or managed, and naming the depositories holding funds or other assets of the Receivership Estate; make such written accounts and supporting documentation available to the CFTC and the States for inspection; and, within sixty days of being appointed and periodically thereafter, as directed by the Court, file with the Court and serve on the parties a report summarizing efforts to marshal and collect assets, administer the Receivership Estate, and otherwise perform the duties mandated by this Order.

n.  Provide the CFTC and the States with a full accounting of all Defendants' and Relief Defendant's funds, documents, and assets, including those outside of the United States from September 1, 2017 to the date of the Order.

## V.     Transfer of Funds and Records to the Temporary Receiver

32.     Absent a valid assertion by Defendants or Relief Defendant of their respective rights against self-incrimination under the Fifth Amendment, each Defendant and Relief Defendant shall, within five business days following the service of this Order:

    a.   Transfer to the territory of the United States and deliver to possession, custody, and control of the Temporary Receiver, all assets of the Receivership Estate (other than real property) and books and records of the Receivership Estate, located outside of the United States that are held by each and every Defendant and Relief Defendant, for their benefit, or under their direct or indirect control, whether jointly or singly.

    b.   Provide the Temporary Receiver access to all records of the Receivership Estate and all assets of the Receivership Estate held by any financial or brokerage institution, business entity, or other person that receives actual notice of this Order by personal service or otherwise, located within or outside the territorial United States by signing any necessary consent forms.

## VI.    Turning Over Assets and Records to the Temporary Receiver

33.     Upon service of this Order, and absent a valid assertion by Defendants and Relief Defendant of their respective rights against self-incrimination under the Fifth Amendment, Defendants and Relief Defendant, and any agents, employees, or partners of the Defendants and Relief Defendant who are served with a copy of this Order, shall immediately or within such time as permitted by the Temporary Receiver in writing, deliver over to the Temporary Receiver:

    a.   Possession and custody of all assets of the Receivership Estate, owned beneficially or otherwise, wherever situated;

    b.   Possession and custody of all records of the Receivership Estate in connection with

their business activities and business and personal finances, including but not limited to, all records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers); investor lists, title documents, and other records of the Receivership Defendants;

c.   Possession and custody of all assets belonging to members of the public now held by the Receivership Defendants;

d.   All keys, passwords, entry codes, and combinations to locks necessary to gain or to secure access to any of the assets or records of the Receivership Defendants related to their business activities and business and personal finances, including, but not limited to, access to the Receivership Defendants' business premises, means of communication, accounts, computer systems, mobile electronic devices, or other property; and

e.   Information identifying the accounts, employees, properties, or other assets or obligations of the Receivership Defendants.

## VII.   Directive to Cooperate with Temporary Receiver

34.   Absent a valid assertion of their respective rights against self-incrimination under the Fifth Amendment, Defendants, Relief Defendant, and all other persons or entities served with a copy of this order shall cooperate fully with and assist the Temporary Receiver.  This cooperation and assistance shall include, but not be limited to, providing any information to the Temporary Receiver that the Temporary Receiver deems necessary to exercising the authority as provided in this Order; providing any password required to access any computer or electronic files in any medium; and discharging the responsibilities of the Temporary Receiver under this

Order, and advising all persons who owe debts to the Receivership Defendants that all debts should be paid directly to the Temporary Receiver.

## VIII.   Stay on Actions against the Receivership Defendants

### IT IS FURTHER ORDERED THAT:

35.     Except by leave of the Court, during the pendency of the receivership ordered herein, Defendants, Relief Defendant, and all other persons and entities shall be and hereby are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, the Receivership Defendants, the Temporary Receiver, assets of the Receivership Estate, or the Receiver's duly authorized agents acting in their capacities as such, including but not limited to, the following actions:

      a.  Petitioning, or assisting in the filing of a petition, that would cause the Receivership Defendants to be placed in bankruptcy;

      b.  Commencing, prosecuting, litigating or enforcing any suit or proceeding against any of the Receivership Defendants, or any of their subsidiaries or affiliates, except that such actions may be filed to toll any applicable statute of limitations;

      c.  Commencing, prosecuting, continuing, or entering any suit or proceeding in the name or on behalf of any of the Receivership Defendants, or any of their subsidiaries or affiliates;

      d.  Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of the Receivership Defendants, or any of their subsidiaries or affiliates, or any property claimed by any of them, or attempting to foreclose, forfeit, alter, or terminate any of the Receivership Defendants' interests in property, including

without limitation, the establishment, granting, or perfection of any security interest, whether such acts are part of a judicial proceeding or otherwise;

e.  Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of the Receivership Defendants, or any of their subsidiaries or affiliates, or the Temporary Receiver, or any agent of the Temporary Receiver; and

f.  Doing any act or thing to interfere with the Temporary Receiver taking control, possession, or management of the property subject to the receivership, or to in any way interfere with the Temporary Receiver or to harass or interfere with the duties of the Temporary Receiver, or to interfere in any manner with the exclusive jurisdiction of this Court over the property and assets of the Receivership Defendants, or their subsidiaries or affiliates.

Provided, however, that nothing in this section shall prohibit any federal or state law enforcement or regulatory authority from commencing or prosecuting an action against the Receivership Defendants.

## IX.   Compensation for Temporary Receiver and Personnel Hired by the Temporary Receiver

36.   The Temporary Receiver and all personnel hired by the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver, are entitled to reasonable compensation, to be paid solely from the assets of the Receivership estate, for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them for those services authorized by this Order that when rendered were (1) reasonably likely to

20

benefit the receivership estate or (2) necessary to the administration of the estate.  The

Temporary Receiver and all personnel hired by the Temporary Receiver shall not be

compensated or reimbursed by, or otherwise entitled to, any funds from the Court, the CFTC, or

the States.  The Temporary Receiver shall file with the Court and serve on the parties periodic

requests for the payment of such reasonable compensation, with the first such request filed no

more than sixty (60) days after the date of this Order and subsequent requests filed quarterly

thereafter.  The requests for compensation shall itemize the time and nature of services rendered

by the Temporary Receiver and all personnel hired by the Temporary Receiver.

### X.      Persons Bound by This Order

37.      This Order is binding on any person who receives actual notice of this Order by personal

service or otherwise and is acting in the capacity of an officer, agent, servant, employee, or

attorney of Defendants or Relief Defendant, or is in active concert or participation with the

Defendants or Relief Defendant.

### XI.     Bond Not Required of Plaintiffs or the Temporary Receiver

38.      As Plaintiffs CFTC and the States have made a proper showing under 7 U.S.C. §13a-1(b)

and they are not required to post any bond in connection with this Order.  The Temporary

Receiver similarly is not required to post bond.

### XII.    Service of Order and Assistance of U.S. Marshals Service and/or Other Law
###          Enforcement Personnel

39.      Copies of this Order may be served by any means, including via email or facsimile

transmission, upon any financial institution or other entity or person that may have possession,

custody, or control of any records or assets of any Defendant or Relief Defendant, or that may be

subject to any provision of this Order.

XIII.   **Staff of the CFTC and the States and Representatives of the United States Marshals Service are specially appointed by the Court to effect service.**

40.     The United States Marshals Service is authorized to: a) accompany and assist representatives of the CFTC and the States in the service and execution of the Summons, Complaint, and this Order on the Defendants and Relief Defendants, and b) help maintain lawful order while representatives of the CFTC and States inspect records as provided in this Order.

XIV.    **Service on the CFTC and the States**

41.     Defendants and Relief Defendants shall comply with all electronic filing rules and requirements of the U.S. District Court for the Northern District of Texas and shall serve all pleadings, correspondence, notices required by this Order, and other materials on the CFTC by delivering a copy to Richard Foelber, Chief,  Office of Cooperative Enforcement, and JonMarc Buffa, Deputy Chief, Office of Cooperative Enforcement, Commodity Futures Trading Commission, 1155 21st Street, NW, Washington, DC 20581, by electronic filing, e-mail, personal delivery or courier service (such as Federal Express or United Parcel Service) and not by regular mail due to potential delay resulting from heightened security and decontamination procedures applicable to the CFTC's regular mail.

42.     Defendants and Relief Defendants shall comply with all electronic filing rules and requirements of the U.S. District Court for the Northern District of Texas and shall serve all pleadings, correspondence, notices required by this Order, and other materials on the States by delivering a copy to the State attorneys identified in the Complaint by electronic filing, e-mail, personal delivery or courier service (such as Federal Express or United Parcel Service).

XV.     **Hearing on Preliminary Injunction and Granting of Expedited Discovery**

43.     Plaintiffs' motion for a preliminary injunction and extending the appointment of the

22

Temporary Receiver is set for hearing on the 6th day of October, 2020, at 10:00 a.m. before the Honorable Sam A. Lindsay, Courtroom 1546, at the United States Courthouse for the Northern District of Texas located at 1100 Commerce Street, Dallas Texas 75242.  Should any party wish to file a memorandum of law or other papers concerning the issuance of a preliminary injunction against Defendants and Relief Defendant, such materials shall be filed, served and received by all parties at least two business days before the hearing ordered above.

44.     Plaintiffs' additional Motion for Expedited Discovery is granted and in advance of this preliminary injunction hearing, the parties may conduct expedited discovery, and the prohibition upon discovery before the early meeting of counsel pursuant to FRCP 26(f), in accordance with FRCP 26(d), is removed.  Depositions of parties and non-parties may be taken subject to two calendar days' notice pursuant to FRCP 30(a) and 45, that notice may be given personally, by facsimile, or by electronic mail, and, if necessary, any deposition may last more than seven hours.

## XVI.    Force and Effect

45.     This Order shall remain in full force and effect until October 6, 2020 at 5:00 p.m., unless extended further by order of this Court pursuant to Fed. R. Civ. P. 65(b)(2), and this Court retains jurisdiction of this matter for all purposes.


        SIGNED on this 22nd day of September, 2020.


                                        DAVID C. GODBEY
                                        UNITED STATES DISTRICT JUDGE

23