## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| KELLY CRAWFORD, IN HIS CAPACITY AS RECEIVER, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 3:22-cv-01935-D |
| | § | |
| MAGICSTAR ARROW ENTERTAINMENT, LLC; MAGICSTAR ARROW, INC.; AND CARLOS CRUZ, | § § § § § | |
| *Defendants.* | § § | |

---

## DEFENDANTS' MOTION TO DISMISS
## UNDER RULES 8(a)/9(b), 12(b)(1), 12(b)(2), AND 12(b)(6)
## AND BRIEF IN SUPPORT

---

Jeffrey M. Tillotson
State Bar No. 20039200
jtillotson@tillotsonlaw.com
Benjamin L. Nabors
State Bar No. 24116805
bnabors@tillotsonlaw.com
**TILLOTSON, JOHNSON & PATTON**
1807 Ross Avenue, Suite 325
Dallas, Texas 75201
(214) 382-3041 Telephone
(214) 292-6564 Facsimile

**ATTORNEYS FOR DEFENDANTS**

Dated:  November 7, 2022

## TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................ii

TABLE OF AUTHORITIES .............................................................................iv

INTRODUCTION ............................................................................................. 1

FACTUAL BACKGROUND .............................................................................. 3

LAW & ARGUMENT......................................................................................... 5

    I. Plaintiff's Claims Against All Defendants. ............................................ 5

        A. The Court Lacks Subject Matter Jurisdiction

        Because Plaintiff's Claims Are Not Ripe. ........................................ 5

        B. The Complaint Fails to State a Claim for "Unjust Enrichment -

        Constructive Trust" ....................................................................... 7

        C. Plaintiff Fails to Satisfy Rule 9(b) with Respect to its Fraudulent

        Transfer Claims. ........................................................................... 9

        D. Plaintiff's "Fraudulent Transfer - Actual Fraud" Claim is Untimely

        with Respect to Certain Allegedly Fraudulent Transfers ............... 12

        E. Plaintiff's Failure to Identify Which State's Law Applies Requires

        Dismissal. .................................................................................... 14

    II. Plaintiff's Claims Against Defendant Cruz................................................ 16

        A. The Court Lacks Personal Jurisdiction

        Over Defendant Cruz.. .................................................................. 16

        B. Plaintiff's Claim for "Money Had and Received"

        Against Cruz Fails.......................................................................... 17

C. Plaintiff's "Claim" for

"Veil Piercing/Alter Ego/Single Enterprise" Fails. ......................... 18

CONCLUSION AND PRAYER ....................................................................... 20

CERTIFICATE OF SERVICE ......................................................................... 20

## TABLE OF AUTHORITIES

CASES

Avidor v. Sutter's Place, Inc.,
  (2013) 212 Cal.App.4th 1439 ................................................................... 17

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ................................................................................... 7

Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco,
  137 S.Ct. 1773 (2017) .............................................................................. 16

Clapper v. Am. Realty Investors, Inc.,
  No. 3:14-CV-2970-D, 2015 WL 3504856, *11 (N.D. Tex. June 3, 2015) ................ 19

Commodity Futures Trading Commission, et al., v. TMTE, Inc., et al.,
  Case: 3:20-cv-02910-X .......................................................................... 1, 3

Conde v. Sensa,
  259 F. Supp. 3d 1064 (S.D. Cal. 2017) ...................................................... 19

Douglass v. Nippon Yusen Kabushiki Kaisha,
  46 F.4th 226 (5th Cir. 2022) .................................................................... 16

Foley v. Trinity Indus. Leasing Co.,
  314 S.W.3d 593, 605 n.6 (Tex. App.—Dallas 2010, no pet.) ..................... 19

Halder v. Standard Oil Co.,
  642 F.2d 107, 110 (5th Cir. 1981) ............................................................... 5

Honeywell Int'l Inc. v. MEK Chem. Corp.,
  No. 3:17-cv-1390-M, 2018 WL 6737514, *7 (N.D. Tex. July 5, 2018) ..................... 15

Int'l Shoe Co. v. Washington,
  326 U.S. 310 (1945) ................................................................................. 16

Janvey v. Brown,
  767 F.3d 430 (5th Cir. 2014) .................................................................... 14

JPA, Inc. v. USF Processors Trading Corp, Inc.,
  No. 3:05-CV-0433-P, 2005 WL 8158446, *3 (N.D. Tex. July 15, 2005) ............. 9, 11

Kim v. Tesoro Refining & Mktg. Co. LLC,

No. 2:17-cv-06241-AB (RAOx), 2017 WL 11680958, *2 (C.D. Cal. Dec. 13, 2017)..5, 6

LeBrun v. CBS Television Studios, Inc., (2021)
    68 Cal.App.5th 199................................................................................................8


Megatel Homes, LLC v. Moayedi,
    No. 3:20-CV-00688-L, 2021 WL 5360509, *3 (N.D. Tex. Nov. 16, 2021) .................9


Mehler Texnologies, Inc. v. Monolithic Constructors, Inc.,
    No. 3:09-cv-0655-M, 2009 WL 3149383, *2 (N.D. Tex. Sept. 29, 2009)................5, 6


Reid v. City of San Diego, 24 (2018)
    Cal.App.5th 343...................................................................................................8


VeroBlue Farms USA, Inc. v. Wulf,
    465 F. Supp. 3d 633, 652 (N.D. Tex. 2020) .........................................................9, 10


Warfield v. Arpe,
    Civil Action No. 3:05-cv-1457-R 2007 WL 549467 at *11
    (N.D. Tex, Feb. 22, 2007) ......................................................................................17


Xcelerated Transp., Group, LLC v. Navistar, Inc.,
    No. 3:20-CV-3036-L, 2022 WL 1624901, *2 (N.D. Tex. May 20, 2022) .........7,10, 11

## <u>Statutes</u>

Cal. Civ. Code § 3439.02(b) ......................................................................................12
Cal. Civ. Code § 3439.09...........................................................................................13
Cal. Civ. Code § 3439(a)(1) ..................................................................................12, 15

## <u>Rules</u>

Federal Rule of Civil Procedure 12(b)(1) ..........................................................1, 2, 5, 7
Federal Rule of Civil Procedure 12(b)(2) ............................................................1, 2, 5
Federal Rule of Civil Procedure 12(b)(6) ........................................................... passim
Federal Rule of Civil Procedure 9(b)................................................................... passim

Defendants MagicStar Arrow Entertainment, LLC ("MagicStar Entertainment"), MagicStar Arrow, Inc. ("MagicStar," and, together with MagicStar Entertainment, the "MagicStar Entities"), and Carlos Cruz (collectively, "Defendants") hereby move to dismiss this case pursuant to Federal Rules of Civil Procedure 8(a)/9(b), 12(b)(1), 12(b)(2), and 12(b)(6), and state as follows in support thereof:

## INTRODUCTION

This is an effort to claw legitimate earnings back from a marketing contractor and its owner based on the mere allegation that the entities who hired the contractor engaged in fraud through their transactions with their own customers.

Defendants were in the marketing business when TMTE, Inc., a/k/a Metals.com, and related entities (collectively, the "Metals Entities") hired Defendants to market their sale of precious metals. The Metals Entities were placed in receivership after the Commodity Futures Trading Commission ("CFTC") and certain state agencies accused them of engaging in fraud by selling those precious metals at prices above their "base melt value" or "spot price."[1] Plaintiff is the Receiver who was appointed in the Underlying Case and now stands in the shoes of the Metals Entities (and certain other entities allegedly owned or controlled by the owners and/or control persons of the Metals Entities, Lucas Asher and/or Simon Batashvili) (collectively referred to herein as the "Receivership Entities"). And now, in an effort to hold

---

[1] This case, styled *Commodity Futures Trading Commission, et al., v. TMTE, Inc., et al.*, Case: 3:20-cv-02910-X is pending in the United States District Court for the Northern District of Texas and shall hereinafter be referred to as the "Underlying Case."

Defendants liable for the alleged fraud of the Receivership Entities, Plaintiff has sued Defendants for actual and constructive fraudulent transfer, unjust enrichment, and money had and received.  That effort fails, and his Complaint must be dismissed, for multiple reasons.

Specifically, all of the Defendants move to dismiss Plaintiff's claims based on the following grounds:

(a)    Plaintiff's claims are not ripe, so the Court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1);

(b)    Plaintiff fails to allege sufficient facts to support its claim for "unjust enrichment – constructive trust" under Federal Rules of Civil Procedure 8(a)/9(b) and 12(b)(6);

(c)    Plaintiff fails to plead his first and second causes of action—for actual and constructive fraudulent transfer, respectively—with sufficient particularity under Federal Rules of Civil Procedure 9(b) and 12(b)(6);

(d)    Plaintiff's actual fraud claim is barred by the applicable statute of limitations with respect to certain of the allegedly fraudulent transfers; and

(e)    Plaintiff fails to specify which state's law apply to any of his claims.

In addition, Defendant Carlos Cruz moves to dismiss Plaintiff's claims against him, individually, on the following grounds:

(a)    The Court lacks personal jurisdiction over Mr. Cruz under Federal Rule of Civil Procedure 12(b)(2);

(b)     Plaintiff fails to allege sufficient facts to support his claim for "Money Had and Received" against Cruz under Federal Rule of Civil Procedure 12(b)(6).

(c)     Plaintiff fails to plead sufficient facts to support his "claim" for "veil piercing/alter ego/single enterprise" under Federal Rule of Civil Procedure 12(b)(6).

## FACTUAL BACKGROUND

More than two years ago, on September 22, 2020, the CFTC and various state agencies and attorneys general initiated the Underlying Case against TMTE, Inc. a/k/a Metals.com, Chase Metals. Inc., Chase Metals, LLC, Barrick Capital, Inc., Lucas Asher a/k/a Luke Asher and Simon Batashvili in the United States District Court for the Northern District of Texas.  *See* Compl. Ex. B.[2]  On the same day, United States District Judge Godbey executed an Order Granting Plaintiffs' Emergency Ex Parte Motion for Statutory Restraining Order, Appointment of Receiver, and Other Equitable Relief (the "SRO").  *See* Compl. Ex. A.  The Receiver purports to have initiated the instant lawsuit pursuant to authority granted to him under the SRO. *See* Compl. ¶¶ 5-7.

Tellingly, the Complaint omits the tortured history behind the Receiver's efforts to hold Mr. Cruz responsible for the alleged misconduct of the defendants in the Underlying Case—in which Mr. Cruz was never named as a party and which, again, is hotly disputed and still being actively litigated by those who were named. Specifically, more than a year ago, the Receiver conjured up a *different* theory that a *different* entity owned by Mr. Cruz, Portfolio Insider, LLC (which is conspicuously not

---

[2]  The Underlying Case is currently scheduled for bench trial beginning August 21, 2023.

a party to the instant action), was actually owned or controlled by Asher and/or Batashvili.[3] In a procedurally irregular (and constitutionally suspect) move, the Receiver then attempted to use a civil contempt motion—brought against Asher and Batashvili in the Underlying Case—to effectively deprive Mr. Cruz of his ownership interest in Portfolio Insider by asking the Court to declare it a Receivership Defendant.[4] Despite the fact that neither Mr. Cruz nor any of his entities is a party to the Underlying Case, Mr. Cruz has cooperated with the Receiver, even agreeing to be deposed in the Underlying Case on July 13, 2022.[5]

Now, Plaintiff has filed the instant action in which he speculates that payments made to certain of the Defendants for marketing services they provided to the Receivership Entities were actually "fraudulent transfers made to insiders, intended to grow the underlying fraud, divert funds from one fraud to another and place the transfers beyond the reach of the Receiver and the Receivership Entities' creditors."  Compl. ¶2.  Tellingly, Plaintiff's own allegations fly in the face of this theory.  For example, the transfers which Plaintiff contends were designed to place assets beyond the Receiver's reach began in 2017 and span a multi-year period preceding the appointment of the Receiver.  Compl. Ex. C.

---

[3] *See* Receiver's Ermergency Motion for "Show Cause" Hearing to Hold Defendants Lucas Asher and Simon Batashvili in Civil Contempt, and Brief in Support filed in the Underlying Case [Dkt. 311].

[4] *Id.*  The contempt motion filed in the Underlying Case has not been ruled on and on October 7, 2022, the Court ordered the parties to mediation to attempt to resolve the motion.  Order [Dkt. 452].

[5] Tellingly, despite "cherry-picking" excerpts from Mr. Cruz's deposition testimony, Plaintiff does not include the transcript as an exhibit to its Complaint, so only provides the Court will an incomplete (and self-selected) picture of Mr. Cruz's testimony.

4

Significantly, per Plaintiff's own allegations, each of the allegedly fraudulent transfers were made from the Receivership Entities to one of the MagicStar Entities. Compl. ¶ 28; Ex. C. Specifically, Plaintiff identifies each of the allegedly fraudulent transfers on a chart attached as Exhibit C to the Complaint. Compl. ¶ 28; Ex. C. According to this chart, the MagicStar Entities are listed as the "payee" on each of the transfers at issue. Conversely, Plaintiff does not allege that any of the transfers at issue in the Complaint were actually made to Mr. Cruz. In fact, Plaintiff does not specifically allege anywhere in the Complaint that Mr. Cruz personally received any property from the Receivership Entities.

## LAW & ARGUMENT

Defendants move to dismiss under Rules 8(a)/9(b), 12(b)(1), 12(b)(2), and 12(b)(6).

### I.   Plaintiffs' Claims Against All Defendants.

#### A.   The Court Lacks Subject Matter Jurisdiction Because Plaintiff's Claims Are Not Ripe.

"It is fundamental that the federal courts do not decide abstract, hypothetical, or contingent questions." *Halder v. Standard Oil Co.*, 642 F.2d 107, 110 (5th Cir. 1981). Therefore, "[j]urisdiction under Article III of the United States Constitution requires that a dispute demonstrate sufficient ripeness to establish a concrete case or controversy." *Mehler Texnologies, Inc. v. Monolithic Constructors, Inc.*, No. 3:09-cv-0655-M, 2009 WL 3149383, *2 (N.D. Tex. Sept. 29, 2009) (Lynn, J.) (internal quotation marks omitted). "[W]here the need to resolve a dispute depends on the plaintiff first facing an adverse result in pending litigation, the plaintiff's claim is not

ripe for review." *Kim v. Tesoro Refining & Mktg. Co. LLC*, No. 2:17-cv-06241-AB (RAOx), 2017 WL 11680958, *2 (C.D. Cal. Dec. 13, 2017); *see also*, *e.g.*, *Mehler*, 2009 WL 3149383 at *2 (dismissing claims seeking damages that "are contingent on future events" consisting of potential claims seeking compensation "which may not occur as anticipated, or may not occur at all").

All of Plaintiff's claims are predicated on the assumption that the Receivership Entities were, in fact, defrauding their customers/investors when the entities improperly made payments to MagicStar Entities. *See* Compl. Indeed, the Receiver purports to be acting "for the benefit of the Investors" in bringing these claims. *Id.* ¶ 58. And it is that alleged fraud that Plaintiff contends turned the payments into "fraudulent transfers," made the payments "unjust," and merit holding Mr. Cruz liable in his individual capacity for the payments to the MagicStar Entities. *Id.* ¶¶ 43-63.

To be sure, the CFTC and others have <u>*accused*</u> the Receivership Entities of engaging in that fraud. *See* Compl. at Ex. B (CFTC Complaint). But those accusations are disputed and are still being litigated in another pending case to which Defendants are not parties. So, the Receivership Entities might <u>*or might not*</u> be found—in a different pending case—to have committed the fraud on which all of Plaintiff's claims depend.[6] If they are not found to have committed fraud, Plaintiff's

---

[6] Adjudicating the Receivership Entities' alleged fraud in this case, when it is already the subject of other pending litigation, is no solution. Among other things, the allegedly defrauded people are not parties to this case, the alleged fraudsters are not parties to this case (and even the Receivership Entities, while technically represented by the Receiver, have no one in this case to argue that they did not commit fraud, when the Receiver is contending otherwise), and there is a clear risk of inconsistent findings and verdicts.

claims against Defendants necessarily fail.  That means these claims are contingent on future events and not yet ripe, and must be dismissed on that ground, alone.  *See, e.g., Mehler*, 2009 WL 3149383 at \*2; *Kim*, 2017 WL 11680958 at \*2.  This Court cannot issue an advisory opinion about whether these Defendants *would* be liable for fraudulent transfer, unjust enrichment, and money had and received *if* the Receivership Entities committed fraud.  Accordingly, Plaintiff's claims must be dismissed under Federal Rule of Civil Procedure 12(b)(1).

### B.    The Complaint Fails to State a Claim for "Unjust Enrichment - Constructive Trust."

"To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Xcelerated Transp., Group, LLC v. Navistar, Inc.*, No. 3:20-CV-3036-L, 2022 WL 1624901, \*2 (N.D. Tex. May 20, 2022) (Lindsay, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  That requires "'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  And "[w]hile well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not entitled to the assumption of truth," nor are "conclusory allegations, unwarranted deductions, or legal conclusions" to be accepted.  *Id.* (internal quotation marks omitted).

Accepting Plaintiff's allegations as true, Plaintiff fails to state a claim for what he calls "unjust enrichment - constructive trust."[7]  *See* Compl. at 16.  As a preliminary

---

[7] As a preliminary matter, Plaintiff fails to identify the state's law he seeks to apply to any of his claims, which, as set forth below, constitutes another ground on which to dismiss his claims. Nonetheless, for purposes of this Motion, Defendants assume that California law applies to Plaintiff's

matter, that name conflates distinct concepts.  "Unjust enrichment" is one concept, and "constructive trust" is another.  In any event, both constitute equitable remedies, rather than independent claims, and Plaintiff has not and cannot state a claim for either.

Under California law, unjust enrichment is an equitable doctrine that provides a "remedy for a validly pleaded cause of action."  *LeBrun v. CBS Television Studios, Inc.*, 68 Cal. App. 5th 199, 210 (2021).  The spirit behind unjust enrichment is to "apply the law outside of the box and fill in the cracks where common civil law and statutes fail to achieve justice."  *Id.*  (internal quotation marks omitted).  Thus, conversely, where statute and common law provide a method for achieving justice, the remedy is unavailable.  *Id.*

Here, the only independent claims asserted by Plaintiff are fraudulent transfer claims.  If, on the one hand, Plaintiff succeeds on his fraudulent transfer claims, then the equitable remedy of unjust enrichment will be unavailable.  Conversely, if Plaintiff does not succeed on his fraudulent transfer claims, then no other validly pleaded claim exists to support the remedy of unjust enrichment.  Accordingly, under any possible scenario, Plaintiff's unjust enrichment claim fails.

Similarly, to the extent Plaintiff's claim is for "constructive trust," a constructive trust is "merely a remedy" which is dependent on the validity of an underlying cause of action.  *Reid v. City of San Diego,* 24 Cal. App. 5th 343, 362 (2018). In sum, Plaintiff has failed to set forth allegations which could possibly support Count

---

claims, since that is the only one Plaintiff's Complaint mentions, albeit pointedly without taking a position on whether it actually applies.

3 of the Complaint, "Unjust Enrichment – Constructive Trust," so this claim should be dismissed under Rule 12(b)(6).

**C.    Plaintiff Fails to Satisfy Rule 9(b) with Respect to Its Fraudulent Transfer Claims.**

Rule 9(b) mandates that, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim." *Megatel Homes, LLC v. Moayedi*, No. 3:20-CV-00688-L, 2021 WL 5360509, *3 (N.D. Tex. Nov. 16, 2021) (Lindsay, J.). Rule 9(b)'s "heightened pleading standard . . . requires a plaintiff to plead the circumstances constituting fraud with particularity," including "the who, what, when, where, and how" of the alleged fraud. *Id.* (internal quotation marks omitted). That standard applies to all claims sounding in fraud, no matter how they are denominated, and a claim "sounds in fraud" if it relies on allegations of fraudulent conduct, "whether they are part of a claim of fraud or not." *E.g.*, *JPA, Inc. v. USF Processors Trading Corp, Inc.*, No. 3:05-CV-0433-P, 2005 WL 8158446, *3 (N.D. Tex. July 15, 2005) (Solis, J.) (internal quotation marks omitted) (applying Rule 9(b) to negligent misrepresentation claim); *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 652 (N.D. Tex. 2020) (Starr, J.) (same for actual fraudulent transfer claims).

i.    Plaintiff's Claim for "Voidable/Fraudulent Transfer – Actual Fraud"

Although the number of grounds would no doubt grow upon disclosure of the state's law that Plaintiff asks the Court to apply, it is already clear that his claim for actual fraudulent transfer fails on at least two grounds, no matter which state's law

applies.  Further, under California law, Plaintiff's fraudulent transfer claim is barred by the applicable statute of limitations with respect to at least some of the allegedly fraudulent transfers.

Plaintiff's allegations are impermissibly formulaic and conclusory.  He alleges, for example, that "[t]he Transfers and their amounts were concealed from creditors," but does not provide any factual allegations to support any such thing.  *See id.* ¶ 45(b). Plaintiff then alleges that "the Receivership Entities concealed assets, including by diverting monies received from Investors for the sale of metals to a myriad of shell entities and bank accounts," but (1) Defendants are not the Receivership Entities and (2) Plaintiff does not identify either the "monies received" or the "shell entities and bank accounts" to which those unspecified monies allegedly were diverted.  *See id.* ¶ 45(c).  The list goes on and is consistently devoid of factual support.  Essentially, Plaintiff appears to have just listed the factors in some unidentified state's fraudulent-transfer statute.  Such formulaic and conclusory recitations of a claim's elements do not even suffice under Rule 8(a)'s permissive pleading standard, let alone the heightened standard under Rule 9(b) that applies to this claim for actual fraudulent transfer "with intent to defraud."  *See Xcelerated*, 2022 WL 1624901 at \*2; *VeroBlue*, 465 F. Supp. 3d at 652.

ii. <u>Plaintiff's Claim for "Voidable/Fraudulent Transfer – Constructive Fraud"</u>

Plaintiff's claim for constructive fraudulent transfer fares no better.  Again, in support, Plaintiff provides nothing more than conclusory allegations consisting of formulaic recitations of the elements in an unidentified state's law.  *See* Compl. ¶¶ 50-

51.  Plaintiff's liberal use of the word "or" to allege alternative upon alternative set of facts of which he might (or might not) be accusing Defendants is particularly problematic.  *See id.*  It is Plaintiff's obligation to give Defendants fair notice of what they are actually being accused of, with supporting factual allegations, not merely to list the panoply of things Plaintiff is considering accusing them of.  *See Xcelerated*, 2022 WL 1624901 at *2; *Twombly*, 550 U.S. at 555.

Equally problematic is Plaintiff's failure to describe the "business or [] transaction for which the remaining assets of the Receivership Entities were [allegedly] unreasonably small" and what "debts beyond their ability to pay as they became due" the Receivership Entities allegedly were incurring. Compl. ¶ 50.  Those facts are at the heart of Plaintiff's claim but are utterly unpleaded.  That also means Plaintiff's allegation that the Receivership Entities were "insolvent" is an unsupported legal conclusion that does not satisfy Plaintiff's pleading burden.  *See Xcelerated*, 2022 WL 1624901 at *2; *Twombly*, 550 U.S. at 555.

Additionally, while Plaintiff did allege in a different claim that the "claims held by defrauded Investors" constituted "debts" of the Receivership Entities at the time the transfers were made, Compl. ¶ 45(e), that does not suffice either.  As an initial matter, Plaintiff's failure to plead those facts as to this claim makes it unclear whether this claim relies on the same alleged "debts."  That raises a further problem because Plaintiff cannot base this claim on "debts" created through actual "fraud" without subjecting this claim to Rule 9(b)'s heightened pleading standards, which makes his pleadings even more clearly inadequate.  *See JPA*, 2005 WL 8158446 at *3

(applying Rule 9(b) to non-fraud claim if it nonetheless is based on allegations of fraud). Nor are the "claims held by defrauded Investors" cognizable "debts" rendering a party "insolvent" for fraudulent transfer purposes. Those claims (1) had not even been asserted at the time of the transfers and (2) are still hotly disputed and being actively litigated to this day. The very California statute that Plaintiff cites in this claim expressly excludes mere *alleged* debts that are unpaid "as a result of a bona fide dispute" from those that are relevant to determining "insolvency." Cal. Civ. Code § 3439.02(b); Compl. ¶ 51.

In sum, neither of Plaintiff's fraudulent transfer claims set forth fraud with sufficient particularity to satisfy Rule 9(b) and thus both of these claims should be dismissed against all Defendants. In addition, Plaintiff's allegations affirmatively **negate** its fraudulent transfer claims against Cruz. Plaintiff identifies the allegedly fraudulent transfers at issue in this case in Exhibit C to the Complaint. *See* Compl. ¶28; Ex. C. The "payee" listed on each of these transfers is one of the MagicStar Entities. Cruz is not listed as the payee on a single transfer.

### D. Plaintiff's "Fraudulent Transfer – Actual Fraud" Claim is Untimely with Respect to Certain Allegedly Fraudulent Transfers.

Plaintiff's fraudulent transfer claim is barred, at least in part, by applicable statute of limitations. Specifically, with respect to its fraudulent transfer claim, Plaintiff alleges that certain transfers—identified in Exhibit C to the Complaint—from the Receivership Entities to the MagicStar Defendants were fraudulent under Cal. Civ. Code § 3439(a)(1). Compl. ¶44.

Pursuant to Cal. Civ. Code § 3439.09:

[a] cause of action with respect to a transfer or obligation under this chapter is extinguished unless action is brought…:

(a) Under paragraph (1) of subdivision (a) of Section 3439.04, not later than four years after the transfer was made or the obligation was incurred, or, if later, not later than one year after the transfer or obligation was or could reasonably have been discovered by the claimant; [or]
(b) Under paragraph (2) of subdivision (a) of Section 3439.04 or Section 3439.05, not later than four years after the transfer was made or the obligation was incurred.

Here, under either of these standards, Plaintiff's fraudulent transfer claim is untimely with respect to many of the alleged transfers identified in Exhibit C to the Complaint. Plaintiff filed the instant lawsuit on August 31, 2022. Accordingly, under § 3439.09(b), any cause of action asserted under 3439.04(a)(2) expired on August 31, 2018. Here, according to Plaintiff's own allegations, more than twenty of the alleged transfers identified in Exhibit C to Plaintiff's Complaint occurred before August 31, 2018, so Plaintiff's fraudulent transfer claim is time-barred with respect to these transfers.

Even if Plaintiff's fraudulent transfer claims arise under 3439.04(a)(1), Plaintiff would have had to assert its claims "not later than one year after the transfer . . . was or could reasonably have been discovered by the claimant." Here, even assuming that the "claimant" is the Receiver (rather than the Receivership Entities), the claimant could reasonably have discovered the alleged transfers at issue long ago. The Receiver was appointed over the Receivership Entities on September 22, 2020. Accordingly, even assuming generously that it would reasonably take nine months to

discover the alleged transfers, they should have been discovered by June 22, 2021, at the latest, and the claims asserted within a year therefrom (June 22, 2022).

Cognizant of its timeliness problem, Plaintiff attempts to revive its fraudulent transfer cause of action by alleging in conclusory fashion that "the Receiver was unable to discover or assert the claims until recently." Compl. ¶ 35. However, Plaintiff then contradicts itself and admits that it was aware of the alleged transfers by at least May 18, 2021, when it "made demand upon the MagicStar Defendants to identify any goods or services provided to the Receivership Defendants in exchange for the monies received by Receivership Defendants." *Id.* ¶ 36. Accordingly, Plaintiff's fraudulent transfer claims related to alleged transfers made before August 31, 2018 are untimely and must be dismissed.

### E.   Plaintiff's Failure to Identify Which State's Law Applies Requires Dismissal.

An additional threshold issue infects all of Plaintiff's claims and, alone, requires dismissal: Plaintiff never bothers to identify the statutes/state laws under which he seeks to hold Defendants liable. *See* Compl. That is a real problem in this lawsuit because Texas choice-of-law rules apply, "and Texas courts follow the 'most significant relationship' test." *Janvey v. Brown*, 767 F.3d 430, 434 (5th Cir. 2014) (internal quotation marks omitted).

 Plaintiff brought suit in Texas, but his allegations focus on California, Florida, and Wyoming.  He alleges that MagicStar and MagicStar Entertainment are California entities whose principal offices were in California but who could be served only in Florida; that Mr. Cruz's "last known addresses" were in California and

Florida; and that he obtained jurisdiction over Defendants only by filing the Receivership Order and underlying complaint "in all districts in California and Florida." Compl. ¶¶ 10-15. Meanwhile, the Receivership Entities that allegedly conducted the fraud underlying this entire dispute are Wyoming entities with offices there and/or in California. *Id.* at Ex. B ¶¶ 24-27.

To further muddy the waters, in his fraudulent transfer claims, Plaintiff alleges that the transfers alleged here "were fraudulent under Cal. Civ. Code § 3439(a)(1) and/or any other applicable State's adoption of the Uniform Fraudulent Transfer Act." *Id.* ¶¶ 47, 51. That allegation could not possibly be any broader and vaguer.

Plaintiff's failure to identify which state's law applies to the claims by which he seeks to hold Defendants liable, alone, requires that the Complaint be dismissed. *See, e.g., Honeywell Int'l Inc. v. MEK Chem. Corp.*, No. 3:17-cv-1390-M, 2018 WL 6737514, *7 (N.D. Tex. July 5, 2018) (Lynn, C.J.) (granting motion to dismiss because, *inter alia*, "Defendants' allegations do not identify which law applies and thus fail to give Plaintiff 'fair notice of what the . . . claim is and the grounds upon which it rests'" (quoting *Twombly*, 550 U.S. at 555) (alteration original)).

Plaintiff concludes his Complaint with a conclusory request for "all reasonable attorney's fees and expenses incurred in obtaining judgment against the MagicStar Defendants." Compl. ¶ 64. Once again, because he has avoided identifying the law(s) under which he seeks to hold Defendants liable, Plaintiff has also failed to provide any legal basis entitling him to recover his fees and expenses. *See id.*

15

## II. Plaintiff's Claims Against Defendant Cruz.

### A.     The Court Lacks Personal Jurisdiction Over Defendant Cruz.

The Fourteenth Amendment Due Process Clause places limits on the scope of a court's personal jurisdiction. *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 236 (5th Cir. 2022). The Court's authority over a defendant depends on the defendant having "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). The primary focus of that inquiry is "the defendant's relationship to the forum state." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco*, 137 S.Ct. 1773, 1779 (2017).

Here, the sole basis for personal jurisdiction over the Defendants alleged by Plaintiff is the "Receiver's compliance with 28 U.S.C. §§ 753 and 754 . . . together with 28 U.S.C. § 1692."[8] Compl. ¶ 14. 28 U.S.C. § 754 provides as follows:

> A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.
>
> He shall have capacity to sue in any district without ancillary appointment, and may be sued with respect thereto as provided in section 959 of this title.
>
> Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

---

[8] It is not at all clear how 28 U.S.C. § 753–which relates to the appointment of court reports–has any bearing on jurisdictional issues in this case.

Further, 28 U.S.C. § 1692 provides:

> [i]n proceedings in a district court where a receiver is appointed for property, real, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.

Section 1692 "operates as a nationwide service of process statute that may be used to acquire personal jurisdiction over defendants in possession of receivership assets." *Warfield v. Arpe*, No. 3:05-cv-1457-R, 2007 WL 549467, *11 (N.D. Tex., Feb. 22, 2007) (Buchmeyer, J.).  Here, taking the Receiver's allegations at face value, only the MagicStar Entities, and not Mr. Cruz personally, would possess receivership assets by virtue of the allegedly fraudulent transfers.  *See* Compl. ¶ 44; Ex. C. Plaintiff has not identified a single transfer or other means by which Mr. Cruz ever acquired any such assets.  While the Receiver alleges that Mr. Cruz should be held liable for the allegedly fraudulent transfers made to the MagicStar Entities through a veil piercing or alter ego theory (Compl. ¶¶ 60-61), as set forth in greater detail below, these conclusory allegations fail.  Accordingly, because Plaintiff has failed to set forth well-pled allegations that *Mr. Cruz* is in possession of receivership assets, personal jurisdiction cannot be established under § 1692.

## B.    Plaintiff's Claim for "Money Had and Received" Fails Against Cruz.

Under California law, a plaintiff states a cause of action for money had and received if it alleges that the defendant is indebted to the plaintiff in a certain sum "for money had *and received by the defendant* for the use of the plaintiff."  *Avidor v. Sutter's Place, Inc.,* 212 Cal.App.4th 1439, 1454 (2013).  In order to succeed on this

claim, Plaintiff must plead and prove that "the Defendant[s] received money intended to be used for the benefit of the Plaintiff, that the money was not used for the Plaintiff's benefit, and that the Defendant[s] has not given the money to the Plaintiff." *Id*. (internal quotation marks omitted).

With respect to Mr. Cruz, Plaintiff's claim fails at the outset because, as repeatedly noted herein, Plaintiff does not allege that *any* of the allegedly fraudulent transfers were made to Cruz.  To the contrary, Plaintiff affirmatively alleges that each of the transfers were made to one of the MagicStar Entities.  Compl. Ex. C.

### C.   Plaintiff's "Claim" for "Veil Piercing/Alter Ego/Single Enterprise" Fails.

Plaintiff's composite claim for "Veil Piercing/Alter Ego/Single Enterprise" is the mechanism by which he seeks to connect Mr. Cruz to the transfers based on his mere ownership of MagicStar and MagicStar Entertainment.  *See id*. ¶¶ 60-63. Plaintiff's failure to identify the state's law under which he proceeds improperly handicaps Defendants' ability to fully assess this claim, too, but it is still clearly not adequately pleaded.

***First***, "veil piercing," "alter ego," and "single enterprise" are not synonymous. Each applies only under certain circumstances, when certain elements are met, and only in certain states.  For example, Texas recognizes "alter ego" liability, but "[t]he Texas Supreme Court has rejected the single business enterprise theory of liability," *Foley v. Trinity Indus. Leasing Co.*, 314 S.W.3d 593, 605 n.6 (Tex. App.—Dallas 2010, no pet.).  In California, "alter ego liability is reserved for the parent-subsidiary relationship" and the "single-enterprise rule" may apply "between sister companies."

*Conde v. Sensa*, 259 F. Supp. 3d 1064, 1072 (S.D. Cal. 2017) (internal quotation marks omitted).

 ***Second***, although Plaintiff's failure to identify the state's law under which he seeks to hold Mr. Cruz individually liable again makes it impossible to fully assess his allegations, it is clear that they are not adequate.  They are, again, utterly conclusory, formulaic, and devoid of factual support.  For example, Plaintiff alleges that the transfers made to MagicStar and MagicStar Entertainment were "for the personal benefit of Cruz" and that Mr. Cruz "used the MagicStar Defendant entities as his alter ego," but provides <u>no</u> factual support for those conclusory allegations.  *See* Compl. ¶ 61.  For example, in *Clapper v. Am. Realty Investors, Inc.*, No. 3:14-CV-2970-D, 2015 WL 3504856, *11 (N.D. Tex. June 3, 2015), Judge Fitzwater dismissed as "conclusory and insufficient . . . under Rule 12(b)(6)" alter ego allegations that were *more* detailed than Plaintiff's here.  Clapper at least conclusorily alleged a requisite "'unity' of interest" among the defendants, including "the commingling of funds, . . . diversion of . . . assets and/or profits and inadequate capitalization . . . , confusion between separate properties, records and control and failure to keep assets separate." *Id.*  That still was not enough because Clapper provided no supporting factual allegations, but Plaintiff here has done even less.  Rather than allege facts establishing the elements of "alter ego" liability, Plaintiff simply says Mr. Cruz "used the MagicStar Defendant entities as his alter ego," and leaves it at that.  Compl. ¶ 61.

## CONCLUSION & PRAYER

For the reasons set forth above, Defendants respectfully request that the Court dismiss Plaintiff's claims and grant them such other and further relief to which they may be entitled.

Respectfully submitted,

*/s/ Jeffrey M. Tillotson*
Jeffrey M. Tillotson
State Bar No. 20039200
jtillotson@tillotsonlaw.com
Benjamin L. Nabors
State Bar No. 24116805
bnabors@tillotsonlaw.com
**TILLOTSON, JOHNSON & PATTON**
1807 Ross Avenue, Suite 325
Dallas, Texas 75201
(214) 382-3041 Telephone
(214) 292-6564 Facsimile

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The above and foregoing document was served upon counsel herein by ECF on November 7, 2022.

*/s/ Jeffrey M. Tillotson*
Jeffrey M. Tillotson