**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **KELLY CRAWFORD, IN HIS CAPACITY AS RECEIVER,** §§§§ | |
| **Plaintiff,** § | |
| **v.** § | **CASE NO. 3:22-CV-01935-X** |
| § | |
| **MAGICSTAR ARROW ENTERTAINMENT, LLC, MAGICSTAR ARROW, INC., AND CARLOS CRUZ,** §§§§ | |
| **Defendants.** § | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Respectfully submitted,

SCHEEF & STONE, LLC,

PETER LEWIS
State Bar No. 12302100
peter.lewis@solidcounsel.com
500 North Akard, Suite 2700
Dallas, Texas 75201
(214) 706-4200 Telephone
(214) 706-4242 Facsimile

BROWN FOX PLLC

CHARLENE C. KOONCE
State Bar No. 11672850
charlene@brownfoxlaw.com
Cortney C. Thomas
State Bar No. 24075153
cort@brownfoxlaw.com
8111 Preston Road, Suite 300
Dallas, Texas 75225
(214) 327-5000 Telephone
(214) 327-5001 Facsimile

**ATTORNEYS FOR PLAINTIFF**
**KELLY CRAWFORD, IN HIS**
**CAPACITY AS RECEIVER**

## TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................. 1

II.  BACKGROUND ............................................................................................. 1

III.  ARGUMENTS & AUTHORITIES ................................................................. 3

    A.  Summary ............................................................................................... 3

    B.  Choice of Law ...................................................................................... 4

    C.  Defendants Confuse Ripeness with Evidentiary Considerations ........... 5

        1.  A Judgment in the Underlying Lawsuit is Unnecessary to Establish Ripeness ................................................................................. 6

        2.  A Judgment Will Provide Evidence of the Receivership Entities' Fraud... 8

    D.  The "Unjust Enrichment/Constructive Trust Claims are Plausible ...................... 10

        1.  Plausibility Standard ...................................................................... 10

        2.  The Unjust Enrichment and Constructive Trust Claims are Viable, Alternative Claims ................................................................. 10

    E.  The Fraudulent Transfer Claims Comply With the Applicable Pleading Standards ............................................................................................... 13

        1.  Rule 9(b)'s Requirements ............................................................... 13

        2.  The Actual Fraud-Fraudulent Transfer Claim, Count I, Satisfies Rule 9(b) ....................................................................... 15

        3.  Count II, for Constructively Fraudulent Transfers, More than Satisfies *Twombly* ................................................................. 17

    F.  Limitations Does Not Justify Dismissal ............................................... 19

    G.  The Receiver's Claims Against Cruz Are Each Plausible ................... 21

        1.  The Complaint Establishes Facial Jurisdiction Over Cruz ................ 21

        2.  Defendants' Challenges to the Money Had and Received Claim Falters on Cruz's Use of the MagicStar Entities as His Alter Ego ..................... 23

IV.  MOTION FOR LEAVE TO AMEND ......................................................... 25

V.  CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) ........................................................................................ 7

*Abecassis v. Wyatt*,
902 F. Supp. 2d 881 (S.D. Tex. 2012) ......................................................... 21

*Amling v. Harrow Indus. LLC*,
943 F.3d 373 (7th Cir. 2019) .......................................................................... 7

*Asarco, LLC v. Americas Mining Corp.*,
396 B.R. 278 (S.D. Tex. 2008) ...................................................................... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................ 10

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
627 F.3d 547 (5th Cir. 2010) ........................................................................ 22

*Berry v. Indianapolis Life Ins. Co.*,
608 F. Supp. 2d 785 (N.D. Tex. 2009) ....................................................... 14

*Biliouris v. Sundance Resources, Inc.*,
559 F.Supp.2d 733 (N.D. Tex. 2008) .......................................................... 17

*Bowlby v. City of Aberdeen, Miss.*,
681 F.3d 215 (5th Cir. 2012) ........................................................................ 10

*Castleberry v. Branscum*,
721 S.W.2d 270 (Tex. 1986) .......................................................................... 24

*Colwell v. Dep't of Health & Human Services*,
558 F.3d 1112 (9th Cir. 2009) ........................................................................ 6

*Dean v. Davis*,
242 U.S. 438 (1917) .......................................................................................... 9

*Dueling v. Devon Energy Corp.*,
623 Fed. Appx. 127 (5th Cir. 2015) ............................................................ 25

*ESG Capital Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ...................................................................... 11

*Ford Motor Credit Co. v. Chiorazzo*,
   529 F. Supp. 2d 535 (D.N.J. 2008) .......................................................................... 7

*Guidry v. Bank of LaPlace*,
   954 F.2d 278 (5th Cir. 1992) ................................................................................... 14

*Guzman v. Nationstar Mortg. LLC*,
   No. 4:17-cv-823-O-BP, 2017 WL 6597959 (N.D. Tex. Dec. 8, 2017),
   *report and recommendation adopted*, No. 4:17-cv-823-O-BP, 2017 WL 6594199 (N.D. Tex.
   Dec. 26, 2017) .......................................................................................................... 25

*Harlow v. Friendship Med. Clinic, LLC*,
   No. 315CV00160MPMSAA, 2016 WL 9130982 (N.D. Miss. Apr. 28, 2016) ...................... 25

*Heldenfels Am. Intern. Specialty Lines Ins. Co. v. Canal Indem. Co.*,
   352 F.3d 254 (5th Cir. 2003) ................................................................................... 11

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
   832 S.W.2d 39 (Tex. 1992) ...................................................................................... 11

*Hines v. Wainwright*,
   539 F.2d 433 (5th Cir. 1976) ................................................................................... 25

*Holcombe v. United States*,
   No. SA-18-CV-555-XR, 2021 WL 67217 (W.D. Tex. Jan. 6, 2021) ............................. 22

*Holden v. Capri Lighting, Inc.*,
   960 S.W.2d 831 (Tex. App.—Amarillo 1997, no pet.) ............................................... 4

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   279 F.R.D. 395 (S.D. Tex. 2011) ............................................................................. 21

*In re Essential Fin. Educ., Inc.*,
   629 B.R. 401 (Bankr. N.D. Tex. 2021) ..................................................................... 15

*In re IFS Fin. Corp.*,
   669 F.3d 255 (5th Cir. 2012) ................................................................................... 9

*In re Moriarty*,
   No. 12-22878-MLB, 2014 WL 6623005 (Bankr. C.D. Cal. Nov. 20, 2014) .................. 13

*In re Texas Rangers Baseball Partners*,
   498 B.R. 679 (Bankr. N.D. Tex. 2013) ..................................................................... 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. C 10-5625 SI, 2011 WL 4345435 (N.D. Cal. Sept. 15, 2011) ............................. 11

*Janvey v. Alguire*,
    846 F. Supp. 2d 662 (N.D. Tex. 2011) ........................................................................ passim

*Janvey v. Brown*,
    767 F.3d 430 (5th Cir. 2014) ........................................................................................ 4

*Janvey v. Democratic Senatorial Campaign Comm., Inc.*,
    712 F.3d 185 (5th Cir. 2013) ............................................................................... 6, 7, 20

*Janvey v. Golf Channel, Inc.* (*Golf Channel III*),
    487 S.W.3d 560 (Tex. 2016) ......................................................................................... 10

*Janvey v. Golf Channel, Inc.*,
    834 F.3d 570 (5th Cir. 2016) ........................................................................................ 10

*Janvey v. Romero*,
    817 F.3d 184 (5th Cir. 2016) ........................................................................................ 20

*Janvey v. Suarez*,
    978 F. Supp. 2d 685 (N.D. Tex. 2013) ...................................................................... 5, 8

*Joseph v. Frank* (*In re Troll Comm'n, LLC*),
    285 B.R. 110 (Bankr. D. Delaware 2008) .................................................................. 17

*Kaye v. Lone Star Fund V (U.S.), L.P.*,
    453 B.R. 645 (N.D. Tex. 2011) .................................................................................... 15

*Kim v. Tesoro Ref. & Mktg. Co. LLC*,
    No. 217CV06241ABRAOX, 2017 WL 11680958 (C.D. Cal. Dec. 13, 2017) ............ 8

*LeBrun v. CBS Television Studios, Inc.*,
    68 Cal. App. 5th 199, 283 Cal. Rptr. 3d 260 (2021) ................................................. 11

*Matter of: Life Partners Holdings, Inc.*,
    926 F.3d 103 (5th Cir. 2019) ................................................................................. passim

*Meadows v. Bierschwale*,
    516 S.W.2d 125 (Tex. 1974) ........................................................................................ 13

*Mehler Texnologies, Inc. v. Monolithic Constructors, Inc.*,
    No. CIV.A. 3:09-CV-0655-, 2009 WL 3149383 (N.D. Tex. Sept. 29, 2009) ............ 8

*Melder v. Morris*,
    27 F.3d 1097 (5th Cir.1994) ......................................................................................... 13

*Monet v. Chase Home Fin., LLC*,
    No. C 10-0135 RS, 2010 WL 2486376 (N.D. Cal. June 16, 2010) ............................ 12

*Mumblow v. Monroe Broad., Inc.*,
  401 F.3d 616 (5th Cir. 2005) ..................................................................... 5

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
  833 F.2d 583 (5th Cir. 1987) ..................................................................... 6

*Paterson v. Weinberger*,
  644 F.2d 521 (5th Cir. 1981) ..................................................................... 22

*Playboy Enters. v. Sanchez-Campuzano*,
  519 F. App'x 219 (5th Cir. 2013) ......................................................... 4, 13

*Qingdao Tang-Buy Int'l Imp. & Exp. Co., Ltd. v. Preferred Secured Agents, Inc.*,
  No. 15-CV-00624-LB, 2015 WL 7776331 (N.D. Cal. Dec. 3, 2015) ....................... 7

*Reg'l Specialty Clinic, P.A. v. S.A. Randle & Associates, P.C.*,
  625 S.W.3d 895 (Tex. App.—Houston [14th Dist.] 2021, no pet.) ........................ 11

*Rimade Ltd. v. Hubbard Enterprises, Inc.*,
  388 F.3d 138 (5th Cir.2004) ..................................................................... 23

*Rodriguez v. Tex. Comm'n of Arts*,
  992 F. Supp. 876 (N.D. Tex. 1998), *aff'd sub nom. Rodriguez v. Tex. Comm'n on the Arts*, 199
  F.3d 279 (5th Cir. 2000) ..................................................................... 21

*Roman Catholic Archbishop v. Superior Court*, 15 Cal. App. 3d 405, 93 Cal. Rptr. 338 (Ct. App.
  1971) ..................................................................... 23

*Screen Capital Intern. Corp. v. Library Asset Acquisition Co., Ltd.*,
  510 B.R. 248 (C.D. Cal. 2014) ..................................................................... 13

*Smith ex rel. Estates of Boston Chicken, Inc. v. Arthur Anderson, LLP*,
  175 F. Supp. 2d 1180 (D. Ariz. 2001) ..................................................................... 18

*Spring St. Partners-IV, L.P. v. Lam*,
  730 F.3d 427 (5th Cir. 2013) ..................................................................... 24

*SSP Partners v. Gladstrong Invs. (USA) Corp.*,
  275 S.W.3d 444 (Tex. 2008)..................................................................... 24

*Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*,
  300 S.W.3d 348 (Tex. App.—Dallas 2009, pet. denied) ........................................ 11

*U.S. Bank Nat. Ass'n v. Verizon Commc'ns Inc.*,
  817 F. Supp. 2d 934 (N.D. Tex. 2011) ..................................................................... 14

*U.S. ex rel. Grubbs v. Kanneganti*,
  565 F.3d 180 (5th Cir. 2009) ..................................................................... 14

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
   125 F.3d 899 (5th Cir. 1997) ................................................................ 10

*VeroBlue Farms USA, Inc. v. Wulf*,
   465 F. Supp. 3d 633 (N.D. Tex. 2020) ............................................... 9, 21

*Vision Bank v. Jordan*,
   No. 3:11-CV-2065-B, 2012 WL 716097  (N.D. Tex. Mar. 5, 2012)........................................ 14

*Waller v. DB3 Holdings, Inc.*,
   No. CIV.A.3:07-CV-0491-D, 2008 WL 373155 (N.D. Tex. Feb. 12, 2008) ........................... 12

*Warfield v. Arpe*,
   No. CIVA 3:05CV1457 R, 2007 WL 549467 (N.D. Tex. Feb. 22, 2007)................................ 22

*Warfield v. Byron*,
   436 F.3d 551 (5th Cir. 2006) ................................................................ 9

**Rules**

FED. R. CIV. P. 9(b) ................................................................................ 17

**Codes**

CAL. CIV. CODE § 3439(b)(9)................................................................ 15

CAL. CIV. CODE § 3439.04 .................................................................... 8

CAL. CIV. CODE § 3439.04(a)(2) .......................................................... 18

CAL. CIV. CODE § 3439.04(b) ............................................................... 15

CAL. CIV. CODE § 3439.04(b)(1)........................................................... 16

CAL. CIV. CODE § 3439.04(b)(2)........................................................... 16

CAL. CIV. CODE § 3439.04(b)(3)........................................................... 15

CAL. CIV. CODE § 3439.04(b)(4)........................................................... 15

CAL. CIV. CODE § 3439.04(b)(7)........................................................... 15

CAL. CIV. CODE § 3439.04(b)(8)........................................................... 15

CAL. CIV. CODE § 3439.09 .................................................................... 5

CAL. CIV. CODE § 3439.09(b) ............................................................... 19

CAL. CIV. CODE § 3439.10(b) ............................................................... 4

CAL. CIV. CODE § 3439.13 ............................................................................ 5

TEX. BUS. & COM. CODE § 24.005(b) ...................................................... 15

TEX. BUS. & COM. CODE § 24.010(a) ........................................................ 5

TEX. BUS. & COM. CODE § 24.012 ............................................................. 5

KELLY CRAWFORD, in his capacity as Receiver ("Plaintiff") for TMTE, Inc., a/k/a Metals.com, et al. ("Receiver"), files this Response to Defendants' MagicStar Arrow Entertainment, LLC and MagicStar Arrow, Inc. (collectively, the "MagicStar Entities"), and Carlos Cruz (together with the MagicStar Entities, "Defendants") Motion to Dismiss ("Motion") [Dkt. 9], and in support respectfully shows the Court as follows:

## I.      <u>INTRODUCTION</u>

Defendants move to dismiss the Complaint contending certain claims do not satisfy Rules 8 and 9(b), asserting that claims which are purportedly barred by limitations are somehow simultaneously not ripe, that a claimed failure to identify the controlling law—despite reference to the specific statute on which the Receiver relied—mandates dismissal, and that the Court lacks jurisdiction over Cruz, despite directly contrary statutory authority and pleaded assertions.  In addition to relying on incorrect assertions of law and ignoring virtually all pleaded factual content, (while improperly making inaccurate factual claims outside the Complaint), the Motion disregards the framework governing plausibility: the assumption that all properly pleaded factual allegations, the only facts the Court can consider in the analysis, are presumed as true.  The Motion raises no meritorious arguments and should be denied in its entirety. In the alternative and in the event the Court deems the Complaint deficient, the Receiver requests leave to amend.

## II.      <u>BACKGROUND</u>

1.      In *CFTC, et al., v. TMTE, Inc. a/k/a Metals.Com, et al.*, Civil Action No. 3:20-cv-2910-X (the "Underlying Lawsuit"), the CFTC and 30 states filed their Complaint (the "Underlying Complaint") alleging Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher ("Asher"), Simon Batashvili ("Batashvili"), and the entities they controlled (the "Receivership Entities") were engaged in a fraudulent scheme through which they defrauded at least 1,600

persons by selling gold and silver bullion at exorbitant prices based on fraudulent statements.[1]  On September 22, 2020 in the Underlying Lawsuit, the Court entered an Emergency Ex Parte Statutory Restraining Order (the "Receivership Order"), and appointed Kelly M. Crawford as Receiver of the assets of Asher, Batashvili, and the entities they own and control (collectively, the "Receivership Defendants").[2]  *Complaint* ¶ 5, and *Complaint* Exh. A.

2.       On August 31, 2022, the Receiver filed the Original Complaint in this lawsuit, (the "Complaint", Dkt. 1) asserting five causes of action through which he seeks to recover—for the benefit of the Receivership Estate—more than $20 million in fraudulent transfers (the "Transfers") by the Receivership Defendants to the MagicStar Entities.   *Complaint* ¶¶ 2, 4.

3.       In several detailed factual paragraphs of the Complaint, the Receiver demonstrated the Receivership Defendants' operation of a fraudulent enterprise.  *Complaint* ¶ 18-20.  He also explained, in detail, Defendants' role. *Complaint* ¶ 16.  In an exhibit attached to and incorporated into the Complaint, the Receiver detailed the date and amount of each transfer, the transferring entity, the manner in which each transfer was made, and the transferee/defendant who received each transfer. *Complaint*, Exh. C.  And, he alleged Cruz, as the owner and manager of the MagicStar Entities, was personally liable for the Transfers.  *Complaint* ¶ 34.

4.       The factual basis for the Defendants' role as insiders was explained in detail. *Complaint*[3]  ¶ 34.  The Receiver also pleaded extensive facts demonstrating his entitlement to tolling based on the discovery rule and fraudulent concealment. *Complaint* ¶ 35-42.

---

[1] *See Complaint*, Dkt. 1, Exh. B; *see also Complaint*, Exh. A, Underlying Complaint, ¶¶ 1–6.

[2] The SRO was subsequently extended by Consent Orders. *See* Underlying Lawsuit, Dkt. Nos. 164 and 165.  Pursuant to the SRO, the Receiver was vested with authority to recover assets and investigate and initiate claims.

[3] Throughout the Motion, Defendants assert facts that contradict the allegations in the Complaint.  In doing so, the Defendants ignore the governing principle for consideration of a Motion to Dismiss; acceptance of the "well-pleaded facts as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Specifically, the Defendants contend that "Mr. Cruz has cooperated with the Receiver, even agreeing to be deposed in the Underlying Case on July 13, 2022."  *Motion* p. 4.  Cruz was served with a subpoena to testify before the Receiver in the Underlying Case and requested the date of the deposition be postponed to accommodate his schedule.  *Complaint* ¶¶ 39, 41. In addition, the Receiver made numerous

5.      Based on these facts, the Complaint asserted claims for actual and constructive fraudulent transfer, money had and received, unjust enrichment/constructive trust, alter ego/veil piercing and attorney's fees.  *Complaint* ¶ 43-64. Pursuant to Federal Rules of Civil Procedure 8(a) and 9(b), 12(b)(1), 12(b)(2), and 12(b)(6), Defendants seek dismissal of each claim.

### III.      ARGUMENTS & AUTHORITIES

### A.      Summary

As discussed in detail below, Defendants' Motion fails to present a single argument justifying dismissal of any of the Receivers' claims.  Defendants fail to identify any actual, much less potential, conflict between Texas and California law, thereby negating any need for the Court to apply any law other than Texas's law.   Nonetheless, under California or Texas law the Receiver's claims are plausible.  Defendants' ripeness argument confuses a jurisdictional doctrine with evidentiary concerns, and the purported pleading deficiencies alleged with respect to the fraudulent transfer claims wholly ignore the Complaint's factual content, as well as controlling authorities that demonstrate the Receiver's satisfaction of Rules 8 and 9 in pleading his fraudulent transfer claims.  Given Defendants' fraudulent concealment, the detailed facts supporting tolling, and the inherently factual nature of tolling and the discovery rule, Defendants' limitations argument ignores the well pleaded facts in the Complaint, and is wholly barred by the Defendants' own conduct.   Finally, all arguments seeking dismissal of the claims asserted against Cruz individually confuse jurisdiction with merits inquiries.  The Motion should be denied.

---

demands upon the Defendants to produce documents pursuant to the Receivership Order.  Instead of cooperating with the Receiver as required by the Receivership Order, the Defendants refused to comply with these demands. ¶37. Indeed, the Defendants are in violation of the Receivership Order.  Moreover, the Defendants contend the Receiver is using a contempt motion against the individual defendants in the Underlying Case, Lucas Asher and Simon Batashvili, to deprive Cruz of his ownership of a business Asher and Simon started before the receivership called "Portfolio Insider."  With respect to the claims against these Defendants, however, the Receiver's contempt motion only spotlights the insider relationship Cruz had with Asher and Simon in serving as a front man for the Portfolio Insider business after the receivership.  Indeed, Cruz knowingly and actively assisted Asher and Simon in violating the Receivership Order.  *See* Underlying Lawsuit, Dkt. 311.

B.      **Choice of Law**

Defendants contend each of the Receiver's claims are barred by his purported failure to identify the controlling law, while "assuming" California law applies. *Motion*, pp. 7, n. 7; 14-15. Defendants' reliance on Texas and California law intermittently throughout their Motion belies any lack of fair notice regarding the controlling law. *Motion,* p. 15 ; *see also Janvey v. Alguire*, 846 F. Supp. 2d 662, 670–71 (N.D. Tex. 2011) (asserting claims "under applicable fraudulent transfer law" sufficiently identified controlling law).   Defendants also ignore identification of California law, "and any other controlling law," as the basis for the Receiver's fraudulent transfer claims. *Complaint* ¶¶ 47, 51 (asserting claims pursuant to California's enactment of the UFTA, as well as "any other applicable State's adoption of the UFTA"); and ¶ 29 ("Payments were made from the Receivership Entities' Beverly Hills office…"); *see also* CAL. CIV. CODE ("CUFTA") § 3439.10(b) ("A claim in the nature of a claim under this chapter is governed by the local law of the jurisdiction in which the debtor is located when the transfer is made or the obligation is incurred.").

In any event, Defendants' failure to meet their burden of demonstrating a conflict between Texas and California law defeats their argument. "[C]hoice of law issues for supplemental state law claims, such as the fraudulent transfer claims at issue here, are governed by the forum state in which the federal court is sitting." *Janvey v. Brown*, 767 F.3d 430, 434 (5th Cir. 2014).  As the party urging application of non-Texas law, Defendants are required to demonstrate a conflict between Texas and any other potentially applicable law. *Playboy Enters. v. Sanchez-Campuzano*, 519 F. App'x 219, 225 (5th Cir. 2013); *Alguire*, 846 F. Supp. 2d at 670–71.   Texas courts will presume its law is identical to the law of another state, absent a sufficient rationale for application of a competing law. *Alguire*, 846 F. Supp. 2d at 670–71 (citing *Holden v. Capri Lighting, Inc.*, 960 S.W.2d 831, 833 (Tex. App.—Amarillo 1997, no pet.)).  Absent demonstration of a conflict,

the choice of law analysis is unnecessary and the court simply applies the forum state's laws. *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005). These rules are particularly appropriate in fraudulent transfer cases because Texas adopted "TUFTA with the specific purpose that it be applied uniformly with other states' versions of the Uniform Fraudulent Transfer Act."[4] *Alguire*, 846 F.Supp.2d at 670 (citing TEX. BUS. & COM. CODE § 24.012 ("This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it.")); *see also* CUFTA § 3439.13 (same).

Although Defendants appear to rely on California law when convenient, they fail to identify any potential conflict between Texas law and California law.[5] In contrast, the Receiver expressly pleaded CUFTA as the governing statute regarding the fraudulent transfer claims, *Complaint* ¶¶ 47, 51, a concession that does not change the Court's analysis given the lack of any conflict between CUFTA and TUFTA. Accordingly, the Court may apply CUFTA to the fraudulent transfer claims but should apply Texas law to the remainder. Even if Defendants had identified a conflict between Texas and California law, however, the Court need not resolve any choice of law issue to determine the Motion wholly lacks merit.

## C.     Defendants Confuse Ripeness with Evidentiary Considerations

Defendants seek dismissal based on an alleged lack of subject matter jurisdiction, contending the claims asserted by the Receiver are not ripe because no judgment has been entered in the Underlying Lawsuit. *Motion* p. 5. The argument misinterprets the Receiver's claims,

---

[4] Virtually every state has adopted the Uniform Fraudulent Transfer Act ("UFTA"). Most states' codification of the UFTA are substantially identical and the possibility that a different state's UFTA may apply has no impact on the analysis at this stage. *Janvey v. Suarez*, 978 F. Supp. 2d 685, 692 (N.D. Tex. 2013) ("[A]ny differences between TUFTA and another state's UFTA are likely to be negligible.").

[5] The only immediately obvious "conflict" between CUFTA and TUFTA is the longer limitations period provided by CUFTA. *Compare* TEX. BUS. & COM. CODE § 24.010(a) (four-year period for § 24.005(a)(1) claims with a one-year discovery window, four-year statue of repose for § 24.005(a)(2) claims); CUFTA § 3439.09 (four-year limitations period for actual and constructive fraud claims, one-year discovery period for actual fraud claims, and *seven*-year statute of repose).

misapprehends ripeness, misconstrues the Receiver's standing to assert the Receivership Entities' claims that will benefit defrauded creditors, and mischaracterizes the effect and necessity of a judgment adverse to the Receivership Entities in the Underlying Lawsuit.

First, the Receiver's claims do not rely on *assumptions*. *Motion*, p. 6 ("All of Plaintiffs claims are predicated on the assumption that the Receivership Entities were, in fact, defrauding their customers/investors when the entities improperly made payments to MagicStar Entities."). Instead, the claims are predicated on specific factual allegations, which, in turn, rest on evidence, including the evidence on which the Court premised entry of a Preliminary Injunction against the Receivership Entities. *Complaint* ¶ 5, and *Complaint*, Exh. B.  Nor does the purported absence in this case of the "allegedly defrauded people"—the defrauded investors—for whose benefit the Receiver asserts his claims,[6] have any bearing whatsoever on the plausibility or ripeness of the Receiver's claims. *See Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 191 (5th Cir. 2013) (Receiver possesses standing to assert "the claims of a receivership entity against third-party recipients of the entity's assets that have been fraudulently transferred" by the entities in receivership).

## 1.    A Judgment in the Underlying Lawsuit is Unnecessary to Establish Ripeness

Ripeness turns on the existence of concrete legal issues presented in the context of an actual, rather than a hypothetical, controversy. *Colwell v. Dep't of Health & Human Services*, 558 F.3d 1112, 1123 (9th Cir. 2009) (ripeness within "the meaning of Article III . . . requires . . . "concrete legal issues, presented in actual cases, not abstractions.") (internal quotation omitted)); *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 833 F.2d 583, 586–87 (5th Cir. 1987). Two primary considerations inform ripeness: "the fitness of the issues for judicial decision," and

---

[6] *Motion*, p. 6, n. 6.

"the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). Neither consideration suggests a lack of ripeness here.

The Receiver's claims—the Receivership Entities' claims for the benefit of their defrauded creditors, including the defrauded investors[7]—are not hypothetical and therefore unfit for a judicial decision because a judgment has yet to be issued in the Underlying Lawsuit.

> "A 'claim' need not be reduced to judgment before one is a 'creditor' under California's UTFA, as the defendants maintain, or before one can sue for fraudulent transfer. The relevant statutes show the defendants' error. A 'creditor' is one 'who has a claim.' § 3439.01(c). A 'claim,' in turn, 'means a right to payment, *whether or not the right is reduced to judgment*, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.' § 3439.01(b) (emphasis added). The plaintiff's fraudulent-transfer claims are not unripe because its underlying claim against PSA has not been reduced to judgment."

*Qingdao Tang-Buy Int'l Imp. & Exp. Co., Ltd. v. Preferred Secured Agents, Inc.*, No. 15-CV-00624-LB, 2015 WL 7776331, at *4 (N.D. Cal. Dec. 3, 2015); *Ford Motor Credit Co. v. Chiorazzo*, 529 F. Supp. 2d 535, 540 (D.N.J. 2008) (denying motion to dismiss fraudulent transfer claim premised on ripeness challenge where creditor's claim against debtor not yet been reduced to judgment, because "[d]etermining whether a particular transfer is fraudulent only requires a court to answer two questions: whether the debtor has placed some asset beyond the reach of its creditor which would have been available to it at some point in time but for the conveyance; and whether the debtor has transferred property with an intent to defraud, delay, or hinder the creditor"); *see also Amling v. Harrow Indus. LLC*, 943 F.3d 373, 378 (7th Cir. 2019) (Finding ripeness to determine which defendant was obligated to pay injured plaintiff's damages, if any, premised on asset-purchase agreement, despite uncertainty of liability for underlying plaintiff's injuries).

---

[7] *Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d at 191.

In contrast, the authorities on which Defendants rely found ripeness lacking where some contingency necessary to the claim at issue had not yet occurred. For instance, in *Kim* the Court concluded a requested declaration that certain restrictive covenants in a deed were unenforceable was not ripe where the plaintiff did not contend it was currently violating the covenants and the defendant had not threatened to enforce them. *Kim v. Tesoro Ref. & Mktg. Co. LLC*, No. 217CV06241ABRAOX, 2017 WL 11680958, at *2 (C.D. Cal. Dec. 13, 2017). Similarly, in *Mehler Texnologies*, a court dismissed a counterclaim for future damages premised on a defective product used in construction. *Mehler Texnologies, Inc. v. Monolithic Constructors, Inc.*, No. CIV.A. 3:09-CV-0655-, 2009 WL 3149383, at *1 (N.D. Tex. Sept. 29, 2009). The Court concluded the future damages were "contingent on future events-presumably damage to the domes for which the Dothan church may seek compensation from Monolithic-which may not occur as anticipated, or may not occur at all." *Id.* at *2. Here, the Receivership Defendants have already suffered the loss of the funds fraudulently transferred to Defendants, in an amount not less than $20M. *Complaint* ¶ 2. Neither the intent, value, or indeed insolvency at the time of the transfers depends on the occurrence of any contingency, as suggested by the authorities Defendants cite. Those issues are instead evidentiary matters. Thus, the Receiver's claims are neither contingent nor hypothetical.

## 2.      A Judgment Will Provide Evidence of the Receivership Entities' Fraud

The fraudulent intent with which the Receivership Entities made the subject Transfers is an element of the Receiver's first claim, for a fraudulent transfer made with fraudulent intent.[8] Defendants' conduct and intent play no role in that analysis. *Suarez*, 978 F. Supp. 2d at 700

---

[8] The elements of actual fraudulent transfer, Count 1, whether considered under CUFTA or TUFTA, are a transfer made by a debtor (also referenced as "the transferor"—here the Receivership Defendants) made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." CUFTA § 3439.04; *see also Matter of: Life Partners Holdings, Inc.*, 926 F.3d 103, 117–19 (5th Cir. 2019) (discussing the same language in TUFTA § 24.005(a)(1)).

("[I]ndeed, the defendant's conduct is simply not an element of the Receiver's claim").  Thus, a judgment against the Receivership Entities for fraud in selling the investments at issue would also inform their fraudulent intent in making the Transfers to Defendants.  *See In re IFS Fin. Corp.*, 669 F.3d 255, 265 (5th Cir. 2012) ("evidence that a company operated as a fraudulent enterprise at the time of the transfer . . . may be sufficient to establish actual intent"); *see also Dean v. Davis,* 242 U.S. 438, 444–45 (1917) (knowingly making a transfer that constitutes a fraudulent act suffices to demonstrate actual intent to defraud creditors).  But as alleged in the Complaint, *numerous* other facts demonstrate the Receivership Entities' fraudulent intent.  *Complaint* ¶ 21, 24-26, 30, 32, 33, 34, 45.

With respect to the constructive fraud claim, actual fraudulent intent plays no role.  *Matter of: Life Partners Holdings, Inc.*, 926 F.3d 103, 120 (5th Cir. 2019); *see also VeroBlue Farms USA, Inc. v. Wulf,* 465 F. Supp. 3d 633, 652 (N.D. Tex. 2020) (constructive fraudulent transfer claims include no fraudulent intent element and are not governed by Rule 9(b)).   That claim instead depends on evidence that the Receivership Defendants were insolvent when they made the transfers and did not receive reasonably equivalent value from the MagicStar Entities in exchange. *Id.*  Although a judgment in the Underlying Lawsuit may speak to insolvency, a declaration from an expert accountant will provide the same evidence.  *See Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006) (Declaration of Receiver, an accountant, regarding his review and analysis of thousands of bank transactions sufficed to demonstrate the existence of a Ponzi scheme, which was insolvent from inception); *see also Janvey v. Alguire*, 647 F.3d 585, 597–98 (5th Cir. 2011) (accountant's expert declaration demonstrated "clear, numerical support" for existence of fraudulently operated Ponzi scheme).  Similarly, whether the Defendants exchanged reasonably equivalent value in these transactions will turn on factors including whether the they "(1) fully

performed under a lawful, arm's-length contract for fair market value, (2) provided consideration that had objective value at the time of the transaction, and (3) made the exchange in the ordinary course of the transferee's business." *Janvey v. Golf Channel, Inc.*, 834 F.3d 570, 572 (5th Cir. 2016) (quoting *Janvey v. Golf Channel, Inc.* (*Golf Channel III*), 487 S.W.3d 560 (Tex. 2016)). These factors, again, are evidentiary concerns that can be demonstrated multiple ways, including, but not limited to a judgment in the Underlying Lawsuit.  Such a judgment, however, is unnecessary to ripeness or recovery.

**D.     The "Unjust Enrichment/Constructive Trust Claims are Plausible**

**1.     Plausibility Standard**

Rule 12(b)(6) governs challenges premised on the sufficiency of pleadings required by Rule 8 or Rule 9.  *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997).  In such an analysis, the Court accepts all "well-pleaded facts as true . . . views them in the light most favorable to the plaintiff," and determines whether, based on those facts assumed as true, the challenged claim is plausible on its face.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012).  Rule 8 sets a low bar for facial plausibility, which exists "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[T]he plausibility standard is not akin to a 'probability requirement,' but asks only for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

**2.     The Unjust Enrichment and Constructive Trust Claims are Viable, Alternative Claims**

Using circular logic and a hypothetical assertion that the Receiver's unjust enrichment and constructive trust claims will fail if his fraudulent transfer claims fail and are unavailable if those claims succeed, Defendants assert the claim lacks plausibility. The assertion confuses plausibility

with election of remedies.  And again, although Defendants rely on California authorities, they fail to identify any conflict between Texas and California law.[9]  The claims are plausible under either.

While numerous intermediate Texas appellate courts have concluded unjust enrichment provides a theory of recovery rather than a claim, others disagree relying on a Texas Supreme Court case.  *Reg'l Specialty Clinic, P.A. v. S.A. Randle & Associates, P.C.*, 625 S.W.3d 895, 904 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)); *see also Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied).  This Court must follow the Texas Supreme Court rather than any intermediate court.  *Heldenfels Am. Intern. Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) ("To determine state law, federal courts sitting in diversity look to the final decisions of the state's highest court."); *see also Alguire*, 846 F. Supp. 2d at 674 (Denying motion to dismiss claim for "unjust enrichment" because "[r]egardless of whether Texas law allows an 'unjust enrichment' claim or requires pleading a claim for money had and received, the Receiver states claims under either applicable law.").

A plausible unjust enrichment claim exists when "the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain."  *Tex. Integrated Conveyor Sys., Inc.*, 300 S.W.3d at 367.  Similarly, a claim for money had

---

[9] California recognizes unjust enrichment as a stand-alone claim as well as a remedy.  "While California case law appears unsettled on the availability of such a cause of action, this Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) ("To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 10-5625 SI, 2011 WL 4345435, at *4 (N.D. Cal. Sept. 15, 2011) (denying motion to dismiss unjust enrichment claim, where plaintiff "invoked valid theory of recovery . . . regardless of the precise label assigned to the cause of action."); *see also LeBrun v. CBS Television Studios, Inc.*, 68 Cal. App. 5th 199, 212, 283 Cal. Rptr. 3d 260, 271 (2021) (dismissing unjust enrichment claim, not because the theory was invalid, but because "Plaintiffs' inability to maintain that cause of action [for fraud] was not due to the absence of law to support it but rather to their failure to timely assert it.  In such a case, "justice" does not require the application of the unjust enrichment doctrine.").

and received, which may be an alternative label for an unjust enrichment claim, *see Alguire*, 846 F. Supp. 2d at 674, is plausible where the defendant received funds that "in equity, justice, and law" belong to another. *Id.* Neither claim requires fraud on Defendants' part, but instead requires only the Receiver's greater entitlement, standing in the shoes of the Receivership Defendants' creditors, to the funds received by Defendants. *Id.* As in other receivership cases, the low pleading standard applicable to these claims is satisfied by allegations that 1) that the defendants "kept their fraudulent scheme going" by "lur[ing] new investors" when the investor's funds were diverted for the fraudulent entities' own illicit purposes; and 2) that proceeds paid to the MagicStar Defendants "came not from revenue generated by legitimate business activities, but from monies contributed by defrauded investors." *Id*.

This Court should also conclude, based on the detailed allegations found sufficient in *Life Partners* that the similar allegations here demonstrating the Receivership Defendants' efforts to defraud their creditors and use funds obtained from those creditors to pay the MagicStar Entities, render the Receiver's claims equally as plausible. *See Complaint* ¶¶ 1, 4; *see Alguire*, 846 F. Supp. 2d at 674; *see also Waller v. DB3 Holdings, Inc.*, No. CIV.A.3:07-CV-0491-D, 2008 WL 373155, at *6 (N.D. Tex. Feb. 12, 2008) (denying motion to dismiss unjust enrichment claim where defendants' retention of funds would "amount to the taking of undue advantage"). No other allegations are necessary or relevant. The Court should deny Defendants' motion to dismiss the unjust enrichment and money had and received claims.

The same is true to the extent the claim seeks recovery premised on a constructive trust. *See Monet v. Chase Home Fin., LLC*, No. C 10-0135 RS, 2010 WL 2486376, at *3 (N.D. Cal. June 16, 2010) ("Finally, a plaintiff may seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good

conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.") (internal quotation omitted); *Meadows v. Bierschwale,* 516 S.W.2d 125, 131 (Tex. 1974) (constructive trust is an equitable device used to remedy a wrong).  The Receiver's unjust enrichment and constructive trust claim is viable and plausibly pleaded.

### E.       The Fraudulent Transfer Claims Comply With the Applicable Pleading Standards

By largely ignoring the factual allegations incorporated into each claim, Defendants contend the Receiver's fraudulent transfer claims are "impermissibly formulaic and conclusory." *Motion*, p. 10 (quoting select portions of ¶ 45 of the Complaint, while ignoring all preceding factual assertions incorporated into the claim).  When considering the extensive pleaded factual support and applying the correct pleading standard to each, Defendants' 12(b)(6) fails.

#### 1.       Rule 9(b)'s Requirements

The Fifth Circuit has not determined whether Rule 9(b) applies to fraudulent transfer claims,[10] and this Court similarly need not address that question because the only claim potentially subject to the Rule satisfies it.

In contrast to Rule 8, Rule 9(b), which governs allegations of fraud, requires the "who, what, when, where, and why as to the fraudulent conduct."  *Life Partners*, 926 F.3d at 117; *Melder v. Morris,* 27 F.3d 1097, 1100 n. 5 (5th Cir.1994) (describing Rule 9(b)'s requirements as the "essentials of the first paragraph of any newspaper story.").  Still, satisfying Rule 9 requires only "simple, concise, and direct" allegations of the "circumstances constituting fraud."  *U.S. ex rel.*

---

[10] Even if California law governs the substance of the Receiver's claims, as a matter of procedure, Fifth Circuit law controls the adequacy of the Receiver's pleadings.  *Playboy Enterprises, Inc. v. Sanchez-Campuzano*, 561 Fed. Appx. 306, 309 (5th Cir. 2013).  Nonetheless, the Ninth Circuit does not impose Rule 9(b) requirements on fraudulent transfer claims dependent on constructive fraud.  *Screen Capital Intern. Corp. v. Library Asset Acquisition Co., Ltd.*, 510 B.R. 248, 257 (C.D. Cal. 2014) ("However, Rule 9(b)'s heightened pleading standards are not generally applied to claims of avoidance and recovery of constructively fraudulent transfers, as they do not require proof of fraud."); *In re Moriarty*, No. 12-22878-MLB, 2014 WL 6623005, at *10 (Bankr. C.D. Cal. Nov. 20, 2014) ("Rule 9(b) is inapplicable because constructive fraud claims "are not based on actual fraud but instead rely on the debtor's financial condition and the sufficiency of the consideration provided by the transferee.").

*Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009). Indeed, "[t]he amount of particularity required for pleading fraud differs from case to case." *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 796 (N.D. Tex. 2009); *Guidry v. Bank of LaPlace,* 954 F.2d 278, 288 (5th Cir. 1992) ("What constitutes 'particularity' will necessarily differ with the facts of each case and hence the Fifth Circuit has never articulated the requirements of Rule 9(b) in great detail."). Where "detailed and particularized allegations" show "motive and opportunity to commit alleged actual fraudulent transfers" the allegations permit the court to draw a reasonable inference of the debtor's fraudulent intent as required by either Rule 8 or 9(b).[11]  *U.S. Bank Nat. Ass'n v. Verizon Commc'ns Inc.,* 817 F. Supp. 2d 934, 942 (N.D. Tex. 2011); *see also Vision Bank v. Jordan*, No. 3:11-CV-2065-B, 2012 WL 716097, at *3  (N.D. Tex. Mar. 5, 2012) (Denying motion to dismiss fraudulent transfer claims where "Plaintiff's Amended Complaint details the nature of the transfer, the parcels of land involved, the value of the land, and the reasons indicating why such a transfer may be fraudulent under the statute.").

The Fifth Circuit has expressly concluded that factual allegations correlating to several badges of fraud and the "details of the allegedly fraudulent transfers—including the transferor, transferees, amounts, and time period . . . [and] pages of allegations detailing the underlying fraudulent scheme" satisfy the Rule.  *Life Partners*, 926 F.3d at 119.  Defendants ignore *Life Partners* and the Fifth Circuit's interpretation of the Rule 9(b) standard in the context of the same claims and similar allegations to those at issue here. This Court should decline Defendants' implicit invitation to do the same.

---

[11] Under either rule, exhibits are deemed part of the complaint and appropriately considered in the 12(b)(6) analysis. *Life Partners*, 926 F.3d at 117.  In contrast, extraneous facts, including those Defendants implicitly rely upon, for instance the Receiver's assertion that Cruz facilitated the Receivership Defendants' contempt, *Motion*, p. 3-4, an assertion underlying a pending motion for contempt, play no part in the Court's plausibility analysis.

### 2. The Actual Fraud-Fraudulent Transfer Claim, Count I, Satisfies Rule 9(b)

In *Life Partners,* without deciding which standard governed, the Fifth Circuit held that allegations nearly identical to those challenged by Defendants satisfied Rule 9(b), as well as the lower Rule 8 standard. *Life Partners*, 926 F.3d at 117.  Factual allegations corresponding to the "badges of fraud"[12] provided circumstantial evidence of the intent to defraud, while the "newspaper article" items were supplied by an exhibit. *Life Partners*, 926 F.3d at 119; *see also In re Texas Rangers Baseball Partners*, 498 B.R. 679, 712 (Bankr. N.D. Tex. 2013) (Denying motion to dismiss actual fraudulent transfer claim based on three badges of fraud); *Kaye v. Lone Star Fund V (U.S.), L.P.,* 453 B.R. 645, 672-73 (N.D. Tex. 2011) (Relying on pleadings demonstrating three badges of fraud to deny motion to dismiss).

The Receiver's factual allegations track the allegations deemed sufficient in *Life Partners.* Specifically, the Receiver pleaded factual support for no less than seven enumerated badges of fraud:

- The Transfers were not made for reasonably equivalent value; *Complaint* ¶ 4, 25-27, 45(a); CUFTA § 3439.04(b)(8);

- The Transfers were concealed; *Complaint* ¶ 25, 45(b) (fabricated invoices); CUFTA § 3439.04(b)(3);

- Other assets were concealed; *Complaint* ¶ 34(c); CUFTA § 3439.04(b)(7);

- The Transfers were made while the transferors were insolvent; *Complaint* ¶ 8, 30-32; CUFTA § 3439(b)(9);

- All transfers made by Barrick Capital were made after the transferors had been sued or the subject of regulatory discipline.  *Complaint* ¶ 21; CUFTA § 3439.04(b)(4);

---

[12] Both CUFTA and TUFTA list non-exclusive "badges of fraud," the existence of which provide circumstantial evidence of the transferor's fraudulent intent.  *Compare* CUFTA § 3439.04(b) *with* TUFTA § 24.005(b) ; *see also In re Essential Fin. Educ., Inc.*, 629 B.R. 401, 430 (Bankr. N.D. Tex. 2021) ("badges of fraud" represent "commonly considered circumstantial evidence bearing on actual fraud.").  In attacking Count I, the fraudulent transfer claim premised on actual fraudulent intent, Defendants appear to "essentially" have focused solely on the allegations pleaded specifically for that claim, while ignoring all preceding factual allegations incorporated by reference.  *Motion*, p. 9.

- The Transfers were made to an insider.  *Complaint* ¶ 2, 16, 22, 34, 61-63; CUFTA § 3439.04(b)(1);

- Upon information and belief, Batashvili and Asher retained control of or access to the Transfers.  *Complaint* ¶ 34e-f, 45j; CUFTA § 3439.04(b)(2).

Because the badges of fraud are not exhaustive, additional contentions regarding the Receivership Defendants' "sharp dealings" and fraudulent purpose, *Complaint* ¶¶ 1, 2, 7, 18, and 33, are also relevant to satisfaction of the pleading standard regarding the Receivership Entities fraudulent intent.  *See Asarco, LLC v. Americas Mining Corp.,* 396 B.R. 278, 371 (S.D. Tex. 2008) ("It is not necessary that all or any one of these badges of fraud support a finding of fraudulent intent"); *see also* Comment (5) to UFTA, *reprinted in* 7A, pt. II, Unif. Laws Ann… 303 (1999) ("Proof of the existence of *any one or more* of the factors enumerated in subsection (b) may be relevant evidence as to the debtor's actual intent . . .") (emphasis added).

Like the allegations deemed sufficient in *Life Partners*, an exhibit to the Complaint also included additional detail specific to Defendants regarding the amounts and dates of the transfers each received, the manner in which each transfer was made, and the specific transferor (transferring entity).  *See Complaint* **Ex. C.**  Those detailed lists are not free-floating allegations lacking context and specificity.  Instead, Defendants' role in growing the pool of defrauded Investors, who are the Receivership Defendants' creditors, is explained in detail.  *Complaint* ¶¶ 1, 28-30.

Additionally, the Receiver incorporated by reference the allegations supporting the Court's findings in the Receivership Order.  *Complaint*, ¶ 5.  In granting the relief requested by the States and the CFTC, the Court concluded, among other things, that good cause existed to believe that "[the Receivership] Defendants have engaged in, are engaging in, or are about to engage in a scheme to defraud investors…" *Complaint, Ex. A,* ¶ 7. The Court's conclusion regarding that same intent provides plausible detail regarding the Receivership Entities' fraudulent intent in

making transfers to grow and further their operations to the detriment of their creditors. Finally, Defendants provide absolutely no support for their contention that specific facts regarding the *disposition* of diverted funds or the specific shell entities used by the Receivership Defendants in concealing assets, *Motion* p. 10, is ever required to satisfy Rule 9 plausibility.  As in *Life Partners*, the Receiver's allegations in support of his actual fraudulent transfer more than satisfy Rule 9(b).

> 3.    **Count II, for Constructively Fraudulent Transfers, More than Satisfies** *Twombly*

In citing *Twombly* and arguing an absence of "fair notice" rather than insufficient specificity, Defendants implicitly concede Rule 8 rather than Rule 9 governs Count II, for constructively fraudulent Transfers.  *Motion,* pp. 10-11; *see also VeroBlue Farms USA, Inc.*, 465 F. Supp. 3d at 652 (constructive fraudulent transfer claims include no fraudulent intent element and are not governed by Rule 9(b)).

Like their arguments regarding Count I, Defendants' contention that the claim rests on "formulaic recitations," *Motion* p. 10, wholly ignores the detailed factual allegations included in the Complaint, as well as the *very low* standard imposed by Rule 8.  For instance, in contending there is a supposed lack of detail regarding insolvency, Defendants presume more detail is necessary but provide no authority for that contention.  Even if Rule 9(b) applied—and it does not—the presumption is inaccurate because facts supporting intent, which is implied through insolvency, "may be averred generally" and require no intricate details.  FED. R. CIV. P. 9(b); *Biliouris v. Sundance Resources, Inc.*, 559 F.Supp.2d 733, 736 (N.D. Tex. 2008) (Finding pleading alleging specifics regarding transfer at issue "while company was insolvent" sufficed pursuant to Rule 9 to "withstand Defendants' motion to dismiss"); *see also Joseph v. Frank* (*In re Troll Comm'n, LLC*), 285 B.R. 110, 124 (Bankr. D. Delaware 2008) (Pleadings, taken as true at the motion to dismiss stage, which "alleged the debtor had a negative net worth and was unable to

meet maturing obligations" found sufficient to allege insolvency); *Smith ex rel. Estates of Boston Chicken, Inc. v. Arthur Anderson, LLP*, 175 F. Supp. 2d 1180, 1201-02 (D. Ariz. 2001) (Finding Trustee's actual fraud claim complied with Rule 9, where the Complaint "(1) identified the transfers at issue; (2) identified the relevant parties; (3) alleged Boston Chicken received less than the reasonably equivalent value in exchange for the transfers; and (4) alleged that Boston Chicken was insolvent on the date the transfers were made.").

Defendants' reliance on CUFTA § 3439.02(b) to contend the assertion of insolvency cannot depend, even in part, on the "debt" created by the Investors' claims, *Motion* p. 12, likewise ignores the statute as well as the pleaded allegations.  First, the Receiver does not rely on a *presumption* of insolvency, as created by § 3439.02(b), and thus any *bona fide* dispute as to the Receivership Entities' debt to the Investors has no relevance.  He provided specific factual assertions demonstrating insolvency.  *Complaint* ¶¶ 4, 8, 31.  Moreover, while the individual Receivership Defendants below, Asher and Batashvili, may dispute their liability, the Receivership Entities have not disputed *anything*.  Instead, they consented to the Preliminary Injunction entered in the Underlying Lawsuit.  [Dkt. 164], and thus to date, no "bona fide dispute" as to the Receivership Entities' debt to the Investors exists.  Further, the Complaint alleges both definitions of insolvency recognized under § 3439.04(a)(2): a debtor who "(A) [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction . . .  [or] (B) [i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." *Complaint* ¶ 50; *citing* CUFTA § 3439.04(a)(2).  Thus, the Receivership Entities' (the debtors') fraudulent sales continually created debts beyond the Entities' ability to pay as they came due, and also demonstrate the Entities' intent to create debts

beyond their ability to pay.  *See Complaint* ¶ 8. Regardless how the Court views the insolvency allegations, they suffice for plausibility of Count II.

Similarly, Defendants' argument regarding the Receiver's purported failure to plead certain facts "as to this claim," *Motion* p. 11 suggests Defendants misunderstand the import of incorporating factual allegations by reference as occurred in paragraph 53: ("The Receiver alleges and hereby incorporates by reference each allegation made in the foregoing paragraphs as if each were separately set forth herein).  In so doing, Count II expressly relied on the preceding factual allegations:

- "[T]he Investors defrauded by the Receivership Entities are the principal creditors of the Receivership Entities," *Complaint* ¶ 4;
- "To date, the Receiver has identified less than $15 million in Receivership Assets, while no less than $65 million in total creditor claims have been asserted in the Underlying Lawsuit." *Complaint* ¶ 31;
- "At all relevant times, the Receivership Entities were insolvent." *Complaint* ¶ 32.

In sum, both fraudulent transfer claims are plausible and the Court should deny Defendants' motion to dismiss them.

**F.      Limitations Does Not Justify Dismissal**

In an argument devoid of any analysis related to fraudulent concealment or the burden incident in discovering the *fraudulent nature* of the Transfers, as well as the entirety of the tolling and concealment facts alleged, [*Complaint* ¶¶ 35-42] Defendants contend the four-year limitations period, divorced from the statutes' discovery window, mandates dismissal of any transfer made before August 31, 2018 as untimely.

If the Court does not delay accrual based on the Court's own stay or Defendants' concealment, the Receiver agrees transfers made more than four years before the lawsuit was filed are not recoverable as constructively fraudulent transfers because CUFTA (like TUFTA) does not include a tolling provision for that claim.  CUFTA § 3439.09(b).  But that limitations period hardly

speaks to the viability of the alternative claim regarding Transfers made with actual fraudulent intent for which a one-year discovery period applies.[13]  With respect to the discovery period, Defendants argue only that the Receiver could and should have discovered the Transfers within one year from the date of his appointment, and that in pleading awareness of the transfers by May 18, 2021, the Receiver essentially concedes his claims are untimely.  *Motion* p. 14.

Defendants' limitations argument, which lacks any supporting legal authority, fails on multiple fronts.  First, discovery of the claim turns on the Receiver's discovery, not any discovery by the Receivership Entities or imputation of knowledge from such entities to the Receiver.  *Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d at 192 (rejecting contention that time to recover fraudulent transfers began running at the time the receivership entities made them rather from the date the receiver could discover them).  Second, the Receiver was required to discover *the fraudulent nature* of the Transfers before his claim accrued, rather than the mere occurrence of the Transfers.  *Id.* at 194-195 ("[A] claim under section 24.005(a)(1) of TUFTA has been held to accrue only when the claimant discovers or reasonably could have discovered the fraudulent nature of the conveyance.").  Thus, his discovery that the Transfers were made in no way creates a limitations bar, particularly in light of the Receiver's further contention that he requested and did not receive evidence regarding the legitimacy of the charges purportedly underlying the Transfers.  *Complaint* ¶ 36-42.  Further, the Receiver's diligence in discovering his claims, including their fraudulent nature, is a question of fact, wholly inappropriate for resolution on a motion to dismiss.  *Id; see also Janvey v. Romero*, 817 F.3d 184, 189 (5th Cir. 2016) ("When a plaintiff discovered or could reasonably have discovered a transfer is generally a question of fact for the fact-finder.").

---

[13] "Under paragraph (1) of subdivision (a) of Section 3439.04, not later than four years after the transfer was made or the obligation was incurred or, if later, not later than one year after the transfer or obligation was or could reasonably have been discovered by the claimant.  CUFTA § 3439.09(a).

Lastly, but not insignificantly, Defendants' fraudulent concealment bars their reliance on limitations.  *See Abecassis v. Wyatt*, 902 F. Supp. 2d 881, 898 (S.D. Tex. 2012) (denying summary judgment on fact question regarding when limitations period began to run, in light of defendants' fraudulent concealment).

**G.     The Receiver's Claims Against Cruz Are Each Plausible**

**1.     The Complaint Establishes Facial Jurisdiction Over Cruz**

Defendants contend that simply because they challenge the merits of certain of the Receiver's claims against Cruz, the Court also lacks personal jurisdiction over him.  The argument ignores every applicable legal principle, as well as the unjust enrichment and fraudulent transfer claims, which are also asserted against Cruz.[14]

Although somewhat unclear, in contending the Receiver's allegations against Cruz fail to establish a prima facie case of personal jurisdiction over him, Defendants raise a facial attack to jurisdiction, *i.e.*, an argument premised on the sufficiency of the jurisdictional allegations rather than the existence of the jurisdictional facts.  *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 279 F.R.D. 395, 403 (S.D. Tex. 2011) ("A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned.").[15]  In a facial attack, "if the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the

---

[14] As the MagicStar Entities' owner, and as alleged in paragraph 34(f), Cruz, as a subsequent transferee, received and used the Transferees.  He is, accordingly, liable pursuant to CUFTA § 3439.08 as a subsequent transferee.

[15] The absence of evidence supporting Defendants' arguments and their acceptance of the truth of the Receiver's jurisdictional allegations, *Motion* pp. 12-14, also suggests a facial rather than factual jurisdictional challenge.  *See VeroBlue Farms USA, Inc.*, 465 F. Supp. 3d at 651 ("The Founders submitted no evidence to controvert VeroBlue's allegations of jurisdiction, and so the Court construes the argument as a facial rather than factual attack."); *but see Rodriguez v. Tex. Comm'n of Arts*, 992 F. Supp. 876, 878–79 (N.D. Tex. 1998), *aff'd sub nom. Rodriguez v. Tex. Comm'n on the Arts*, 199 F.3d 279 (5th Cir. 2000) ("[I]f the defendant had challenged the facts that formed the basis for the plaintiff's claim of subject matter jurisdiction, the attack would be factual") (Cummings, J.).

sufficiency of the allegations in the complaint because they are presumed to be true.  If those jurisdictional allegations are sufficient the complaint stands." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *see also Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 553 (5th Cir. 2010) (accepting material allegations in the complaint as true when subject matter jurisdiction was challenged on the basis of the pleadings).  When issues of fact underly subject matter jurisdiction as well as the merits of a claim, a trial court should assume jurisdiction and proceed to the merits under a Rule 12(b)(6) or Rule 56 standard.  *Holcombe v. United States*, No. SA-18-CV-555-XR, 2021 WL 67217, at *20–21 (W.D. Tex. Jan. 6, 2021).

Here, without demonstrating pleaded allegations unworthy of the presumption of truth, to assert the absence of jurisdiction Defendants contend the Receiver's alter ego and money had and received claims against Cruz fail and Cruz thus does not possess Receivership Assets so jurisdiction against him cannot exist pursuant to 28 U.S.C. § 754 and 1692 (the "Jurisdictional Statutes").  If this argument had merit, a court would be divested of jurisdiction over any Defendant who eventually succeeded on the merits of a claim.  Jurisdiction does not work in this hindsight manner.

The Receiver pleaded compliance with the Jurisdictional Statues. *Complaint* ¶ 14, 15.  Those statutes accordingly confer personal jurisdiction over Cruz, and "the Complaint [against Cruz] stands." *Id.; see also Alguire*, 846 F. Supp. 2d at 669 ("By allowing a receiver and district court to exercise jurisdiction over purported receivership estate property, section 754 serves as a stepping stone on [a court's] way to exercising *in personam* jurisdiction over those persons having custody or control over the property at issue.") (internal quotation omitted); *Warfield v. Arpe*, No. CIVA 3:05CV1457 R, 2007 WL 549467, at *11 (N.D. Tex. Feb. 22, 2007) ("Section 1692 operates

as a nationwide service of process statute that may be used to acquire personal jurisdiction over defendants in possession of receivership assets.").

2.      **Defendants' Challenges to the Money Had and Received Claim Falters on Cruz's Use of the MagicStar Entities as His Alter Ego**

In another cart-before-the-horse argument, Defendants contend the Receiver's Money Had and Received claim, Count IV, fails because the Receiver does not allege Cruz received any of the funds at issue.   *Motion* p. 18. But that contention ignores the Receiver's alter ego/veil piercing/single enterprise claim, Count V, by which he contends Cruz is individually liable for all transfers made to MagicStar Defendant entities.  *Complaint* ¶¶ 22; 25, including n. 7, 60-63.   It also ignores the likelihood that Cruz, as the MagicStar Entities' owner, "had and received," at least indirectly or as a subsequent transferee, the Transfers which the Receiver seeks to recover.[16]

Defendants first contend the three theories are not synonymous, a contention that supports the plausibility of the claim based on the breadth of potential application, rather than the inverse. *See Rimade Ltd. v. Hubbard Enterprises, Inc.,* 388 F.3d 138, 143 (5th Cir.2004) ("[T]hree broad categories [exist] in which a court may pierce the corporate veil: (1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; and (3) the corporation is used as a sham to perpetrate a fraud.").[17] Defendants ignore veil piercing as the basis for Cruz's personal liability and potential receipt of all funds transferred to the MagicStar entities, a claim that exists "when the corporate form has been used as part of a basically unfair device to

---

[16] And as noted above, even absent the alter ego claim, the argument ignores Cruz's liability as a subsequent transferee and thus the propriety of his inclusion in this matter with respect to the fraudulent transfer claims, as well as a proper Defendant for the money had and received claim.

[17] Defendants again cite both California and Texas law but fail to identify any conflict between the two regarding veil piercing.  *Motion*, p. 18.  And while Texas and California may treat alter ego and single enterprise liability differently, the potential inapplicability of those theories does not negate the viability of veil piercing.  *See also Roman Catholic Archbishop v. Superior Court*, 15 Cal. App. 3d 405, 412, 93 Cal. Rptr. 338, 342 (Ct. App. 1971) ("A corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation.").

achieve an inequitable result." *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 454 (Tex. 2008).  The theory applies if constructive fraud is alleged, "meaning 'the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests.'"  *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013) (quoting *Castleberry v. Branscum*, 721 S.W.2d 270, 273 (Tex. 1986)).  "[N]either fraud nor an intent to defraud need be shown," but only that "recognizing the separate corporate existence would bring about an inequitable result." *Spring Street Partners*, 730 F.3d at 443.  The Complaint demonstrates the use of the MagicStar Entities to deceive creditors, as well as the broader standard.

- Cruz owned and controlled both MagicStar entities, *Complaint* ¶ 22;
- Cruz used the MagicStar entities in furtherance of the fraud committed by the Receivership Entities, *Complaint* ¶ 2;
- The MagicStar entities *fabricated* invoices purportedly justifying more than $20,000,000 paid to them over the course of just three years, *Complaint* ¶¶ 24-25;
- Cruz claims funds received by the MagicStar entities were used for services provided by Google, Facebook and other internet sites, but Receivership Entity records reflect direct payments for those services, *Complaint* ¶ 24;
- The MagicStar entities purportedly provided services to the Receivership Entities that despite employees of the Receivership Entities who could and claimed they were, providing the same services, *Complaint,* ¶ 24;
- The Receivership Entities made transfers to the MagicStar Defendants to place funds beyond the reach of creditors, *Complaint* ¶ 2, 62;
- The funds transferred to the MagicStar Defendants were used by Cruz to fund the operation of an entity created and operated to circumvent the Receivership Order, *Complaint* ¶ 2, 34(g);
- Recoveries from the Receivership Defendants alone are far less than the Investors losses, *Complaint* ¶ 4, and thus recovery from the MagicStar Defendants, including Cruz, is necessary to avoid an inequitable result; *Complaint* ¶ 4.

These facts and the broader context of the Receiver's veil piercing/alter ego claim satisfy Rule 8 and require denial of Defendants' Motion to Dismiss the claim.

### IV.    <u>MOTION FOR LEAVE TO AMEND</u>

In the alternative and in the event the Court concludes any of the Receiver's claims are inadequately pleaded, he requests leave to amend.  Rule 15 requires granting leave freely when justice so requires.  *Dueling v. Devon Energy Corp.*, 623 Fed. Appx. 127, 130 (5th Cir. 2015); *Harlow v. Friendship Med. Clinic, LLC*, No. 315CV00160MPMSAA, 2016 WL 9130982, at *4 (N.D. Miss. Apr. 28, 2016).  Courts in the Fifth Circuit "generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings.  *See Guzman v. Nationstar Mortg. LLC*, No. 4:17-cv-823-O-BP, 2017 WL 6597959, at *2 (N.D. Tex. Dec. 8, 2017), *report and recommendation adopted*, No. 4:17-cv-823-O-BP, 2017 WL 6594199 (N.D. Tex. Dec. 26, 2017) (gathering cases and also citing *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976) as an example of the Fifth Circuit vacating and remanding a Rule 12(c) dismissal with instructions to the district court to dismiss without, instead of with, prejudice).  No prejudice exists here with respect to any amendment, and thus in the event one is necessary, the Court should allow such an amendment.

### V.    <u>CONCLUSION</u>

As explained above, none of the many arguments raised in Defendants' Motion warrants dismissal of any of the Receiver's claims.

WHEREFORE, PREMISES CONSIDERED, the Receiver requests that the Court deny Defendants' Motion.  In the alternative, in the event the Court concludes any claim lacks plausibility as pleaded, the Receiver requests leave to amend.

Respectfully submitted,

BROWN FOX PLLC

By: _ /s/ Charlene C. Koonce _____

    CHARLENE C. KOONCE
    State Bar No. 11672850
    charlene@brownfoxlaw.com
    Cortney C. Thomas
    State Bar No. 24075153
    cort@brownfoxlaw.com
    8111 Preston Road, Suite 300
    Dallas, Texas 75225
    (214) 327-5000 Telephone
    (214) 327-5001 Facsimile


    SCHEEF & STONE, LLC,

    PETER LEWIS
    State Bar No. 12302100
    peter.lewis@solidcounsel.com
    500 North Akard, Suite 2700
    Dallas, Texas 75201
    (214) 706-4200 Telephone
    (214) 706-4242 Facsimile

    **ATTORNEYS FOR PLAINTIFF**
    **KELLY CRAWFORD, IN HIS**
    **CAPACITY AS RECEIVER**

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.