IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **KELLY CRAWFORD, IN HIS CAPACITY AS RECEIVER,** | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 3:22-cv-01935-D |
| | § § | |
| **MAGICSTAR ARROW ENTERTAINMENT, LLC; MAGICSTAR ARROW, INC.; AND CARLOS CRUZ,** | § § § § § § | |
| *Defendants.* | § | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Jeffrey M. Tillotson
State Bar No. 20039200
jtillotson@tillotsonlaw.com
Ben Nabors
State Bar No. 24116805
bnabors@tillotsonlaw.com
**TILLOTSON, JOHNSON & PATTON**
1807 Ross Avenue, Suite 325
Dallas, Texas 75201
(214) 382-3041 Telephone
(214) 292-6564 Facsimile

**ATTORNEYS FOR DEFENDANTS**

Dated: January 9, 2023

**INTRODUCTION**

Ignoring the plain language of California's Uniform Fraudulent Transfer Act ("UFTA"), Plaintiff contends that his fraudulent transfer claims against Defendants are ripe despite the fact that the liability of the alleged "debtors" (who made the allegedly fraudulent transfers) is still being actively litigated in a pending lawsuit.[1] Because the Receivership Defendants do not presently, and may never, constitute "debtors" as defined in the relevant statute, Plaintiff is mistaken and his claims should be dismissed without prejudice as unripe. In addition, and/or alternatively, Plaintiff's conclusory allegations fail to satisfy relevant pleading standards, certain of Plaintiff's claims are facially time-barred and Plaintiff fails to allege facts supporting the Court's jurisdiction over Defendant Cruz.

**ARGUMENTS AND AUTHORITIES**

**A. Defendants identify conflicts between Texas and California law.**

Inexplicably, Plaintiff incorrectly asserts that Defendants "fail to identify any…conflict between Texas and California law"[2] and, on that basis, argues that Texas law should apply to all but Plaintiff's fraudulent transfer claim (which should be governed by California law). Response pp. 3, 5. Then, after criticizing Defendants for relying on Texas and California law intermittently throughout their Motion, Plaintiff proceeds to do just that. Nevertheless, Defendants agree that with the exception of the California "UFTA" claims, as well as Plaintiff's "veil piercing theory" (which, as detailed below, is governed by Florida law) Texas law should govern.

---

[1] This case, styled *Commodity Futures Trading Commission, et al., v. TMTE, Inc., et al.*, Case: 3:20-cv-02910-X is pending in the United States District Court for the Northern District of Texas and shall hereinafter be referred to as the "Underlying Case." The Defendants in the Underlying Case shall be referred to herein as the "Receivership Defendants").

[2] Defendants actually identify several conflicts between Texas and California law. *See e.g.*, Motion pp. 19-20 ("For example, Texas recognizes "alter ego" liability, but "[t]he Texas Supreme Court has rejected the single business enterprise theory of liability," *Foley v. Trinity Indus. Leasing Co.*, 314 S.W.3d 593, 605 n.6 (Tex. App.—Dallas 2010, no pet.). In California, "alter ego liability is reserved for the parent-subsidiary relationship" and the "single-enterprise rule" may apply "between sister companies." *Conde v. Sensa,* 259 F. Supp. 3d 1064, 1072 (S.D. Cal. 2017) (internal quotation marks omitted)).

**B. The Receivership Defendants are not "debtors" under California's UFTA.**

Plaintiff argues that—notwithstanding the fact that the liability of the alleged "debtors" is being actively litigated in the Underlying Case—the Receiver's claims are ripe for adjudication because the Receiver can qualify as a "creditor," under California's "UFTA" *before* his "claim" is reduced to judgment.  *See* Response at p.7.  Plaintiff attempts to "close the loop" by citing to the statute's definition of "claim," which means "a right to payment, whether or not the right is reduced to judgment…".  *See* Response at p.7; Cal. Civ. Code § 3439.01(b).  Because the Receiver is a "creditor" with a "claim"—the argument goes—his claims must be ripe.

While, divorced from any statutory context, Plaintiff's argument is attractively simple, it wholly ignores the plain language of Cal. Civ. Code §§ 3439.04 and 3439.05—the sections of California's UFTA that specify **when** a transfer is voidable as to a creditor.  Specifically, Section 3439.04, titled "Transfers voidable as to present and future creditors; factors to determining intent" states, in pertinent part:

> (a)     A transfer made or obligation incurred **by a debtor** is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, **if the debtor** made the transfer or incurred the obligation as follows…

*Id.* (emphasis added).

Section 3439.05, titled "Transfers voidable as to present creditors," reads, in pertinent part:

> (a)     A transfer made or obligation incurred **by a debtor** is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred **if the debtor** made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

*Id.* (emphasis added).

Critically to the instant dispute, the term "debtor" is defined under California's UFTA to mean "a person that ***is liable*** on a claim." *Id.* at § 3439.01(e) (emphasis added).  Accordingly, in order for a

transfer to be voidable under either § 3439.04 or § 3439.05, the transfer must have been made by a debtor (*i.e.*, a person who is liable on a claim).[3]

Here, in his Complaint, Plaintiff alleges that certain of the Receivership Defendants made the allegedly fraudulent transfers. *See* Compl. at ¶¶ 50-51. Accordingly, in order for the allegedly fraudulent transfers to be voidable under § 3439.04 or § 3439.05, the Receivership Defendants must be "debtor[s]" as defined by the statute, which, in turn, depends on whether they are liable on a claim. *Id.* at § 3439.01(e).

In the instant case, the "claims" on which the Receiver alleges the Receivership Defendants are liable are those of investors who purchased gold and silver bullion investments through the Receivership Defendants.[4] Plaintiff does not dispute that the question of whether the Receivership Defendants are, indeed, liable to the aforementioned investors is being actively litigated in the Underlying Case. *See* Response ¶1; *See also* Complaint filed in the Underlying Lawsuit (attached to Plaintiff's Complaint as Ex. B). In other words, Plaintiff's own allegations belie the notion that the Receivership Defendants presently qualify as "debtors" under the statute. To the contrary, the Receivership Defendants may (or may not) become "debtors" if and when liability is established in the Underlying Case. The cases cited by Plaintiff do not move the needle.

Plaintiff cites *Qingdao* for the proposition that a claim need not be reduced to judgment before one can sue for fraudulent transfer. *See* Response at p.7; *Qingdao Tang-Buy Int'l Imp. & Exp. Co., Ltd. v. Preferred Secured Agents, Inc.*, No. 15-CV-00624-LB, 2015 WL 7776331, at *4 (N.D. Cal. Dec. 3, 2015). The dispute in *Qingdao* arose from defendant PSA's alleged failure to pay for approximately $500,000

---

[3] While the term "liable" is not defined under the statute, the term is commonly understood to mean "obligated according to law or equity." *See Williams v. MESA Underwriters Specialty Insurance Co.*, 538 F.Supp.3d 234, 241 (D. Conn. 2021) (quoting MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2009) (internal quotation marks omitted).

[4] *See* Compl. at ¶ 30 ("the Receivership Entities were unable to pay legitimate creditors, including the Investors who became creditors at the moment of their respective investments due to the fraud by which the investors were solicited."); *See id.* at ¶ 16; 18.

worth of goods manufactured by the plaintiff. *Id*. at *1. According to the plaintiff, PSA then fraudulently gave a lien on its assets to defendant RBA—a company owned, in part, by PSA's president—in connection with a secured promissory note under which PSA agreed to pay RBA $1.3 million. *Id*. Finally, to complete the scheme (plaintiff alleged) PSA signed a confession of judgment in favor of RBA allowing RBA to foreclose on all of PSA's assets. *Id*. at *2.

The plaintiff in *Qingdao* asserted fraudulent transfer claims against RBA who moved to dismiss the plaintiff's claims on ripeness grounds, arguing that the plaintiff must first reduce its claim against PSA to judgment. *Id*. at *3. The Court rejected this argument and held that "[t]he plaintiff's fraudulent transfer claims are not unripe because its underlying claim against PSA has not been reduced to judgment." *Id*. at *4.

*Qingdao* is distinguishable from the instant case in critical respects. **First**, the parties in *Qingdao* did not dispute whether PSA was a debtor under California's UFTA. *See id*. To the contrary, the defendants *conceded* that the plaintiff had a "contractual right" to monies it sought from PSA.[5] *Id*. at 5. **Second**, because there was no dispute over whether TCA was "liable on a claim," the Court was not faced with the question of, and did not address, whether TCA qualified as a "debtor" under the statute. In contrast, here, the Receiver's claims are not ripe because liability has not been conceded or established on the part of the Receivership Defendants, and thus there is still an open question (that is being actively litigated in the Underlying Case) as to whether the Receivership Defendants are liable on a claim, and, in turn, whether they constitute "debtors" under § 3439.01(e), such that the Receiver may seek to avoid the allegedly fraudulent transfers under § 3439.04 or § 3439.05.

Plaintiff also cites *Ford*, a case out of the United States District Court for the District of New Jersey in support of his ripeness argument. *See* Response at p.7; *Ford Motor Credit Co. v Chiorazzo,* 529

---

[5] While the defendants did dispute whether the plaintiff was a "creditor" with a "claim" under the statute, the defendants did not dispute that PSA was liable to the plaintiff in some form or fashion. *Id*. at *4-5.

4

F. Supp. 2d 535, 540 (D.N.J. 2008). In *Ford,* the lender plaintiff alleged that one of the defendants, Chiorazzo—who was a guarantor of a financing agreement between a car dealership owned by Chiorazzo and the plaintiff—fraudulently transferred shares of stock to his sons, Jason and John, shortly before the car dealership defaulted under the financing agreement. *Id.* at 536-37.

Prior to filing the *Ford* lawsuit, the car dealership filed for bankruptcy. *Id.* Additionally, the plaintiff had filed a separate lawsuit against the car dealership and the guarantors of the financing agreement for breach of the financing agreement and related guaranty agreements. *Id.* In *Ford*, the defendants moved to dismiss on the grounds that the fraudulent transfer claims were not ripe because the first lawsuit and the bankruptcy were still pending. *Id.* The Court rejected this argument and held that the claims were ripe, noting that they "were not dependent upon the final resolution of the bankruptcy or guaranty proceedings." *Id.* at 542.

*Ford* is distinguishable from the instant case for the same reasons as *Qingdao*. **First**, like in *Qingdao*, the defendants in *Ford* did not argue that Chiorazzo, the guarantor of the financing agreement, was not a debtor under New Jersey's UFTA. *See id.* The defendants did not appear to dispute that Chiorazzo was a guarantor of the financing agreement, nor that the car dealership (which was in bankruptcy) had defaulted on the financing agreement. *Id.* **Second**, as with *Qingdao*, the Court was not faced with the question of, and did not address, whether Chiorazzo qualified as a "debtor" under the statute.

In both *Qingdao* and *Ford*, the court examined the definition of "claim" and "creditor," under the relevant state's UFTA, but neither court addressed the threshold issue presented in the instant case: whether the allegedly fraudulent transfers were made by a "debtor" under § 3439.01(e), such that the Receiver may seek to avoid the allegedly fraudulent transfers under § 3439.04 or § 3439.05 in the first place. Moreover, because it is plain from the face of Plaintiff's Complaint that the answer to this threshold question is presently "no," the case is not yet ripe for the Court's review.

5

In *Janvey*, the Fifth Circuit held that a federal equity receiver has standing to assert fraudulent transfer claims on behalf of a corporate entity in receivership, and that "the knowledge and effects of the fraud of the principal of a Ponzi scheme in making fraudulent conveyances of the funds of the corporations under his evil coercion are not imputed to his captive corporations." *Janvey v. Democratic Senatorial Campaign Committee, Inc.,* 712 F.3d 185, 190-91 (5th Cir. 2013). The Court in *Janvey* did not address whether the Receiver's claims were ripe. *See id.* To the contrary, the liability of the companies in Receivership—and the fact that their principals had engaged in fraud—had already been established. *See id.* (noting that "Stanford and Davis were prosecuted for and convicted of numerous federal offenses in their operation of the Ponzi scheme and are currently serving federal prison sentences."). Here, Defendants do not dispute that *if* liability were established on the part of the Receivership Defendants, then the Receiver would have standing to assert fraudulent transfer claims on their behalf, but rather, that liability has not yet been, and may never be, established.

Finally, in *Amling*, the plaintiff filed an action in federal district court asserting a claim under the Declaratory Judgment Act seeking a declaration interpreting a certain asset purchase agreement between two entities, Harrow and Nexus. *Amling v. Harrow Industries LLC,* 943 F.3d 373, 376 (7th Cir. 2019). The plaintiff had previously filed a lawsuit, which remained pending, in Illinois state court related to asbestos exposure against Harrow (who had purchased the assets and liabilities of the plaintiff's former employee) as well as Nexus (who had purchased all of Harrow's assets and some of its liabilities). *Id.* In the federal case, the plaintiff sought a declaration that under the terms of the asset purchase agreement between Harrow and Nexus, Harrow, rather than Nexus, would be liable for the torts alleged against the plaintiff's former employer in the state court asbestos case. *Id.*

The district court initially dismissed the case on ripeness grounds, and, in the alternative, held that it would decline to exercise any jurisdiction it might have. *Id.* at 376-77. On appeal, the Seventh Circuit found that the declaratory judgment claim was ripe but that the district court nonetheless

6

properly exercised its discretion by declining to exercise jurisdiction.  *Id.* at 378.  In so holding, the Court discussed the standard for ripeness in the context of the Declaratory Judgment Act. *Id.* at 377.

Here, *Amling* is simply inapposite.  *Amling* did not involve UFTA or a receivership or bear virtually any factual similarities to this case.  *See id.*  Conversely, in the instant case, the Receiver does not seek a declaratory judgment, but rather, he seeks to recover allegedly fraudulent transfers.

### C. Plaintiff's conclusory allegations supporting its fraudulent transfer claims are insufficient.

Notwithstanding Plaintiff's largely unexplained assertion that the facts pled by Plaintiff are "nearly identical to those" challenged in *Life Partners*, the facts and circumstances surrounding *Life Partners* were importantly different from the instant case.  First, as noted in the court's opinion, the Securities and Exchange Commission had already prevailed in a civil enforcement action against Life Partners.  *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 114 (5th Cir. 2019).  Additionally, the company's principal was found liable for fraud in a civil suit.  *Id.*  Accordingly, the facts supporting these prior judgments were likely included in the plaintiff's complaint and supporting exhibits.  Indeed, the court noted that the plaintiff's complaint contained "pages of allegations detailing the underlying fraudulent scheme" and "nearly 400 pages of exhibits." *Id.* at 117; 119.

In contrast to the detailed factual allegations suggesting fraud in *Life Partners*, here, as evidenced by the examples Plaintiff provides in its Response, the Complaint merely asserts, in conclusory fashion, that "badges of fraud" exist.  For example, in support of the first "badge of fraud"—that the transfers were not made for reasonably equivalent value—Plaintiff cites to paragraphs 4, 25-27, and 45(a) of his Complaint.  Paragraphs 4 and 45(a) of the Complaint merely assert—with no factual support—that "[t]he payments to the MagicStar Defendants were made…without the exchange of reasonably equivalent value."  *See* Compl. ¶¶ 4; 45(a).[6]

---

[6] While paragraphs 25 through 27 of the Complaint contain at least *some* factual allegations, the allegations therein are insufficient to suggest that the transfers at issue were not made for reasonably equivalent value.  *See* Compl. ¶¶ 25-27.

7

Plaintiff's allegations supporting its constructive fraud-fraudulent transfer claims are similarly formulaic and conclusory. For example, while Plaintiff alleges that "the Receiver has identified less than $15 million in Receivership Assets, while no less than $65 million in total creditor claims have been asserted in the Underlying Lawsuit" and asserts that "[a]t all relevant times, the Receivership Entities were insolvent" (Response at p.19; Compl. at ¶¶ 31-32) Plaintiff fails to plead any non-conclusory facts suggesting that the Receivership Defendants were insolvent *at the time* of any of the allegedly fraudulent transfers or that the Receivership Entities became insolvent as a result of any of the allegedly fraudulent transfers. *See* Cal. Civ. Code § 3439.05.

### D. Certain of the allegedly fraudulent transfers are time-barred.

As an initial matter, Plaintiff concedes that "[i]f the Court does not delay accrual based on the Court's own stay or Defendants' concealment, the Receiver agrees transfers made more than four years before the lawsuit was filed are not recoverable as constructively fraudulent transfers." *See* Response at p.19. Accordingly, the Court should dismiss Plaintiff's claim for constructive fraud fraudulent transfer with respect to all of the allegedly fraudulent transfers occurring prior to August 31, 2018. *See* Cal. Civ. Code §§ 3439.09(b); 3439.04(a)(2). With respect to Plaintiff's actual fraud fraudulent transfer claim, Defendants' argument that transfers occurring prior to August 31, 2018 are barred by limitations is made in the alternative to its ripeness argument set forth above.

Even accepting Plaintiff's contention that the Receiver's discovery of the fraudulent nature of the allegedly fraudulent transfers is necessary for his claims to accrue, the allegations in Plaintiff's Complaint establish that the Receiver was aware, in mid-2021, of facts that he contends support his allegations of fraud. Specifically, paragraph 36 of the Complaint makes clear that the Receiver was aware of the allegedly fraudulent transfers to Defendants in May of 2021. Moreover, in paragraph 37, the Receiver alleges that he "advised counsel for the MagicStar Defendants that the Receiver would

8

request the court in the Underlying Lawsuit to hold them in contempt for violating the SRO…". Compl. ¶37. This is significant because paragraph 37 of the Statutory Restraining Order (SRO) makes clear that the SRO is binding only upon certain persons affiliated with the Receivership Defendants.[7]

Accordingly, at the time the Receiver threatened to hold Defendants in contempt for failing to produce documents per his May 2021 request, he was implicitly contending that Defendants were affiliated with or in active participation with the Receivership Defendants (because otherwise, according to the terms of the SRO, they would not have been bound thereby). This, taken in conjunction with the Receiver's knowledge of the relevant transfers, suggests that the Receiver knew or should have known of facts that he contends support his fraudulent transfer claims (such as that the transfers were made to an alleged "insider"). *See* Response at p.16.

**E. The Court lacks jurisdiction over Cruz.**

Plaintiff misconstrues Defendant's jurisdictional argument—namely, that Plaintiff has failed to set forth well pled allegations that Mr. Cruz is in possession of receivership assets as required by the statute under which Plaintiff asserts jurisdiction. *See* 28 U.S.C. § 1692; 28 U.S.C. § 754.

Notably, Plaintiff attempts to argue for the first time that Cruz is a subsequent transferee of the allegedly fraudulent transfers. *See* Response at p.21, n.4. However, nowhere in the Complaint does Plaintiff allege that Cruz is a subsequent transferee of any of the allegedly fraudulently transferred funds. *See* Compl.[8] Accordingly, because Plaintiff does not allege that any of the allegedly fraudulently transferred funds were transferred to Cruz, the allegations fail to satisfy the jurisdictional statutes.

---

[7] Specifically, the SRO is binding "on any person who receives actual notice of this Order…**and** is acting in the capacity of an officer, agent, servant, employee, or attorney of Defendants or Relief Defendant, or is in active concert or participation with the Defendants or Relief Defendant.") (A copy of the SRO is attached to Plaintiff's Complaint as Ex. A).

[8] In Paragraph 34(f) of the Complaint—which Plaintiff cites in support of his subsequent transferee argument—Plaintiff merely alleges that "Cruz is using entities he controls to fund Asher and Batashvili's defense in the Underlying Lawsuit." Compl. ¶ 34(f). The Complaint does not specify the name of the "entities [Cruz] controls" that allegedly funded Asher and Batashvili's defense nor does it allege that those "entities" were the recipients of any of the allegedly fraudulent transfers. Accordingly, contrary to Plaintiff's contention, the Complaint does not allege that any of the allegedly fraudulent

9

### F. Plaintiff's composite "claim" for "Veil Piercing/Alter Ego/Single Enterprise" fails.

Plaintiff incredulously argues that the improper manner in which he pled his "claim" for "veil piercing/alter ego/single enterprise"—namely, by asserting a composite "claim" for three distinct theories of liability—somehow "supports the plausibility of the claim based on the breadth of potential application, rather than the inverse." Response at p.23. Amongst the many flaws with Plaintiff's argument, Plaintiff incorrectly applies Texas law.

Under Texas choice of law rules, "whether a corporation, LLC, or individual may be held liable pursuant to a veil-piercing theory is determined by the law of the state in which the entity is organized."[9] Here, the MagicStar Defendants are organized under Florida law. *See* Compl. ¶¶ 10-11. Under Florida law, Plaintiff must prove that (1) Cruz dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent and Cruz was in fact an alter ego of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the Plaintiff.[10]

Here, Plaintiff has failed to plead any facts supporting the first element—that Cruz dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent. For example, Plaintiff does not allege a requisite "unity of interest" among the defendants nor does Plaintiff allege that Cruz failed to observe corporate formalities. *See id.*

### CONCLUSION & PRAYER

For the reasons set forth above, Defendants respectfully request that the Court dismiss Plaintiff's claims and grant them such other and further relief to which they may be entitled.

---

funds were actually transferred to Cruz.

[9] *Ogbonna v. USPLabs, LLC*, No. EP-13-CV-347-KC, 2014 WL 2592097 at *5 (W.D. Tex. 2014) (*citing Alberto v. Diversified Group, Inc.*, 55 F.3d 201, (5th Cir. 1995)).

[10] *See Taylor v. Community Bankers Securities, LLC*, Civil Action No. H-12-02088, 2013 WL 3166336 at *10 (S.D. Tex. Jun. 20, 2013) (quoting *Gasparini v. Pordomingo,* 972 So.2d 1053, 1055 (Fla. 3d DCA 2008)).

Respectfully submitted,

*/s/ Jeffrey M. Tillotson*
Jeffrey M. Tillotson
State Bar No. 20039200
jtillotson@tillotsonlaw.com
Ben Nabors
State Bar No. 24116805
bnabors@tillotsonlaw.com
**TILLOTSON, JOHNSON & PATTON**
1807 Ross Avenue, Suite 325
Dallas, Texas 75201
(214) 382-3041 Telephone
(214) 292-6564 Facsimile

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

The above and foregoing document was served upon counsel herein by ECF on January 9, 2023.

*/s/ Jeffrey M. Tillotson*
Jeffrey M. Tillotson

11