UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KELLY CRAWFORD, IN HIS CAPACITY AS RECEIVER, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 3:22-cv-1935-x |
| MAGICSTAR ARROW ENTERTAINMENT, LLC, MAGICSTAR ARROW, INC, and CARLOS CRUZ, | § § § § § | |
| *Defendants.* | § § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is Defendants MagicStar Arrow Entertainment, LLC, MagicStar Arrow, Inc. (collectively, the "MagicStar Entities"), and Carlos Cruz's (together with the MagicStar Entities, "Defendants") motion to dismiss Plaintiff Kelly Crawford's (the "Receiver") complaint. [Doc. 9]. After careful consideration, and for the reasons below, the Court **GRANTS IN PART AND DENIES IN PART** the motion. Specifically, the Court **GRANTS** the motion on the basis of limitations as to the Receiver's constructive fraudulent transfer claim for all transfers made before January 24, 2018 and **DISMISSES WITH PREJUDICE** those claims. The Court **DENIES** the motion as to all the Receiver's remaining claims.

1

# I. Background

In 2020, the Commodity Futures Trading Commission and 30 States filed a complaint (the "Underlying Complaint") against Lucas Asher and Simon Batashvili (the "Underlying Defendants") as well as the entities they controlled (the "Receivership Entities").  That suit (the "Underlying Lawsuit")[1] alleges that the Underlying Defendants and the Receivership Entities engaged in a fraudulent scheme through which they defrauded at least 1,600 people by selling gold and silver at exorbitant prices based on fraudulent statements.[2]  The Court appointed Kelly Crawford as receiver of the Underlying Defendants' assets and the entities they own and control, including the Receivership Entities.

In this suit, the Receiver alleges that the Receivership Entities fraudulently transferred over $20 million to the MagicStar Entities for "marketing services."[3]  The Receiver states that "the Receivership Entities existed and operated solely to perpetrate a fraud upon unsuspecting, vulnerable investors, and line the pockets of" the Underlying Defendants, and further alleges that the MagicStar Entities "facilitated the fraud perpetrated by the Receivership Entities," and that "Cruz

---

[1] *Commodity Futures Trading Comm'n, et al. v. TMTE, Inc. a/k/a Metals.com, et al.*, No. 3:20-cv-2910-X (N.D. Tex. Sept. 22, 2020) (Starr, J.).

[2] *See* Doc. 1-3 at 3–7 (the Underlying Complaint summarizing the Underlying Lawsuit).

[3] Doc. 1 at 2.  At the motion to dismiss stage, the Court accepts all of the Receiver's well-pled facts as true.  *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).

worked hand in hand with the individuals who operated the Receivership Entities" as they perpetrated their alleged fraud.[4]

The Receiver sued the Defendants to recover those funds for the benefit of the allegedly defrauded investors.  He brings the following claims against all Defendants: (1) actual fraudulent transfer, (2) constructive fraudulent transfer, (3) unjust enrichment, and (4) money had and received.  He seeks to recover for these claims against Cruz on a veil-piercing, alter-ego, or single-entity theory of recovery.[5]

The Defendants now move to dismiss all of the Receiver's claims.

## II.  Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff."[6]  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[7]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8]  Although the plausibility standard does not require probability, "it asks for more than a sheer possibility that a

---

[4] Doc. 1 at 1, 6.

[5] *Id.* at 13–18.

[6] *Stokes*, 498 F.3d at 484.

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[8] *Id.*

defendant has acted unlawfully."[9]  In other words, the standard requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."[10]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[11]  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[12]

## III.  Analysis

The Court begins with the threshold issues of ripeness and limitations before addressing the Receiver's claims of unjust enrichment, money had and received, and actual and constructive fraudulent transfer.  Finally, the Court turns to the Receiver's claims against Cruz.

### a.  Ripeness

The Defendants argue that the Court should dismiss the Receiver's claims because those claims are unripe.

The doctrine of ripeness stems from the fact that "federal courts do not decide abstract, hypothetical, or contingent questions."[13]  To determine ripeness, courts look to "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration."[14]  A receiver, standing in the shoes of defrauded

---

[9] *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

[10] *Iqbal*, 556 U.S. at 678.

[11] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[12] *Id.* (quoting *Twombly*, 550 U.S. at 557).

[13] *Halder v. Standard Oil Co.*, 642 F.2d 107, 110 (5th Cir. Unit B 1981).

[14] *Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967).

creditors or investors, has standing to bring claims for their benefit, and the absence of any third-party the receiver represents has no bearing on ripeness.[15]

As to the first prong, the Court finds that the issues are fit for judicial decision. The Defendants say that the Receiver's claims are unripe because there has been no judgment yet in the Underlying Lawsuit, but that argument misunderstands the nature of the claims.  A claim may exist, and a party may sue to vindicate it, regardless of whether a court has upheld the right it asserts in a judgment.[16]  Claims are unripe "[i]f the purported injury is contingent on future events that may not occur as anticipated, or indeed may not occur at all," but the Receiver's complaint brings claims based on alleged past events, which do not depend on any contingent future events and which, the Receiver alleges, have already occurred.[17]  Specifically, the Receiver alleges that investors and creditors have already suffered an injury due to allegedly fraudulent transfers worth at least $20 million.[18]

The Defendants misapply ripeness doctrine by urging the Court to dismiss claims arising under alleged past events.  A future judgment against the Defendants would certainly bolster the Receiver's claims and provide strong evidence to support

---

[15] *Janvey v. Dem. Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 191–92 (5th Cir. 2013) (affirming a receiver's standing "to assert the claims of a receivership entity against third-party recipients of the entity's assets that have been fraudulently transferred").

[16] *See Qingdao Tang-Buy Int'l Imp. & Exp. Co., Ltd. v. Preferred Secured Agents, Inc.*, No. 15-CV-624-LB, 2015 WL 7776331, at *4 (N.D. Cal. 2015) ("The plaintiff's fraudulent-transfer claims are not unripe because its underlying claim . . . has not been reduced to judgment."); *Ford Motor Credit Co. v. Chiorazzo*, 529 F. Supp. 2d 535, 540 (D.N.J. 2008) (finding that a plaintiff's "allegations [were] ripe for review[] regardless of whether there ha[d] been a final adjudication of related proceedings," and noting that "[a] contingent creditor . . . may commence an action without a final adjudication").

[17] *Zepeda v. Boerne Indep. Sch. Dist.*, 294 F. App'x 834, 838 (5th Cir. 2008) (cleaned up).

[18] Doc. 1 at 2.

5

them, but such a contingent, future event is unnecessary at this stage for the Receiver to plausibly allege his claims. All of the Receiver's allegations rely on past events and do not require a future finding of liability to state a claim. The Court finds that the claims are fit for judicial decision.

As to the second prong, the Court finds that the hardship to the parties that would result if the Court withheld consideration weighs in favor of ripeness. The Receiver states that part of the goal behind the allegedly fraudulent activity was to "place the transfers beyond the reach of the Receiver and the Receivership Entities' creditors."[19] The Defendants offer no reason to think that adjudicating the Receiver's claims now instead of waiting for an unnecessary judgment in the Underlying Lawsuit will cause undue hardship for them. On the other hand, further delay may cause great hardship for the Receiver and those he represents as the allegedly fraudulently transferred funds remain out of reach.

The Court finds that the Receiver's claims are ripe and **DENIES** the motion to dismiss on the basis of ripeness.

### b. Limitations

Next, the Defendants ask the Court to dismiss parts of the Receiver's fraudulent transfer claims on the basis of limitations. The parties agree that the California Uniform Fraudulent Transfer Act ("CUFTA") governs both of the Receiver's fraudulent transfer claims.[20]

---

[19] *Id.*

[20] Doc. 17 at 2.

The Defendants point to a statutory four-year limitations period to argue that the Receiver is time-barred from recovering for some of the allegedly fraudulent transfers.[21]  The Receiver filed his complaint on August 31, 2022, and twenty-three of the allegedly fraudulent transfers occurred before August 31, 2018.[22]  Because the relevant statute imposes different limitations rules on the Receiver's actual and constructive fraudulent transfer claims, the Court will examine each in turn.

The Receiver's actual fraudulent transfer claim has a four-year statute of limitations, but for claims brought after that period, the statute imposes a one-year limitations period beginning at the time the claimant "could reasonably have [] discovered" the transfer.[23]  The Receiver points out that this limitations period began accruing not when the Receivership Entities made the allegedly fraudulent transfers, or even when the Receiver first learned of those transfers; rather, it began accruing when the Receiver discovered the allegedly fraudulent nature of the transfers.[24]  The Receiver's complaint alleges that he "was unable to discover or assert [his] claims until recently" because outside forces—including his inability to access digital platforms, the FBI's seizure of computers and information from Defendants, and a

---

[21] Doc. 9 at 18–19 (citing CAL. CIV. CODE § 3439.09).

[22] Docs. 1 at 13; 1-4 at 1–3.

[23] CAL. CIV. CODE § 3439.04(a)(1) (defining actual fraudulent transfer); *id.* § 3439.09(a) (defining the limitations period).

[24] *Dem. Senatorial Campaign Comm.*, 712 F.3d at 193–94 ("[A] fraudulent-conveyance claim does not accrue until the claimant knew or reasonably could have known both of the transfer and that it was fraudulent in nature.").  *Democratic Senatorial Campaign Committee* analyzed fraudulent transfer claims in the context of the Texas Uniform Fraudulent Transfer Act ("TUFTA").  But TUFTA may still inform this analysis because its relevant text is identical and "any differences between TUFTA and another state's UFTA are likely to be negligible."  *Janvey v. Suarez*, 978 F. Supp. 2d 685, 692 (N.D. Tex. 2013) (Godbey, J.) (cleaned up).

lengthy, court-imposed stay—"deprived [the Receiver] of the ability to obtain such information until the Spring of 2021."[25]  The Receiver then alleges that he ultimately sent a demand letter to the MagicStar Entities on May 18, 2021, indicating his awareness of the allegedly fraudulent transfers by that date at the latest.

One year after the spring of 2021 was the spring of 2022, and the Receiver's August 31, 2022 filing came well after that.  This looks like a limitations problem. But the complaint alleges one more critical fact: "[A]ll of the Receiver's activities, including efforts to discover and file the claims included here, were stayed" from "October 5, 2021 . . . until May 12, 2022" due to a stay in the Underlying Lawsuit.[26] The Court, taking judicial notice of public records in the Underlying Case, notes that this seven-month stay had nothing to do with the Receiver, and did not result from his request or benefit him in in any way.[27]  The Court finds that this extensive stay of the Receiver's activity warrants equitable tolling on his claims, which courts grant "most frequently where the plaintiff . . . is prevented in some extraordinary way from asserting his rights."[28]  Thus, "[f]ocus[ing] on the plaintiff's excusable ignorance" of his claims given the lengthy, court-imposed stay, the Court in equity tolls the one-year statute of limitations by 219 days (the exact span of the stay).[29]

---

[25] Doc. 1 at 12.

[26] *Id.* at 13.

[27] *TMTE, Inc.*, No. 3:20-CV-2910-X (Doc. 322).

[28] *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002).

[29] *Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 878 (5th Cir. 1991) (cleaned up).

This increases the limitations period from 365 days to 584 days.  Assuming that the Receiver could have reasonably discovered the allegedly fraudulent transfers the moment he says he gained the Receivership Entities' records in "the Spring of 2021,"[30] which would have triggered the limitations period, the Receiver still filed his complaint well within allotted time.  Even if the spring of 2021 began on March 1, 2021,[31] that means the Receiver had until October 6, 2022 to file his complaint.  He did it with thirty-six days to spare.  Thus, the Receiver has adequately pled that he discovered the allegedly fraudulent transfers and filed his claim within the statutory limitations period, as modified by the Court's equitable tolling.

A separate statutory provision governs the limitations period for the Receiver's constructive fraudulent transfer claim, and it makes no mention of a discovery window.[32]  Specifically, the statute says that plaintiffs must file constructive fraudulent transfer claims "not later than four years after the transfer was made."[33]  So unlike with the Receiver's actual fraudulent transfer claim, here, the time the Receiver discovered his claim is irrelevant and the Court may only look to the dates of the transfers.[34]  However, for the reasons stated above, the Court finds that

---

[30] Doc. 1 at 12.

[31] The Court acknowledges this date falls before the vernal equinox, which is typically recognized as the first day of spring.  However, the month of March in Dallas, Texas often already feels like summer, so approximating seasonal delineations beyond "summer" and "the other four months of the year" can be tricky.  But even measured against this earliest feasible date, the Receiver still timely brought his claims.

[32] CAL. CIV. CODE §§ 3439.04(a)(2) (defining constructive fraudulent transfer), 3439.09(b) (defining the limitations period).

[33] CAL. CIV. CODE § 3439.09(b).

[34] Analyzing TUFTA, which has identical wording for the relevant provisions here, courts in this district have also found that the discovery window applies only to actual fraudulent transfer

equitable tolling in light of the judicially-imposed stay warrants a 219-day extension of the limitations period.  As a result, the Receiver may bring his constructive fraudulent transfer claim for all transfers made after January 24, 2018—219 days before August 31, 2018.  This bars recovery for five of the transfers the Receiver alleges were fraudulent.[35]

The Court accordingly **DENIES** the motion to dismiss the Receiver's actual fraudulent transfer claim on the basis of limitations.  The Court **GRANTS** the motion as to the Receiver's constructive fraudulent transfer claim for the five transfers made before January 24, 2018, which—because amendment would be futile—the Court **DISMISSES WITH PREJUDICE** on the basis of untimely filing.  The Court **DENIES** the motion as to the Receiver's constructive fraudulent transfer claim for all the remaining transfers, which were made after January 24, 2018.

### c.  Unjust Enrichment and Money Had and Received

The parties agree that Texas substantive law governs these claims.[36] "Although it is unclear under Texas law whether unjust enrichment is an independent cause of action,"[37] "Texas courts have read claims for 'unjust enrichment'

---

claims and cannot save untimely filed constructive fraudulent transfer claims. *Suarez*, 978 F. Supp. 2d at 704–06 (collecting cases that analyze various state UFTAs and arrive at the same conclusion).

[35] Doc. 1-4 at 1–3 (listing all transfers the Receiver seeks to recover, including the five made before January 24, 2018).

[36] Doc. 17 at 2.

[37] *Biliouris v. Sundance Resources, Inc.*, 559 F. Supp. 2d 733, 739 (N.D. Tex. 2008) (Godbey, J.).

as pleading an equitable common law claim for money had and received," and "the two claims are substantively identical."[38]

In Texas, "[u]njust enrichment occurs when [a party] has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain."[39] And "in an action for money had and received," the plaintiff need only show "that [the] defendant holds money which in equity and good conscience belongs to" the plaintiff.[40]

The Receiver states a claim under both theories.  Taking the complaint's facts as true and viewing them in the light most favorable to the Receiver, the Receiver has plausibly alleged that the MagicStar Entities "received more than $20 million from the Receivership Entities for alleged 'marketing services,'" and that those "payments were fraudulent transfers made to insiders, intended to grow the underlying fraud."[41]  Further, the Receiver has plausibly alleged that "Cruz worked hand in hand with the individuals who operated the Receivership Entities" and that he "managed and owned" the MagicStar Entities.[42]  All told, the Receiver has alleged that the Defendants "obtained a benefit from the [Underlying Defendants'] scheme that equity dictates they cannot retain justly."[43]  That is enough to state a claim for

---

[38] *Janvey v. Alguire*, 846 F. Supp. 2d 662, 674 (N.D. Tex. 2011) (Godbey, J.).

[39] *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas Oct. 6, 2009) (pet. denied).

[40] *Alguire*, 846 F. Supp. 2d at 675 (cleaned up).

[41] Doc. 1 at 1–2, 8–11.

[42] *Id.*

[43] *Alguire*, 846 F. Supp. 2d at 674–75.

unjust enrichment and money had and received under Texas law, so the Court **DENIES** the motion to dismiss these claims.[44]

### d. Actual Fraudulent Transfer

Under CUFTA, transfers are voidable for fraud "if the [transferor] made the transfer . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the" transferor.[45]  The Court begins by looking to what pleading standard governs this claim.

"Perhaps . . . due to the heightened sensitivity to labeling someone a fraudster," or because "statements made in court are not actionable as defamation,"[46] Rule 9 imposes a heightened pleading standard requiring plaintiffs to "state with particularity the circumstances constituting fraud or mistake."[47]  "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."[48]  Put simply, "Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud."[49] The Fifth Circuit's "precedent interprets Rule 9(b) strictly, requiring the plaintiff to

---

[44] The Receiver also seeks recovery premised on a constructive trust.  "Constructive trusts, being remedial in character, have the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice."  *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974).  Since the Receiver has plausibly alleged unjust enrichment and money had and received, his claim for a constructive trust—a remedy for those wrongs—is plausibly alleged as well.

[45] Cal. Civ. Code § 3439.04(a)(1).

[46] *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 652 (N.D. Tex. 2020) (Starr, J.).

[47] Fed. R. Civ. Proc. 9(b).

[48] *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (cleaned up).

[49] *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (cleaned up).

specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[50]

The Fifth Circuit has not yet decided whether Rule 9 applies to actual fraudulent transfer claims, though it has acknowledged the division within its own district courts on this issue.[51]  The Court addressed this question in *VeroBlue Farms USA, Inc. v. Wulf* and concluded that "Rule 9 applies to actual fraudulent transfer claims" unless the precise claim at issue "require[s] no showing of fraudulent intent."[52]  Because CUFTA's "all-important intent requirement [] refers to the intent of the *transferor*, not the *transferee*,"[53] and because the Receiver accuses the MagicStar Entities of "facilitating" the Receivership Entities' fraud by "receiv[ing] more than $20 million," Rule 9 does not appear to govern this claim.[54]  But even assuming that Rule 9(b) governs the Receiver's actual fraudulent transfer claim, the Court finds that the Receiver satisfies the standard.  That means the claim would also satisfy the more lenient Rule 8 standard.

The Fifth Circuit has stated that an actual fraudulent transfer claim would have satisfied Rule 9(b) where an exhibit attached to the complaint "set[] out the

---

[50] *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (cleaned up).

[51] *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 118 (5th Cir. 2019) (acknowledging that "the district courts in this circuit are not in unanimity on th[e] question" of whether Rule 8(a) or 9(b) governs actual fraudulent transfer claims and choosing not to "weigh in on this vexing question").

[52] 465 F. Supp. 3d 633, 652–53 (N.D. Tex. 2020) (Starr, J.).

[53] *Crawford v. Bleeden*, No. 3:21-cv-2181-X, 2023 WL 2414009, at *4 (N.D. Tex. Mar. 8, 2023) (Starr, J.).

[54] Doc. 1 at 1–2.

13

details of the allegedly fraudulent transfers—including the transferor, transferees, amounts, and time period—and the complaint itself contain[ed] pages of allegations detailing the underlying fraudulent scheme."[55]  And CUFTA enumerates eleven factors to which "consideration may be given" when "determining actual intent."[56]

The Receiver has more than met the standard endorsed by the Fifth Circuit. An exhibit attached to the Receiver's complaint details the transferor, transferee, amount, date, and type of transaction for each transfer.[57]  It even includes the check number for each transaction made via check.[58]  And the complaint contains multiple pages of detailed allegations explaining the mechanics of the underlying scheme, including the who, what, when, where, and how, as well as the nature of the false representations, the identity of the alleged fraudsters, the timing and content of many of the allegedly fraudulent representations, and the reasons those representations were fraudulent.[59]  And as to the eleven factors in CUFTA, the complaint presents facts alleging at least seven of them.[60]

---

[55] *Life Partners*, 926 F.3d at 119.

[56] CAL. CIV. CODE § 3439.04(b).

[57] Doc. 1-4 at 1–3.

[58] *Id.*

[59] Doc. 1 at 6–13; *id.* at 6 n.6 (incorporating by reference the Receiver's complaint in a corresponding case that further details the underlying fraudulent scheme); Doc. 1-3 at 11–40 (extensive and detailed fact section from the complaint in the Underlying Lawsuit detailing the underlying fraudulent scheme, attached as an exhibit to the Receiver's complaint).

[60] Specifically, the complaint alleges that the transfers were not made for reasonably equivalent value, the transfers were concealed, other assets were concealed, the transfers were made while the transferors were insolvent, certain transfers were made after the transferors had been sued or were the subject of regulatory discipline, the transfers were made to an insider, and the Underlying Defendants retained control of or access to the transfers.  Doc. 1 at 6–14, 17–18; CAL. CIV. CODE § 3439.04(b)(1)–(4), (7)–(9).

14

The Court finds that the Receiver's complaint alleges actual fraudulent transfer with sufficient particularity—under either Rule 9(b) or Rule 8—to survive the Defendants' motion to dismiss.  So, the Court **DENIES** the motion as to this claim.

### e.  Constructive Fraudulent Transfer

Under CUFTA, constructive fraudulent transfer occurs when a transferor makes a transfer "[w]ithout receiving a reasonably equivalent value in exchange," and the transferor either "was about to engage in a . . . transaction for which the remaining assets of the [transferor] were unreasonably small" or "[i]ntended to incur . . . debts beyond the [transferor's] ability to pay as they became due."[61]  "District courts in the Fifth Circuit have suggested that constructive fraudulent transfer claims are only subject to Rule 8(a)."[62]  The Court expressly found as much in *VeroBlue*.[63]  This is because "constructive fraudulent transfer allows for fraudulent transfer without intent to defraud" and "fraud has nothing to do with a constructive fraudulent transfer claim because the transaction is based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee."[64]  The Fifth Circuit declined to decide whether Rule 9 governs

---

[61] CAL. CIV. CODE § 3439.04(a)(2)(A)–(B).

[62] *Life Partners*, 926 F.3d at 120.

[63] 465 F. Supp. 3d at 652 ("The Court concludes that Rule 9 [does not] appl[y] . . . to constructive fraudulent transfer claims.").

[64] *Life Partners*, 926 F.3d at 120 (cleaned up).

constructive fraudulent transfer claims, but it acknowledged the "persuasive value" of this reasoning.[65]

The Receiver's constructive fraudulent transfer claim satisfies Rule 8's pleading standards "because providing services in furtherance of a fraudulent Ponzi-like scheme," as the Receiver alleges the Defendants did here, "does not confer reasonably equivalent value as a matter of law."[66]  And because "a Ponzi scheme[] . . . is, as a matter of law, insolvent from its inception," the transferors (*i.e.*, the Receivership Entities) necessarily incurred debts beyond their ability to repay.[67]  So by plausibly alleging that the Defendants provided services to a Ponzi scheme, the Receiver plausibly alleged a claim for constructive fraudulent transfer.

### f.  Claims Against Cruz

As a threshold matter, Cruz argues that the Court lacks personal jurisdiction over him.  This argument fails.  The Receiver's complaint says that the Receiver complied with 28 U.S.C. Section 754.[68]  "By allowing a receiver and district court to exercise jurisdiction over purported receivership estate property, section 754 serves as a stepping stone on a court's way to exercising *in personam* jurisdiction over those persons having custody or control over the property at issue."[69]  Since the Receiver alleges in detail Cruz's custody or control over the MagicStar Entities, as well as the

---

[65] *Id.*

[66] *Id.* at 121.

[67] *Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006).  The Receiver also alleges specific facts showing insolvency.  Doc. 1 at 2–4, 10.

[68] Doc. 1 at 5.

[69] *Alguire*, 846 F. Supp. 2d at 669 (cleaned up).

16

MagicStar Entities' possession of funds obtained through the alleged fraud, his compliance with Section 754 ensures the Court's personal jurisdiction over Cruz.

As a second threshold issue, Cruz argues that the Court must dismiss the Receiver's claims against him because the Receiver did not specify which state's law governs those claims. But "[b]efore the [C]ourt undergoes a choice-of-law analysis, it should first determine if the laws are in conflict. If the result would be the same under the laws of either jurisdiction, there is no need to resolve the choice-of-law question."[70]   Cruz says Florida law controls and the Receiver says Texas law controls.[71]  Since the result is the same under either state's law, the Court need not resolve this question.

In Texas, veil-piercing is warranted "when the corporate form has been used as part of a basically unfair device to achieve an inequitable result."[72]   Texas recognizes "three broad categories in which a court may pierce the corporate veil: (1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; and (3) the corporation is used as a sham to perpetrate a fraud."[73]  And in Florida, a plaintiff seeking veil-piercing "must prove that: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must

---

[70] *Playboy Enters., Inc. v. Sanchez-Campuzano*, 519 F. App'x 219, 225 (5th Cir. 2013).

[71] Docs. 14 at 13; 17 at 11.

[72] *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 454 (Tex. 2008).

[73] *Rimade Ltd. v. Hubbard Enters., Inc.*, 388 F.3d 138, 143 (5th Cir. 2004).

have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant."[74]

The Receiver's complaint plausibly alleges that Cruz owned and controlled both MagicStar Entities, that he used them in furtherance of the Receivership Entities' alleged fraud, and that the Receivership Entities made transfers to the MagicStar Entities to conceal and protect funds allegedly obtained via fraud.[75]  It further alleges that Cruz used allegedly fraudulent funds transferred to the MagicStar Entities to fund the operation of an entity created to circumvent Court orders in the Underlying Lawsuit.[76]  And it alleges that the MagicStar Entities fabricated invoices to justify over $20 million in payment received from the Receivership Entities over three years, and that recovery from the MagicStar Entities, including Cruz, is necessary to avoid an inequitable result.[77]

This is enough to state a claim against Cruz under both Texas and Florida law for piercing the corporate veil to recover for the Receiver's individual causes of action against Cruz.  Since the Receiver has stated a claim for his causes of action and shown the viability of at least one method of recovering for them—piercing the corporate veil—the Court need not analyze his alternative theories of recovery, alter ego and single business enterprise.

---

[74] *Taylor v. Cmty. Bankers Secs., LLC*, No. H-12-2088, 2013 WL 3166336, at *10 (S.D. Tex. 2013) (quoting *Gasparini v. Pordomingo*, 972 So.2d 1053, 1055 (Fla. Dist. Ct. App. 2008)).

[75] Doc. 1 at 2, 8, 18.

[76] *Id.* at 11.

[77] *Id.* at 2–3, 8–9.

18

Accordingly, the Court **DENIES** the motion to dismiss as to the Receiver's claims against Cruz.

## IV.  Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the motion to dismiss.  The Court **GRANTS** the motion as to the Receiver's constructive fraudulent transfer claim for all transfers made before January 24, 2018 and **DISMISSES WITH PREJUDICE** those claims.  The Court **DENIES** the motion as to all the Receiver's remaining claims.

**IT IS SO ORDERED** this 22nd day of June, 2023.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

19